**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| SureFunding, LLC,[1] | Case No. 20-10953 (LSS) |
| Debtor. | |

**AFFIDAVIT OF EDWARD T. GAVIN, CTP IN SUPPORT OF VOLUNTARY**
**PETITION**

I, Edward T. Gavin, CTP, hereby declare that the following is true to the best of my knowledge, information, and belief:

1.      I am the Chief Restructuring and Liquidation Officer (the "CRLO") of the above-captioned debtor and debtor-in-possession (the "Debtor"). I submit this declaration (the "Declaration") in support of the Debtor's petition. Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge, my review of the Debtor's books and records, relevant documents and other information prepared or collected by the Debtor's officers and employee, discussions with persons knowledgeable about the Debtor's business and operations, or my opinion based on my experience with the Debtor's operations and financial condition. In making my statements based on my review of the Debtor's books and records, relevant documents and other information prepared or collected by the Debtor's officers and employee, I have relied upon these officers and employee accurately recording, preparing or collecting such documentation and other information.

---

[1] The last four digits of the Debtor's taxpayer identification number is 7898. The Debtor's headquarters and service address is 6671 Las Vegas Blvd., Suite 210, Las Vegas, NV 89119.

109707319
109707319
109707319.v7

2.       If I were called to testify as a witness in this matter, I could and would competently testify to each of the facts set forth herein based upon my personal knowledge, review of documents, or opinion. I am authorized to submit this Declaration on behalf of the Debtor.

3.       Part I of this Declaration describes the business of the Debtor and the developments that led to its filing for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Part II sets forth the relevant facts regarding this bankruptcy case.

## PART I

## BACKGROUND

### A.       Description and History of the Debtor's Business

4.       SureFunding, LLC ("SureFunding" or the "Debtor") is a private debt strategy company established in March 2014. SureFunding was originally established as a mechanism by which its founders, brothers Jason and Justin Abernathy (the "Abernathys"), would invest their own capital. Starting in 2015, SureFunding's owners opened the company to outside participation from individuals or entities through the issuance of Notes. SureFunding invested or participated in small business loans, asset purchases, trade receivable purchases and advances, and credit facilities with multiple funding platform partners. Typical SureFunding portfolios were comprised of assets that were short-term and high yield. Among SureFunding's investments are ownership interests in trade receivables, real estate assets and intellectual property portfolio royalty streams. Since 2017, SureFunding typically was not financing directly to borrowers; instead, SureFunding made its capital available to funding partners, who would use SureFunding's capital to provide factoring services for their borrowers.

5.       Pursuant to a Note Purchase Agreement, as amended, SureFunding issued notes and raised in excess of $34 million over time from individuals and entities interested in

109707319.v7

funding SureFunding's investments. The terms of these notes provided that the proceeds of the

notes were to be used for working capital (in short, for investment and related expenses). As of

mid-2019, SureFunding was capitalized with approximately $34 million from noteholders (among

whom are the Abernathys) and $5.2 million from the personal assets of the Abernathys and their

families.

      6.     SureFunding's revenue comes from participations in nine distinct

investments:

a.     Tradepay Capital, LLC – SureFunding participated on individual trade receivables that Tradepay Capital purchased. SureFunding participated up to 90% on each trade receivable purchase it participated on with Tradepay via ECP Holdings III, LLC. This relationship will be discussed at length herein.

b.     NCM Wireless, Inc. – SureFunding provided capital to NCM Wireless to purchase inventory in exchange for a short-term promissory note.

c.     Business Advance Participations – This is short to medium term advances/loans to small businesses against future debit card and other charge card receivables and future merchant sales.

d.     CreditPoint Financial, LLC – This is a non-Debtor related entity that invested SureFunding's capital in worker's compensation medical receivables.

e.     Great American Power Holdings, LLC – This is a promissory note and equity investment.

f.     Scidera, Inc. – This is a convertible promissory note to an unrelated entity that provides litigation funding.

g.     Sand Pharmacy – These are 6% and 4.8% participations in real estate equity investments.

h.     Music Royalties – This is a direct investment in the future revenue stream from an intellectual property portfolio.

**B.    Corporate Structure**

7.    Prior to 2017, SureFunding made investments of capital across seven platform companies for the purpose of future credit card debt, debit card and other charge card receivables, and future merchant sales. These investments are managed and serviced by two non-Debtor entities, Marketplace Capital Strategies, LLC (a Puerto Rico LLC) and MCS US, LLC (the "MCS Entities"). MCS US, LLC was formed in 2017 and is used to pay expenses incurred in the United States for Marketplace Capital Strategies, LLC. Both MCS Entities are owned or controlled by the Abernathys. SureFunding is the investment vehicle managed by the MCS Entities. The MCS Entities also are wholly owned or controlled by the Abernathys. Marketplace Capital Strategies serves as the manager of SureFunding and non-debtor SureFunding V, LLC.

