IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>SureFunding, LLC,[1]<br><br>               Debtor. | Chapter 11<br><br>Case No. 20-10953 (LSS)<br><br>**Objections Due: May 5, 2020 at 4:00 pm ET**<br>**Hearing Date: May 12, 2020 at 10:00 am ET** |

**DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING
THE DEBTOR TO EMPLOY AND RETAIN GAVIN/SOLMONESE LLC TO PROVIDE
A CHIEF RESTRUCTURING AND LIQUIDATING OFFICER AND
RELATED SERVICES PURSUANT TO 11 U.S.C. §§ 363 AND 105
EFFECTIVE AS OF THE PETITION DATE**

The above-captioned debtor and debtor-in-possession (the "Debtor") hereby submits this application (this "Application"), pursuant to sections 105(a) and 363(b) of title 11 of the United States Code, §§ 101 *et. seq.* (the "Bankruptcy Code"), for entry of an order, substantially in the form of Exhibit A attached hereto (the "Order"), authorizing the Debtor to retain and employ Gavin/Solmonese LLC ("G/S") to provide Edward T. Gavin, CTP as Chief Restructuring and Liquidation Officer (the "CRLO") for the Debtor, and provide additional staff (the "Additional Personnel" and together with the CRLO, the "G/S Professionals") to support the CRLO; and providing that the employment of the G/S Professionals is effective as of April 14, 2020. A copy of the Engagement Letter between the Debtor and G/S (the "Engagement Letter") is attached hereto as Exhibit B. In support of this Application, the Debtor submits the declaration of Edward T. Gavin, CTP (the "Gavin Declaration"), attached hereto as Exhibit C. In further support of this Application, the Debtor respectfully represents as follows:

**JURISDICTION AND VENUE**

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated as of February 29, 2012. This is a core proceeding within the meaning of 28 U.S.C. § 157(b). Pursuant to Local Rule 9013-1(f), the Debtor consents to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that

---

[1] The last four digits of the Debtor's taxpayer identification number is 7898. The Debtor's headquarters and service address is 6671 Las Vegas Blvd., Suite 210, Las Vegas, NV 89119.

the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.  The statutory and legal predicates for the relief sought herein are sections 105(a) and 363(b) of the Bankruptcy Code.

## BACKGROUND

3.  On April 14, 2020 (the "Petition Date"), the Debtor commenced a voluntary case under chapter 11 of the Bankruptcy Code. The Debtor is authorized to operate its business and manage its properties as debtor in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. No official committees have been appointed in this chapter 11 case, and no request has been made for the appointment of a trustee or examiner.

## RELIEF REQUESTED

4.  By this Application, the Debtor seeks, pursuant to Bankruptcy Code sections 105(a) and 363(b), entry of an order authorizing the Debtor to retain and employ G/S to provide Edward T. Gavin, CTP as CRLO and provide Additional Personnel to support the CRLO; and providing that the employment of the G/S Professionals is effective as of April 14, 2020.

## GAVIN/SOLMONESE LLC QUALIFICATIONS

5.  Based on the complexities associated with administering the chapter 11 case and the estate, the Debtor has determined that it requires the assistance of interim management with specialized experience in bankruptcy and interim management services. Accordingly, the Debtor seeks permission to employ G/S. The Debtor has determined that the retention of G/S is necessary and appropriate, and is in the best interests of the Debtor's estate because of G/S's expertise and qualifications in performing the services and analyses required in this particular bankruptcy case and for the reasons enumerated herein.

6.  G/S has significant qualifications and experience in providing the services contemplated herein. G/S's practice includes professionals with a wealth of experience in providing interim and restructuring executives and managers and advisory services to debtors and other interested parties in restructurings and reorganizations. G/S professionals provide

turnaround, financial, management consulting, financial, business, operational and strategic assistance in distressed business settings. G/S has executed numerous successful turnarounds, restructurings, sales, and capital market transactions. G/S is regularly appointed as trustee in court-supervised cases, and routinely provides CEOs, CROs, and other corporate officers. G/S serves troubled companies, debtors, and secured and unsecured creditors, creditors' committees, equity holders, and other parties in both in-court and out-of-court engagements.