8.    In and after 2017, new entities were created to facilitate the Debtor's investment and lending relationship with Tradepay Capital LLC ("Tradepay"), a non-affiliate of the Debtor. Tradepay facilitated credit relationships between multi-national sellers and buyers. SureFunding purchased up to 90% participation in factored receivables sourced through the Tradepay platform. Tradepay, as the lead investor in the trade receivables, purchased the trade receivables and retained 10 to 15% of each trade receivable on Tradepay's balance sheet. Tradepay charged a servicing fee to the entities that participated on the balance of the 85% to 90% of the trade receivables.

9.    Three different entities hold claims in the unpaid trade receivables with Tradepay. SureFunding's portion of the unpaid trade receivables purchased with Tradepay as the lead is 90.93%.   The other two participants are non-debtor entities SIA Unite, LLC and SureFunding V, LLC.

10.    SIA Unite, LLC is a Delaware limited liability company and is an investment entity through which private capital from twenty-three parties, some controlled by the

4

109707319.v7

Abernathys and some unrelated parties, invested in the Tradepay relationship. SIA Unite, LLC's

portion of the unpaid trade receivables purchased with Tradepay as the lead investor is 3.12%.

11.    SureFunding V, LLC, a Delaware limited liability company owned by the

Abernathys, was formed to invest funds borrowed from unrelated non-debtor Congressional Bank,

LLC into participation in the Tradepay relationship.  SureFunding V, LLC represents 5.95% of the

unpaid trade receivables claims purchased from Tradepay.

12.    ECP Holdings III, LLC and ECP Holdings V, LLC (the "ECP Entities") are

Delaware limited liability companies that function as special purpose pass-through entities through

which the participations of SureFunding and SIA Unite, LLC (through ECP Holdings III) and

SureFunding V, LLC (through ECP Holdings V, LLC) were distributed to Tradepay Capital, LLC

pursuant to the terms of a Master Participation Agreement between the ECP Entities and Tradepay.

A chart illustrating the flow of funds in the Tradepay relationship is attached as Exhibit A.

13.    MCS Agent, LLC ("MCS Agent") is a Delaware LLC and is 100% owned

by Marketplace Capital Strategies, LLC. MCS Agent was created in January 2019 to service

payments from Tradepay under the Master Participation Agreement between Tradepay and the

ECP Entities.  Because the sources of funds invested into the Tradepay relationship from

SureFunding, SureFunding V, and SIA Unite are different, MCS Agent was created to ensure that

payments to participants were not commingled and were made according to the respective

participations – specifically to allow for separation of funds due to ECP Holdings III (which funds

ultimately would belong to SureFunding and SIA Unite, LLC) and ECP Holdings V (which funds

ultimately would belong to SureFunding V, LLC).

14.    SureClick, LLC ("SureClick") is a Virginia limited liability company

owned by the Abernathys or their entities and was once the Abernathys' primary business pursuit.

5

Employees and contractors in the United States were paid by SureClick, LLC. In addition, SureClick provided other entities, including the Debtor, shared resources such as internet hosting, expense advances and credit cards for the benefit and use of these entities. These advances were reimbursed to SureClick in the ordinary course of business. SureClick PR, LLC is a Puerto Rico limited liability company formed in 2014 that provided other entities, including the Debtor, shared resources such as employees and expense advances for the benefit and use of these entities.

15. ECP Holdings I, LLC is a non-debtor Delaware limited liability company. ECP Holdings I, LLC received funds from SIA Unite and SureFunding and used those funds to purchase a portfolio of workers compensation medical receivables as an investment through non-debtor entity CreditPoint Financial, LLC.

16. ECP Holdings II, LLC is a non-debtor Delaware limited liability company. ECP Holdings II, LLC received funds from SureFunding to purchase a 4.8% equity interest in Sand Pharmacy Portfolio 2017, LLC, a real estate investment portfolio.

17. CreditPoint Holdings, LLC is a non-debtor Delaware limited liability company formed in 2017. This entity owns 100% of the membership interests in non-debtor CreditPoint Financial, LLC, a Colorado limited liability company that received funds from ECP Holdings I, LLC to purchase and service a portfolio of workers compensation medical receivables. CreditPoint Financial originally was an unrelated entity that was taken over by the Abernathys in December 2017. An organizational chart is attached hereto as Exhibit B.

C. **The Debtor's Cash Position**

18. The Debtor possesses $2,164,755.01 in cash as of the petition date. The sources of this cash are proceeds from various investments. Although my analysis is not yet complete, I believe that at least $1 million of the cash is not subject to any lien given the limited

6

109707319.v7

scope of the purported security interest granted to noteholders.  The circumstances surrounding the noteholder investments also raise questions regarding lien perfection, debt recharacterization and avoidance claims, all of which are the subject of ongoing investigation. Because the Debtor has sufficient unencumbered cash to continue its remaining operations and pay the administrative costs associated with this case, the Debtor does not presently intend to file a motion for authority to use cash collateral.