7. Mr. Gavin is a Certified Turnaround Professional with a wealth of wide-ranging experience in insolvency and bankruptcy matters, fiduciary services, restructuring advisory, interim management, and litigation support. Mr. Gavin has over 20 years of experience working with distressed companies and their stakeholders in diverse industries, including retail, transportation, regulated and non-regulated manufacturing, pharmaceutical and healthcare, professional services, construction, and metal-forming. He has served in leadership roles in engineering, manufacturing, information technology, and regulatory affairs functions. Mr. Gavin has extensive experience in strategic planning and process re-engineering, with hands-on management experience in nonprofit, for-profit, and public sector operations. Mr. Gavin frequently testifies as an expert witness on matters such as ordinary course of business issues in preference litigation, as well as on fiduciary duties of management in distressed companies.

8. The Debtor is informed and believes that G/S has on many occasions performed similar services to the ones required in these cases for numerous debtors, trustees, examiners, and creditors' committees in other non-related cases under receivership, bankruptcy, and other insolvency proceedings. G/S has experience working on cases with similar fact scenarios in which they were presented with issues and performed analyses similar to the work at hand in this case.

109651656.v3

9. As set forth above, Mr. Gavin and G/S have extensive experience in providing restructuring advisory and restructuring management services in reorganization proceedings and have an excellent reputation for the services they have rendered in chapter 11 cases on behalf of debtors and creditors throughout the United States.

## TERMS OF RETENTION

**A.  Scope of Services to be Provided**

10. The Debtor has requested that G/S and the CRLO provide the services more specifically detailed in the Engagement Letter and summarized below, including but not limited to:

   a. Assist Debtor and Debtor's Counsel with preparation for the filing of the Bankruptcy Case;

   b. Assessing Debtor's business, financial obligations, operational needs, assets, business plan, liquidation strategy, and operating forecasts, and assessing go-forward options with respect to same;

   c. Evaluating the Debtor's strategic and financial alternatives;

   d. Creating a liquidation plan to present to Debtor's stakeholders to address Debtor's repayment of its outstanding indebtedness;

   e. Advising the Debtor on developing, evaluating, structuring and negotiating the terms and conditions of a plan of liquidation;

   f. Communicating with the Debtor's stakeholders that may include, but are not limited to, the Debtor's vendors, customers, employees, lenders, creditor committees, along with Court officials, attorneys and other service providers, as required;

   g. Making employment related decisions following consultation with the Debtor's board, management, and counsel;

   h. Overseeing litigation related to claims asserted by and against Debtor;

   i. Monitoring daily cash allocation and cash management processes, including the preparation of reports to manage any budgets and associated financing;

    j. Assisting the Debtor in negotiations with creditors;

    k. Such other services as Debtor may reasonably request and Advisor may agree to perform, which may include, without limitation, advising the Debtor concerning obtaining additional financing, recruiting personnel, and the implantation of a turnaround plan.

  11. The Debtor requires qualified professionals to render these essential professional services in these cases. As noted above, G/S has substantial expertise in all areas for which it is proposed to be retained. Accordingly, the Debtor submits that G/S is well qualified and best suited to perform these services and to assist the Debtor in this chapter 11 case.

**B. Professional Compensation**

  12. The Debtor agrees to pay fees for services rendered by G/S and the CRLO based upon the flat fee structure set forth in the Engagement Letter. For the period of April 2020, including work done in preparation of the bankruptcy case, G/S will be paid a fee of $100,000, plus reasonable expenses. For monthly periods beginning May, 2020, G/S will be paid a fee of $50,000; if G/S's actual fees incurred are in excess of $75,000 in any monthly period except April 2020, G/S will be paid a fee of $75,000, plus reasonable expenses; if G/S's actual fees incurred are in excess of $100,000 in any monthly period except April 2020, G/S will be paid a fee of $100,000, plus reasonable expenses. As provided for in the Engagement Letter, G/S received a $150,000 cash retainer in advance of the Petition Date.