**D.    Events Leading to the Commencement of This Case**

19.    In September 2017, MCS was introduced to Tradepay, an international factoring company with offices in Miami, New York and Mumbai, as a potential favorable investment platform and commenced due diligence. In February 2018, ECP Holdings III, LLC signed an agreement with Tradepay. SureFunding raised in excess of $34 million over time from investors under its Note Purchase Agreement to fund working capital. Of that amount, SureFunding invested approximately $28.7 million in Tradepay.

20.    Justin & Lorna Abernathy and Jason Abernathy have invested, in the aggregate, approximately $7.3 million of personal capital in entities that have investments in Tradepay via SureFunding, SIA Unite, LLC and SureFunding V, LLC. Those investments include the Abernathys' self-directed IRA portfolios, and the purchase of notes.

21.    The capital SureFunding invested in Tradepay was used to factor invoices across 176 account debtors (collectively, "Buyers").  At the end of September 2019, more than 150 Buyers were active on the Tradepay platform. Each Buyer qualified for credit insurance from Euler Hermes, an international credit insurance company with an AA rating by Standard & Poor's. Between February 2018 and September 2019, SureFunding successfully completed 1,203 participations through Tradepay with an aggregate factored value of $95.4 million.

22. On April 23, 2019, Tradepay advised ECP-III that twenty-nine payments, on invoices totaling $1,883,415, that had been pledged to ECP-III had been returned because of processing issues and would not be paid on a timely basis. Tradepay suggested a solution in which Tradepay would swap out those invoices for different invoices with later maturity dates. ECP-III's principals agreed to and accepted this invoice "swap" (the "April 2019 Swap") and, but for a single invoice, all of the swapped invoices were paid in full. Thereafter, ECP-III continued to fund new invoice purchases. ECP-III was also still receiving consistent payments from Buyers in May, June and July. Net cash collections received by ECP-III during those three months were $6.8 million, $7.7 million, and $7.9 million, respectively. The June and July net collections of $7.7M and $7.9M were both new highs at the time for net collections received in a month.

23. In late September 2019, Tradepay failed to remit payments to MCS Agent, LLC from account debtors. At this time, Tradepay had 421 outstanding invoices, totaling approximately $47.9 million in gross invoice value that went into default over the next two months. All of these invoices were purchased after April 29, 2019.

24. During the course of investigating the non-payment, SureFunding determined that Tradepay and its owners and operators had participated in a sophisticated and complex fraudulent scheme devised and executed to obtain financing and investing dollars under false pretenses. The scheme included breach of contract, lies, misrepresentations, the use of false and fraudulent paperwork, the submission of false and fraudulent documents, secret collusive relationships with buyers, sellers, or both, and the wiring of funds under false pretenses with false amounts, including the laundering of funds. All of these actions were taken in an effort to unlawfully obtain funds under false pretenses.

25.     SureFunding and the Abernathys were not involved in the fraud perpetrated by Tradepay.

26.     On October 2, 2019, SureFunding sent a Notice of Default to Tradepay and later swept Tradepay's bank accounts, as it was entitled to do. The following day, SureFunding advised its noteholders in writing of Tradepay's default. Thereafter, SureFunding moved swiftly to explore all legal options, and on October 10, 2019, SureFunding met with counsel in Florida to pursue legal action.

    i.     **The Tradepay Litigation**

27.     Less than two weeks later, on October 23, 2019, SureFunding and others filed suit in state court in Florida against Tradepay and other related persons for breach of contract, conversion, negligence, breach of fiduciary duty, fraud and misrepresentation, civil conspiracy, and violation of deceptive trade practices. This suit is pending in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida under case number 2019-031155-CA-01 (the "Tradepay Litigation"). The status of the Tradepay Litigation is that the plaintiffs have filed an amended complaint. Certain defendants, including Tradepay, have filed motions to dismiss the amended complaint. Because of the COVID-19 pandemic and courts being closed in Florida, the hearing on the motions to dismiss have been rescheduled. A hearing on the motions to dismiss is scheduled for April 23, 2019.

28.     SureFunding's Tradepay Litigation counsel, Mr. C. Tab Turner and his firm, specialize in complex insurance cases, anti-terrorism cases, and money laundering cases that involve international banking. For the Tradepay Litigation, Mr. Turner has engaged a formidable team of private investigators and consultants who specialize in money laundering, forensic accounting, and asset tracing and recovery in specific geographic regions relevant to pursuing

9

Tradepay recoveries. Wherever possible, SureFunding has engaged these professionals on a contingency fee basis.