  13. Such rates shall be subject to adjustment annually at such time as G/S adjusts its rates. Notice of any such adjustment shall be given to the Debtor reasonably in advance of its effectiveness.

  14. In addition to compensation for services rendered by G/S and the CRLO, G/S will seek reimbursement for reasonable and necessary expenses incurred in connection with this chapter 11 case, including, without limitation, for travel, meals, computer and database research charges, phone, fax and courier.

  15. Pursuant to the Engagement Letter, G/S's practice is to bill clients monthly on matters of this nature. G/S's experience has shown that billing on this basis keeps clients fully

5

informed of the level of costs they are incurring and rationalizes the entire billing process. Therefore, G/S will render monthly invoices to the Debtor for fees and expenses of its personnel incurred during the prior month. The Debtor will pay such invoices upon receipt.

16. The compensation arrangement reflected in the Engagement Letter is consistent with, and typical of, arrangements entered into by G/S and other restructuring and consulting firms with respect to rendering similar services for clients such as the Debtor.

**C.   No Duplication of Services**

17. G/S is aware that, by separate application, the Debtor is asking the Court to approve the retention of Fox Rothschild LLP as bankruptcy counsel. The Debtor may also file motions or applications to employ additional professionals on an as-needed basis. Each of these firms works, and will continue to work, under the direction of the Debtor's management. The Debtor's management is committed to minimizing duplication of services to reduce professional costs. To that end, all of the services that G/S will provide to the Debtor will be undertaken at the request of the Debtor and will be appropriately directed by the Debtor so as to avoid duplicative efforts among the Debtor's other retained professionals in this chapter 11 case. G/S will also use reasonable efforts to coordinate with the Debtor's other retained professionals to avoid the unnecessary duplication of services.

**D.   Indemnification**

18. As a material part of the consideration for which G/S and the CRLO have agreed to provide the services herein, pursuant to the Engagement Letter, the Debtor has agreed to indemnify and hold G/S and the CRLO harmless, to the full extent lawful, against any and all losses, actions, claims, damages, liabilities, or costs including reasonable legal fees and expenses, whether or not in connection with a matter that G/S is a party, as and when incurred, directly or indirectly, caused by, relating to, based upon, or arising out of G/S acting for the Debtor pursuant to the Engagement Letter.

19. The Debtor believes the indemnity provisions are reasonable terms and conditions of G/S's engagement and were, along with all terms of the Engagement Letter, negotiated by the Debtor and G/S at arm's length and in good faith. G/S and the Debtor believe that the indemnity

provisions are comparable to those indemnification provisions generally obtained in comparable engagements, both in and out of court. The Debtor respectfully submits that the indemnification provisions contained in the Engagement Letter, viewed in conjunction with the other terms of G/S's proposed retention and subject to the modifications set forth in the Proposed Order, are reasonable and in the best interests of the Debtor, its estate, and creditors.

**E.    Disinterestedness**

20.    To the best of the Debtor's knowledge, and except as disclosed in the Gavin Declaration: (i) G/S is a "disinterested person" within the meaning of Bankruptcy Code section 101(14), as required by Bankruptcy Code section 327(a), and does not hold or represent any interest adverse to the Debtor's estate; and (ii) G/S has no connection to the Debtor, its creditors or related parties, except as may be disclosed in the Gavin Declaration.

21.    As set forth in in the Gavin Declaration, the Debtor does not owe G/S any amount for services performed or expenses incurred prior to the commencement of the chapter 11 case, and, thus, G/S is not a prepetition creditor of the Debtor.

22.    The Debtor attaches the Gavin Declaration, which discloses, among other things, any relationship that the G/S, Mr. Gavin, or any other G/S professionals engaged on this matter have with the Debtor, its significant creditors, or other significant parties-in-interest known to G/S. In addition, as set forth in the Gavin Declaration, if any new material facts or relationships are discovered or arise, during the period of G/S's retention, G/S will use reasonable efforts to promptly provide the Court with a supplemental declaration.