### ii. The Euler Hermes Claim

29. Contemporaneously with SureFunding's efforts to exercise all available legal remedies, MCS Agent filed insurance claims with Tradepay's credit insurer, Euler Hermes. The Debtor is the named beneficiary under that policy.

30. Between October 11, 2019 and November 27, 2019, MCS Agent, under the guidance of Mr. Turner and his team, filed on behalf of SureFunding and other invested entities 224 claims (consisting of 421 invoices) with Euler Hermes on invoices that Tradepay factored and the Buyers failed to pay. The total amount of the claims is in excess of $47.9 million dollars. The percentage interest of the $47.9 million claims from the three invested entities represented is 90.93% from SureFunding, 3.12% from SIA Unite, LLC, and 5.95% from SureFunding V, LLC.

31. Mr. Turner, on behalf of MCS Agent, and Euler Hermes are engaged in discussions regarding the resolution of the claims for the benefit of the Debtor and non-debtor entities SIA Unite, LLC and SureFunding V, LLC.

### iii. The Nevada Receivership Action

32. On March 20, 2020, some, but not all, of the noteholders filed a motion in District Court in Clark County, Nevada seeking appointment of a Receiver over the Debtor. On April 7, 2020, the Court approved the noteholders' motion and requested that counsel for the Noteholders submit an order for the appointment of a Receiver. On April 9, 2020, 5:58 p.m., counsel for the noteholders sent a final draft of the proposed order to Debtor's counsel with a demand that any comments be provided by noon the following day. In response, Debtor's counsel advised that the arbitrary deadline was inappropriate and unworkable, particularly in light of the

109707319.v7

Court's directive requiring that any disagreements be resolved by motion practice and given that the proposed order had been received after close of business on the eve of Good Friday and in the middle of Passover.

33.      Debtor's Counsel further indicated that Debtors disagreed with the proposed order and would submit comments by Monday, April 13, 2020, which was one business day after being provided with the proposed final draft.  Nevertheless, counsel for the noteholders submitted the proposed order to the Court on April 10, 2020, at 10:37 a.m. The District Court entered the order on the afternoon of April 13, 2020. Because the Note Purchase Agreement governing the notes requires that the collateral agent for the notes, which is comprised in part of the seven "key purchasers" (noteholders holding $2 million in face value or more) can only act unanimously, and not all of the key purchasers agreed to the receiver motion, the Debtor believes the receiver motion to have been improperly filed without authorization. There is, presently pending as of this writing, a motion to reconsider the state court's order appointing the receiver, in which the Debtor contends that a) the receivership action is contrary to the direction of the entire body of noteholders, as prior to the filing of the receivership action a vote of the noteholders was held and the noteholders rejected appointment of a receiver, and b) the filing of the receivership motion in Nevada and application of Nevada law to a Delaware LLC violates the Delaware Limited Liability Company Act. However, because of the automatic stay triggered by the filing of this bankruptcy case, the Nevada court vacated the hearing that was scheduled for argument on the motion for reconsideration. A status check regarding the stay is set for August 6, 2020.

109707319.v7

## PART II

## THE BANKRUPTCY CASE

34.    On April 14, 2020, the Debtor commenced this case by filing a petition for relief under chapter 11 of the Bankruptcy Code. Before filing this case, the Debtor took two major decisions regarding its governance.

35.    First, the Debtor appointed Tamarack Partners to provide John Palmer, CTP as its Independent Manager with voting control over bankruptcy-related matters. Second, Mr. Palmer retained Gavin/Solmonese LLC to provide me as the Debtor's Chief Restructuring and Liquidation Officer. Therefore, Mr. Palmer and I are empowered to make all bankruptcy-related decisions for the Debtor without any requirement that the Abernathys approve.

36.    To finance the filing of this case, the Abernathys, through their own unrelated non-debtor entities, have paid retainers to Fox Rothschild LLP, the Debtor's proposed counsel, and Gavin/Solmonese LLP, which is providing me to serve as CRLO. Specifically, the HARRAY Holdings Trust and the CTJT Family Trust have paid an advance retainer to Fox Rothschild LLP of $300,000. SCTOT LLC and the CTJT Family Trust have paid an advance retainer to Gavin/Solmonese LLC of $125,000.

37.    The Debtor intends to use this case to continue the Florida Litigation, continue to pursue the Debtor's claims against Euler Hermes, continue to collect on its performing investments, analyze and pursue potential avoidance actions, and to provide for a plan of liquidation to service equitably the Debtor's obligations to the noteholders and other creditors and stakeholders.

109707319.v7

38.    I believe that the Debtor's current corporate governance, coupled with the extensive powers granted by the Bankruptcy Code to a debtor-in-possession, are necessary to maximize recoveries to all creditors of the Debtor's estate.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  April 20, 2020

_____
Edward T. Gavin, CTP
Chief Restructuring & Liquidating Officer

109707319.v7