**F.    Reporting Requirements**

23.    If the Court grants the relief requested herein, G/S will be employed in the chapter 11 case pursuant to Bankruptcy Code section 363. Because G/S is not being employed as a professional under section Bankruptcy Code 327, G/S shall not be required to submit fee applications pursuant to sections Bankruptcy Code 330 and 331. However, to maintain transparency and to comply with the U.S. Trustee's protocol applicable to the retention of personnel under section 363 of the Bankruptcy Code, G/S will file reports of compensation earned and expenses incurred on a quarterly basis with the Court and provide notice to the United States

Trustee for the District of Delaware, counsel to any statutory committee appointed in this chapter 11 case, and counsel to any debtor-in-possession financing lender (together with the U.S. Trustee and Committee, the "Notice Parties"). Such reports will (a) summarize the services provided to the Debtor, (b) summarize the compensation earned by each of the G/S personnel, (c) identify the staff employee provided, and (d) itemize the expenses incurred. Notice of the Quarterly Reports will provide for a time period of at least fourteen (14) days for objections by parties in interest. For the avoidance of doubt, the additional G/S personnel will not be required to submit time entries in tenth of an hour increments, as required by Local Rule 2016-2(d)(iv), but instead will submit time entries in quarter-hour increments.

24. Quarterly Reports shall be due no later than twenty (20) days after the end of a quarter with the first Quarterly Report, covering the period from the Petition Date through June 30, 2020, due on or before July 20, 2020. This procedure shall continue for any subsequent Quarterly Reports. In the event that a party in interest objects to a Quarterly Report, G/S's fees and expenses shall be subject to review by this Court.

## BASIS FOR RELIEF REQUESTED

**A.  The Court May Authorize the Employment of G/S Pursuant to Bankruptcy Code Section 363**

25. The Debtor submits that the retention of G/S and the CRLO is proper under Bankruptcy Code section 363. Section 363 provides, in relevant part, that a debtor in possession "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate[.]" 11 U.S.C. § 363(b)(1). Under applicable case law in this and other circuits, courts will approve a debtor's proposed use of its assets under section 363(b)(1) if it represents a sound business purpose on the part of the debtor. See, e.g., In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (Bankr. D. Del. 1999) ("In evaluating whether a sound business purpose justifies the use, sale or lease of property under Section 363(b), courts consider a variety of factors, which essentially represent a business judgment test."); In re Martin, 91 F.3d 389, 395 (3d Cir. 1996) (courts defer to a trustee's judgment concerning use of property under §363(b) when there is a legitimate business justification).

26. Under the business judgment rule, a court will not interfere with the judgment of a board of directors unless there is a showing of "gross and palpable overreaching." In re Marvel Entm't Group, Inc., 273 B.R. 58, 78 (Bankr. D. Del. 2002) ("[U]nder the business judgment rule, a board's decisions will not be disturbed if they can be attributed to any rational purpose and a court will not substitute its own notions of what is or is not sound business judgment." (internal citations omitted)).

27. The retention of corporate officers is proper under section 363, and courts in this district and elsewhere have determined that such retention is an appropriate exercise of a debtor's business judgment. See, e.g., In re Promise Healthcare Group, LLC, No. 18-12491 (CSS) (Bankr. D. Del. Dec. 10, 2018) [D.I. 273] (authorizing the retention of a firm to designate turnaround management officers *nunc pro tunc* to the petition date); In re The Nordam Group, Inc., No. 18-11699 (MFW) (Bankr. D. Del. Aug. 28, 2018) [D.I. 216] (same); In re J & M Sales, Inc., Case No. 18-11801 (LSS) (Bankr. D. Del. Aug. 27, 2018) [D.I. 279] (same).

28. Further, the Court's general equitable powers codified in Bankruptcy Code section 105(a) provide additional authority for the relief requested herein. Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of this title." See 11 U.S.C. § 105(a); see also US. v. Energy Res. Co., 495 U.S. 545, 549 (1990); Adelphia Commc'ns Corp. v. Am. Channel (In re Adelphia Commc'ns Corp.), 345 B.R. 69, 85 (Bankr. S.D.N.Y. 2006) ("Section 105(a) provides broad equitable power for a Bankruptcy Court to maintain its own jurisdiction and to facilitate the reorganization process."); Gillman v. Cont'l Airlines (In re Cont'l Airlines), 203 F.3d 203, 211 (3d Cir. 2000) ("Section 105(a) of the Bankruptcy Code supplements courts' specifically enumerated bankruptcy powers by authorizing orders necessary or appropriate to carry out provisions of the Bankruptcy Code.").

29. The Debtor submits that the retention and employment of G/S and the selection of Mr. Gavin as CRLO is a sound exercise of its business judgment pursuant to Bankruptcy Code section 363(b), as G/S's services are necessary and essential to the Debtor's restructuring and liquidation efforts. As detailed herein, G/S and Mr. Gavin have extensive experience providing

9

management services to distressed companies. The Debtor selected G/S to provide a CRLO because of the significant relevant experience and reputation of G/S and Mr. Gavin.

30. Additionally, the Debtor submits that the retention and employment of Mr. Gavin and G/S to provide restructuring management and advisory services and designation of Mr. Gavin as CRLO is consistent with the "J. Alix Protocol" established by the Office of the U.S. Trustee, and approved by this Court, for the employment of restructuring consultants and interim management services. See e.g., In re American LaFrance, LLC, No. 08-10178 (BLS) (Bankr. D. Del. Feb. 21, 2008); In re Nine West Holdings, Inc., No. 18-10946 (SCC) (Bankr. S.D.N.Y. July 2, 2018) (holding that the retention of distressed management consultants under Bankruptcy Code section 363(b) is a widely accepted practice clearly consistent with the J. Alix Protocol).

**B.   The Retention of G/S and Appointment of Mr. Gavin as CRLO is Critical to the Success of the Debtor's Chapter 11 Case**

31. Denying the relief requested herein would deprive the Debtor of the assistance of a highly qualified CRLO and disadvantage the Debtor and all parties in interest. The Debtor would be forced to engage a new CRLO who would lack a thorough understanding of the Debtor's business and the restructuring and liquidation strategy the Debtor implemented prior to the Petition Date. Further, hiring a new CRLO would involve a steep learning curve, significant time, and additional resources—all of which are in short supply given the brief timeframe within which the Debtor seeks to effectuate its contemplated restructuring and liquidation. Accordingly, the Debtor respectfully submits that the services provided by G/S and Mr. Gavin are critical to the chapter 11 case and requests that the Court approve their retention in substantially the form attached hereto.

### NOTICE

32. The Debtor has provided notice of this Application to: (i) the Office of the United States Trustee for the District of Delaware; (ii) the Office of the United States Attorney for the District of Delaware; (iii) holders of the twenty (20) largest unsecured claims against each of the Debtor; and (iv) any party that has requested notice under Bankruptcy Rule 2002. Notice of this Application and any order entered hereon will be served in accordance with Local Rule 9013-1(m). In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is necessary.

## NO PRIOR REQUEST

33. No prior request for the relief sought in the Application has been made to this Court or any other Court.

Wherefore, the Debtor respectfully requests entry of an order authorizing the relief requested herein, substantially in the form attached hereto as Exhibit A, and granting the Debtor such other and further other relief as may be appropriate.

Dated: April 20, 2020  **FOX ROTHSCHILD LLP**

*/s/ Thomas M. Horan*
Thomas M. Horan (DE Bar No. 4641)
Daniel B. Thompson (DE Bar No. 6588)
919 N. Market St., Suite 300
Wilmington, DE 19899-2323
Telephone: (302) 654-7444
E-mail: thoran@foxrothschild.com
E-mail: DanielThompson@foxrothschild.com

Michael A. Sweet (admitted *pro hac vice*)
325 California St., Suite 2200
San Francisco, CA 94104-2670
Telephone: (415) 364-5560
E-mail: msweet@foxrothschild.com

Gordon E. Gouveia (admitted *pro hac vice*)
321 N. Clark St., Suite 1600
Chicago, IL 60654
Telephone: (312) 980-3816
E-mail: ggouveia@foxrothschild.com

*Proposed Counsel to the Debtor and Debtor-in-Possession*

109651656.v3