## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| SureFunding, LLC, | Case No. 20-10953 (LSS)<br>**Hearing Date: May 12, 2020 at 10 a.m. (ET)\***<br>**Objection Deadline: May 5, 2020 at 4 p.m. (ET)** |
| Debtor. | |

### UNITED STATES TRUSTEE'S MOTION FOR AN ORDER DISMISSING OR CONVERTING THIS CASE TO CHAPTER 7 OR DIRECTING THE APPOINTMENT OF A TRUSTEE

Andrew R. Vara, the United States Trustee for Region 3 (the "U.S. Trustee"), through his undersigned counsel, respectfully moves the Court for an order dismissing this chapter 11 case pursuant to Section 1112(b) of the United States Bankruptcy Code (the "Code"), converting this case to one under chapter 7, or alternatively, directing the appointment of a trustee pursuant to Section 1104 of the Code (the "Motion"), and respectfully and upon information and belief, represents as follows:

### PRELIMINARY STATEMENT

1.      SureFunding, LLC ("SureFunding," or "Debtor") is already the subject of a Nevada state court proceeding, wherein a receiver was appointed to oversee its orderly liquidation for the benefit, primarily, of the only apparent creditors of SureFunding—the Noteholders (as defined below).  The outcome in the Nevada state court proceeding stems from, in large part, the Debtor having raised approximately $34 million from investors like the Noteholders, with promises of safety, diversification, and above market returns, only to allow the Debtor's primary counterparty and its principals to convert, or abscond with all of those funds, leaving only causes of action and insurance claims to provide a potential recovery to the Noteholders.

---

\* Hearing Date and Objection Deadline requested in contemporaneous motion to shorten notice.

2.      Dismissal of SureFunding's case is warranted under Section 1112(b) of the Code for among other reasons, lack of good faith in filing the chapter 11 petition, because without business operations or intention to maximize the value of the estate, the Debtor's case serves no valid bankruptcy purpose.   Further, the Debtor's case should be dismissed for cause under Section 1112(b) because the facts leading to the filing of this case demonstrate (as set forth below) that dismissal will prevent a continuing loss to the estate. Additionally, in its present posture—a posture which seems unlikely to change over the course of this case—there is an absence of a reasonable likelihood of SureFunding's rehabilitation, as already concluded by a state court in Nevada. Dismissal also appears to be in the best interest of the Noteholders and whatever other creditors exist.

3.      Alternatively, the same facts supporting dismissal support conversion to a chapter 7 proceeding.   A chapter 7 conversion is an alternative in the event the Court determines it is necessary to address whether Delaware law precluded the Nevada court from entering an order appointing a receiver, or if this Court determines that dismissal is not in the best interest of stakeholders.

4.      In the event the Court finds that this case should not be dismissed or converted under Section 1112(b), pursuant to Section 1104(a), the appointment of a trustee is required on these facts.  An independent fiduciary with no ties or obligations to prepetition management must take control of SureFunding's estate given the apparent gross mismanagement of Noteholder investment funds and because such appointment will be in the best interest of the Noteholders and all other creditors in this case.  The Debtor's prepetition actions indicate SureFunding's principals understand the Debtor as constituted prepetition should no longer be in possession, nor completely managed by its regular officers and managers; rather, an independent manager and a Chief

2

Restructuring and Liquidation Officer ("CRLO") have been selected by prior management. Debtor's prepetition management has ceded some of its authority over to the independent manager and CRLO in an attempt to select its own chapter 11 trustee. This CRLO is the second chief restructuring officer the Debtor has purportedly engaged this month.

5.     Those changes are, however, insufficient to effectively distance current management from prior management, given that prior management has paid the CRLO's retainer; this reliance on prior management prevents the independent manager and CRLO from acting as true independent fiduciaries. Therefore, in the event dismissal or conversion are not appropriate, appointment of a chapter 11 trustee is the only guaranteed method available to ensure a true independent fiduciary with no ties to prior management is in control, and therefore can properly investigate and pursue appropriate action against prepetition management.

6.     Based on the foregoing, the U.S. Trustee contends that cause exist to dismiss this case, or alternatively either by conversion or appointment of a chapter 11 trustee, install an independent and disinterested person who can administer this estate for the benefit of the Noteholders and other creditors without being subject to pressures from prior management.

## JURISDICTION

7.     Pursuant to 28 U.S.C. § 1334, applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and 28 U.S.C. §157(b)(2), this Court has jurisdiction to hear this Motion.

8.     Pursuant to 28 U.S.C. § 586, the U.S. Trustee is generally charged with overseeing the administration of chapter 11 cases filed in this District; this charge includes seeking relief under Section 1112(b) of the Bankruptcy Code. 28 U.S.C. § 586. Under Section 307 of the Bankruptcy Code, Congress charged the U.S. Trustee with broad responsibilities in chapter 11 cases and the

standing to rise and be heard on any issue in any case or proceeding.  11 U.S.C. § 307; *see also United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (the U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the United States Trustee as a "watchdog").

9.      In addition, Section 1104(a) of the Code specifically authorizes the U.S. Trustee to seek the appointment of a chapter 11 trustee.  Furthermore, Section 1104(e) mandates that the U.S. Trustee seek the appointment of a chapter 11 trustee in cases where there are reasonable grounds to suspect "that current members of the governing body of the debtor" or "members of the governing body who selected the debtor's chief executive or chief financial officer, participated in actual fraud, dishonest, or criminal conduct in the management of the debtor or the debtor's public financial reporting."  11 U.S.C. § 1104(e).

## BACKGROUND

### I.   SureFunding's Ineffective Stewardship of Noteholder Funds Leads to a Receivership, Governance Changes, and Filing of the Instant Case

10.      On April 14, 2020, SureFunding filed a voluntary petition for relief under Chapter 11 of the Code, thereby commencing the above-captioned proceeding. *See* Petition [ECF No. 1].

11.      SureFunding's petition indicates that it is a limited liability company with a principal place of business in Las Vegas, Nevada, organized under the laws of the State of Delaware. *See id.* at pg. 3. Individuals by the name of Justin and Jason Abernathy (collectively the "Abernathys") are managers of SureFunding. *See id.* at pg. 8. Another individual named John Palmer is identified an independent manager for "Tamarack Associates, Inc." *See id.*  The petition also indicates that SureFunding has between fifty to ninety-nine creditors, estimated assets of over $10 million to $50 million, and the same in estimated liabilities. *See id.*  Concerning creditors,

SureFunding's Official Form 204 indicates that its top twenty unsecured creditors are all promissory noteholders holding between $500,000 up to approximately $2 million in individual unsecured claims which are "disputed." *See id.* at pg.11.

12.     The Debtor is a "private debt strategy company" operated by its founders the Abernathys, that sold notes to various interested individuals and entities to raise in excess of $34 million.  Affidavit of Edward T. Gavin, CTP in Support of Voluntary Petition [ECF No. 23] (the "Gavin Declaration") at ¶¶ 4-5.  Ultimately, $28.7 million of the noteholder funds entrusted to the Debtor were invested with Tradepay Capital LLC ("Tradepay") a purported "international factoring company with offices in Miami, New York, and Mumbai" and an apparent sophisticated fraudster, that was able to obtain the funds from the Debtor under false pretenses.  *Id.* at ¶¶ 19 & 24; *see also* Amended Complaint at ¶ 1*, ECP Holding III, LLC et. al. v. Tradepay Capital, LLC et. al.*, Case No. 2019-031155-CA-01 (11th Judicial Circuit, Miami-Dade County, FL, Jan. 15, 2020). Despite Tradepay's inability to repay funds due to the Debtor as early as April 23, 2019, the Debtor continued investing the noteholders' funds with Tradepay through late September of 2019. Gavin Declaration at ¶¶ 22-23. The Abernathys continued to solicit funds from various noteholders through the same period, with text message solicitations sent as late as September 22, 2019 to Mr. Falkenberry, a declarant with respect to the Noteholder Motions (defined below), even though the Debtor knew that Tradepay had not been performing as required under the contract with the Debtor. *See* Exhibit A hereto. The Debtor did not notify the noteholders that entrusted the Debtor with its funds of the issues with Tradepay until October 3, 2019.  *Id.* at ¶ 26.

13.     In litigation brought by the Debtor against Tradepay and other defendants, the Debtor asserts claims for "conversion, negligence, breach of fiduciary duty, fraud and misrepresentation, civil conspiracy, and violation of deceptive trade practices."  *Id.* at ¶ 27.

Tradepay and individuals named Ritesh Shaw, Piyush Parasmal Rampuria, Pusppesh Kumar Baid, Mrinal Ojha, Atit Sudhir Gandhi, and Patrick De Lisi "set out to obtain funds from [SureFunding and affiliates] for factoring trade receivables that were supposedly valid and non-collusive business transactions, . . . thus inducing [SureFunding and affiliates] to authorize monetary investments and wire transfers." *See* Amended Complaint at ¶ 2, *ECP Holding III, LLC et. al. v. Tradepay Capital, LLC et. al.*, Case No. 2019-031155-CA-01 (11th Judicial Circuit, Miami-Dade County, FL, Jan. 15, 2020). SureFunding alleges that Pusppesh Kumar Baid ("Baid") was employed by Tradepay and had an integral role in the Tradepay "funding process cycle." *Id*. at ¶ 13. Baid handled investments despite it appearing that since 2012, Baid had been a fugitive from justice in India and had ties to crimes of a fraudulent nature in India. *Id*. The other individuals named in the complaint (including Baid) were all principals or employees of Tradepay that used Tradepay for their own personal benefit and as a fraudulent scheme to induce investments and abscond with $34 million in unpaid invoices; some of these individuals apparently lied about their professional past. *See id*. at 4-31, 54-63. SureFunding continued sending funds to Tradepay and took insufficient action to uncover its principals' and/or employees' fraud, deceit, and manipulation for over two years. *See id*. Tradepay and the individuals associated with it appeared to have been a shell of an enterprise with no actual relationships to the accounts that supposedly belied its "factoring" business. *See id*. Tradepay's sophisticated apparent fraud led to SureFunding's default to the noteholders that had invested and/or lent money to SureFunding to facilitate the investment in Tradepay (the "Noteholders").

14.     Due to SureFunding's inability to effectively manage the situation with Tradepay, the Noteholders organized and retained counsel. *See* Noteholders' Motion to Excuse at ¶ 39-40 [ECF No. 14]. The Noteholders called a default on the notes (due in December 2019), and on

March 20, 2020, the Noteholders filed suit against SureFunding in Nevada state court for breach of contract seeking damages for at least $23.1 million. *See* Exhibit 2-B at ¶ 1, Noteholders' Motion to Excuse, [ECF No. 14-2]. Shortly thereafter, on March 24, 2020, the Noteholders filed a motion in the same court for appointment of a receiver (the "Nevada Receiver Motion"). *See* Exhibit 2-B, Noteholders' Motion to Excuse, [ECF No. 14-2].  Over opposition by SureFunding,[1] after a hearing on or about April 7, 2020, the Nevada state court determined a receiver should be appointed  and requested submission of an order with better defined powers, and later on April 13, 2020 (the day before the instant case was commenced), entered a further order granting the motion (the "Nevada Receivership Order").  The Nevada state court appointed Michael F. Flanagan, of Flanagan & Associates, LLC as receiver (the "Nevada Receiver").  The Nevada Receivership Order made the following findings of fact and conclusions of law:

- "Despite the fact that Defendant [SureFunding, LLC] has recently appointed a 'Chief Restructuring Officer,' it appears that the situation is beyond restructuring and operational improvement and is instead in the realm of liquidation. This particularly so given the sizable amounts due to Plaintiffs [Noteholders] under the Notes";

- The Noteholders are creditors of SureFunding;

- "Plaintiffs [the Noteholders] have a reasonable probability of success on the merits with respect to their breach of contract claim"; and

- "[T]he long-term interest of protecting and marshaling the assets of Defendant for the benefit and protection of all concerned outweighs such short-term cost, especially in light of the magnitude of Plaintiffs' meritorious claims."

*See* Exhibit 2-B at ¶¶ 13, 14, 17,18, Noteholders' Motion to Excuse, [ECF No. 14-2].

---

[1] SureFunding did not raise any arguments concerning the legal authority of the Nevada court to entertain the Nevada Receiver Motion.

15.     The next day, April 14, 2020 the Debtor filed its petition.  SureFunding appointed Edward T. Gavin of Gavin/Solomonese LLC as Chief Restructuring and Liquidation ("CRLO") who will purportedly be overseen in all matters related to this chapter 11 case by Mr. John Palmer of Tamarack Associates, Inc.  Gavin Declaration at ¶ 35.

16.     The Abernathys have financed the filing of the chapter 11 case by directing non-debtor entities to pay retainers to proposed Debtor's counsel Fox Rothschild LLP and Gavin/Solomonese LLP of $300,000.00 and $125,000.00, respectively. Gavin Declaration at ¶ 36.

17.     Additionally, the Abernathys have purportedly invested approximately $7.3 million of personal wealth in entities that have entities that have investments in Tradepay. *See* Defendant SureFunding, LLC's Opposition to Plaintiffs' Motion of Receiver, *Brett Hatton, et. al. v. SureFunding, LLC, Case No*, A-20-812651-B (District Court, Clark County, NV).

18.     One day after the petition was filed, the Noteholders filed two motions: (i) the Motion to Excuse Compliance with Section 543(a) & (b) of the Code (the "Motion to Excuse") [ECF No. 14]; and (ii) Motion to Dismiss Case (the "Dismissal Motion") [ECF No. 15] (together, the "Noteholder Motions").  A hearing on the Noteholder Motions is set for May 12, 2020.

19.     In sum, the Noteholder Motions detail a documented history of the Noteholders' efforts to limit the losses it incurred as a result of advancing money to SureFunding for what was a failed investment scheme with Tradepay

20.     During the status conference in this chapter 11 case held April 21, 2020, SureFunding represented that there were competing submissions between the Noteholders and the Debtor about which receiver to appoint in the Nevada proceeding. As the U.S. Trustee understands, SureFunding requested that the Nevada state court appoint a receiver from the firm FTI Consulting. Notably, at the beginning of April 2020, SureFunding purportedly retained Michael Tucker of FTI

Consulting as its CRO. *See* Defendant SureFunding, LLC's Opposition to Plaintiffs' Motion of Receiver, *Brett Hatton, et. al. v. SureFunding, LLC*, Case No, A-20-812651-B (District Court, Clark County, NV). The Nevada court, instead, chose the candidate submitted by the Noteholders, Mr. Flanagan. *See supra. ¶* 14.

21.    It appears that $300,000 of management fees have been paid indirectly to the Abernathys since the issues with Tradepay began unfolding.

22.    The Fox Rothschild firm represents SureFunding in the Nevada state court litigation.  This same firm is proposed counsel to the Debtor.  SureFunding paid the retainer for the Nevada litigation, while the retainer for the instant case was paid by affiliates of the Abernathys.  *See* Gavin Declaration at ¶ 36.

23.    SureFunding has not filed motions for any typical "first day" relief, and its only pleadings as of the filing hereof are retention motions, interim compensation procedures, and a bar date motion.

24.    The U.S. Trustee does not, at this juncture, have the benefit of a thorough investigation into these matters but both the Noteholders' and SureFunding's allegations in the Nevada and Florida proceedings, respectively, the Nevada state court conclusions of fact and law, and papers filed with this Court raise serious concerns about the administration of this case, and the need for a true independent fiduciary to control the affairs of the Debtor.

## ARGUMENT

I.    **Pursuant to Section 1112(b), the Court should dismiss this case or convert it to one under chapter 7 because: the Debtor filed the case in bad faith; remaining in chapter 11 will cause continuing losses to the estate; and the Debtor has no reasonable likelihood of rehabilitation**

25.    Section 1112(b) of the Bankruptcy Code provides that, upon a finding of cause, a Court shall convert a chapter 11 case to a chapter 7 or dismiss the case entirely. 11 U.S.C. §

1112(b). Section 1112(b)(4) enumerates sixteen examples that constitute cause, but the list is non-exhaustive. 11 U.S.C. 102(3) (instructing courts to interpret the use of "includes" to be not limiting). As such, the Court has wide discretion in determining whether cause exists for the purposes of Section 1112(b). *In re SGL Carbon Corp.*, 200 F.3d 154, 160 (3d Cir. 1999).

26.     Section 1112(b) imposes a good-faith requirement on all chapter 11 filings. *Id.*at 162.  When the Debtor's good faith is called into question, the Debtor bears the burden of showing that good faith is present in its filing. *In re Tamecki*, 229 F.3d 205, 207 (3d Cir. 2000).

27.     Although the Code does not define good faith, showing good faith rests on two questions: (1) whether the petition serves a valid bankruptcy purpose, such as preserving a going concern or maximizing the value of the debtor's estate; and (2) whether the petition is filed to obtain a tactical advantage. *In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 119 (3d Cir. 2004).

28.     Efforts by the Debtor to remain in business constitute efforts to preserve a going concern. *Integrated Telecom*, 384 F.3d at 120. (quoting *In re SGL Carbon Corp.*, 200 F.3d 154, 165–66 (3d Cir. 1999)). Further, maximizing the value of the estate in chapter 11 through liquidation occurs only when some value is otherwise lost outside of the bankruptcy. *Id.*

29.     In addition to requiring good faith, section 1112(b) states that cause for dismissal includes: (1) substantial or continuing loss or diminution to the estate and (2) the absence of reasonable likelihood of rehabilitation. 11 U.S.C. § 1112(b)(4)(A).

30.     Upon finding cause, the Court must determine whether conversion or dismissal best serves the interest of the creditors and the estate.  *In re Am. Capital Equip., LLC*, 688 F.3d 145, 161 (3d Cir. 2012).  Here again, the Court has wide discretion to use its "'equitable powers' to

make 'an appropriate' disposition of the case[.]" *Id*. at 163 (quoting *In re Camden Ordnance Mfg. Co. of Arkansas, Inc.*, 245 B.R. 794, 798 (E.D. Pa. 2000)).

###### A. *The Debtor's chapter 11 was filed in bad faith because it serves no valid bankruptcy purpose.*

31.     The Debtor's chapter 11 should be dismissed because it does not serve a valid bankruptcy purpose, such as preserving a going concern or maximizing the value of the estate.

32.     In the Nevada Receivership Order, the Nevada state court found that the Debtor's liabilities to investors, *i.e.*, substantially the Noteholders, eliminated any possibility for the Debtor to successfully restructure and implement operational improvements. According to the court, the Debtor's only option was to liquidate.  The Debtor has acknowledged the need for liquidation in its own actions, among other things designating Mr. Gavin "Chief Restructuring and *Liquidation* Officer."  *See* [ECF No. 23] (emphasis added).

33.     Despite the Nevada state court's findings of fact, the Debtor filed under chapter 11 while, thus far, pursing no plan to restructure and while admittedly planning to liquidate.  Outside of the bar date relief, only retention and compensation matters have been filed by the Debtor.

34.     For the reasons set forth here, the Court should dismiss this case, or convert this chapter 11 case to a chapter 7 case so that the Debtor may liquidate, as it appears to be doing so already, if the Court determines that conversion is more appropriate given the legal issues asserted by the Debtor in the Gavin Declaration.

###### B. *The Debtor's chapter 11 will cause continuing losses to the estate while proceeding in the absence of a reasonable likelihood of rehabilitation.*

35.     Under section 1112(b)(4)(A), the Code states that cause includes: substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of

rehabilitation. The Debtor's case contains evidence of continuing loss to the estate and an absence of a reasonable likelihood of rehabilitation.

36.    As noted above, the Debtor is currently party to two separate cases currently being litigated at the state court level in Nevada and Florida. In the first case, the Debtor's business affairs were ordered into receivership for the primary purpose of liquidating the estate and maximizing recovery for the business's creditors, i.e., the Noteholders.

37.    Permitting the case to continue in chapter 11 will cause further and unnecessary loss to the Debtor's estate through the litigation expenditures demanded by chapter 11 cases, such as the retainment and payment of chapter 11 professionals, including local counsel, payment of appointed examiners or trustees, and the U.S. Trustee's quarterly fees.

38.    Additionally, the Debtor appears to have no reasonable likelihood of rehabilitation. As documented in its two ongoing state court cases, the Debtor lost approximately $35 million in an apparently fraudulent scheme, resembling a Ponzi-scheme executed by individuals using Tradepay as a shell of an enterprise, with some individuals being purported fugitives from justice. Most of those funds, approximately $23 million, belonged to the Noteholders, which are legitimate individual investors.

39.    As it stands, the Debtor's only remaining assets are the unliquidated claims currently being litigated in Florida state court, an action that does not necessarily require the protections of the Bankruptcy Code in order to provide recoveries to creditors that had already commenced action to protect their interests.  If dismissal is not in the best interest, then conversion to chapter 7 is, as doing so will place an independent fiduciary in the form of the chapter 7 trustee in control of the Debtor to pursue causes of action and maximize value without being restrained by the Debtor's prior management or hand-picked bankruptcy representatives.

**II.    Alternatively, the Court should appoint a chapter 11 trustee under Section 1104 of the Code because the Debtor has demonstrated gross mismanagement of its business; the Debtor is attempting to liquidate under its own Chief Restructuring and Liquidation Officer; acrimony is present between the parties; and appointing a chapter 11 trustee is in the best interest of the creditors.**

40.    Section 1104(e) of the Bankruptcy Code requires the U.S. Trustee to move for the appointment of a trustee under subsection (a) if there are reasonable grounds to suspect that current members of the governing body of the debtor, the debtor's chief executive or chief financial officer, or members of the governing body who selected the debtor's chief executive or chief financial officer, participated in actual fraud, dishonesty, criminal conduct in the management of the debtor or the debtor's public financial reporting. 11 U.S.C. § 1104(e).

41.    11 U.S.C. § 1104(a) states that the Bankruptcy Court shall order the appointment of a trustee, at any time after the commencement of the case but prior to confirmation of a plan, on request of a party in interest or the U.S. Trustee, and after notice and a hearing:[2]

(1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor;

(2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor;

42.    Subsection (1) addresses management's pre and post-petition misdeeds or mismanagement, while subsection (2) provides the court with "particularly wide discretion" to

---

[2] A number of courts have indicated that grounds for the appointment of a trustee must be established by "clear and convincing" evidence. *See In re G-1 Holdings, Inc.,* 385 F.3d 313 (3d Cir. 2004). However, in light of Supreme Court precedent and the recent addition of § 1104(e) to the Bankruptcy Code, the better view is that the appropriate burden of proof should be the "preponderance of the evidence." *See Tradex Corp. v. Morse,* 339 B.R. 823, 829-32 (D. Mass. 2006) (citing *Grogan v. Garner,* 498 U.S. 279, 286 (1991)).

appoint a trustee even absent wrongdoing or mismanagement. *In re Bellevue Place Associates,* 171 B.R. 615, 623 (N.D. Ill. 1994). Where the court finds either that cause exists or that appointment is in the interest of the parties, an order for the appointment of a trustee is mandatory. *Official Comm. Of Asbestos Pers. Injury Claimants v. Sealed Air Corp. (In re W.R. Grace & Co.)*, 285 B.R. 148, 158 (Bankr. D. Del. 2002).

43.     The categories enumerated in 11 U.S.C. § 1104(a)(1) "cover a wide range of conduct" and, thus, are best described as illustrative, rather than exclusive. *See In re Marvel Entertainment Corp.*, 140 F.3d 463, 472 (3d Cir. 1998) (quoting *Committee of Dalkon Shield Claimants v. A.H. Robbins Co*., 828 F.2d at 242). Fraud, dishonesty, incompetence, and gross mismanagement of a debtor's business affairs are all grounds for appointment of a chapter 11 trustee under 11 U.S.C. § 1104(a)(1). *See, e.g., In re Sharon Steel Corp.*, 871 F.2d 1217 (3d Cir. 1989); *In re Colby Construction Corp.*, 51 B.R. 113, 116-118 (Bankr. S.D.N.Y. 1985). The determination of whether cause exists must be taken on a case by case basis, taking into account all relevant factors. *Sharon Steel*, 871 F.2d at 1225.

44.     Pre-petition conduct alone may provide the basis for a court to appoint a trustee. *See In re Rivermeadows Assocs., Ltd*., 185 B.R. 615, 619 (Bankr. D. Wyo. 1995). Further, evidence that the current management grossly mismanaged the debtor's affairs prior to filing is cause for appoint of a trustee. *In re Crescent Beach Inn, Inc.*, 22 B.R. 155, 159 (Bankr. D. Me. 1982).

45.     Lastly, under Third Circuit case law, a party moving for the appointment of a trustee under Section 1104(a) must establish the need for a trustee by clear and convincing evidence. *See In re Marvel Entertainment Group, Inc.*, 140 F. 3d 463, 471 (3rd Cir. 1998); *see also In re G-Holdings, Inc*., 385 F. 3d 313, 320 (3d Cir. 2004). However, the Court is not required to hold a full evidentiary hearing. *See In re Ionosphere Clubs, Inc*., 113 B.R. 164, 167 (Bankr. S.D.N.Y. 1990).

**A. Cause to appoint a chapter 11 trustee exists because the Debtor's prepetition conduct exhibited gross mismanagement of its business and investor funds and the subsequent appointment of a Chief Restructuring and Liquidation Officer indicates a chapter 11 trustee is required.**

46.     Fraud, dishonesty, incompetence, and gross mismanagement of a debtor's business affairs, pre and post-petition, all constitute grounds for appointment of a chapter 11 trustee under 11 U.S.C. § 1104(a)(1). *See, e.g., In re Sharon Steel Corp.*, 871 F.2d 1217 (3d Cir. 1989); *In re Crescent Beach Inn, Inc.*, 22 B.R. 155, 159 (Bankr. D. Me. 1982; *In re Colby Construction Corp.*, 51 B.R. 113, 116-118 (Bankr. S.D.N.Y. 1985).

47.     The Debtor's prepetition litigation established a record indicating that the Debtor exhibited gross mismanagement of its business affairs that resulted in the loss over $34 million in the short span of one year. The losses included $23.1 million of the legitimate investor funds.

48.     According to the record established by the Debtor's ongoing state-court litigation in Florida, the Debtor and Tradepay entered into an agreement by which Tradepay would pay expenses associated with certain "Participant Accounts." Beginning in April 2019, Tradepay began defaulting on its agreement and accrued considerable liabilities.

49.     Despite Tradepay's conduct, the Debtor appeared to take few, if any, prudent steps to remedy the defaults and secure investor funds. Ultimately, in a single year, the Debtor became incapable of recovering its $34-million investment. Under any measure, the loss of such high quantities indicates a lack of prudent oversight equating to gross mismanagement.  Appointment of a chapter 11 trustee would open up additional avenues of recovery for stakeholders including allowing an independent fiduciary to pursue litigation against the Debtor's prepetition management.

50.     Prior to this case, the Nevada state court concluded that the Debtor was incapable of managing its affairs, that its business was beyond restructuring, and that liquidation was the

only option remaining to recover investor losses.  The court's conclusion supports two notions: (1) that the Debtor is incapable of managing its affairs; and (2) that appointing a body to oversee the Debtor's affairs is in the best interest of the Debtor's creditors.  These notions remain true even as the Debtor has installed a new director and attempted to delegate restructuring and liquidation efforts to a CRLO.  The Debtor's governance changes on the eve of filing this chapter 11 case effectively demonstrate that the Debtor needs an independent fiduciary to manage its affairs. Rather than allowing prior management to hand-pick their successor in the form of the additional director and the CRLO, a true independent fiduciary in the form of a chapter 11 trustee is the appropriate remedy.

51.     In substance, the Debtor is trying to make Mr. Palmer and Mr. Gavin as its own chosen chapter 11 trustee. That is not permissible. The Bankruptcy Code vests the authority to direct the appointment of a chapter 11 trustee with the Court and vests the U.S. Trustee with the authority to appoint such a chapter 11 trustee subject to Court approval. The Court should not permit the Debtor to evade the process Congress has provided for installing a trustee in a chapter 11 case, especially when prior management has selected their preferred "trustee." Under section 1104(d) if the court orders the appointment of a trustee or an examiner, the U.S. Trustee, after consultation with parties in interest, shall appoint, subject to the court's approval, one disinterested person to serve as trustee in the chapter 11 case. This Debtor has no business operations, no employees and no prospect of rehabilitating their prior business, deference to the Debtor's earlier decisions on who should conduct the litigation, especially as it attempts to evade an outcome in another forum is not necessary.

B. *Cause to appoint a chapter 11 trustee exists because acrimony is present between the parties.*

52.     Another ground for cause as articulated in *Marvel*, is "acrimony between the parties." *In re Marvel Entm't Grp., Inc.*, 140 F.3d 463, 472 (3d Cir. 1998) ("Moreover, we are impressed by the persuasive reasoning in *In re Cajun Elec. Power Coop., Inc.*, 74 F.3d 599, 600 (5th Cir.) (adopting on rehearing the opinion of dissent in 69 F.3d at 751), *cert. denied,* 519 U.S. 808, 117 S.Ct. 51, 136 L.Ed.2d 15 (1996), in which the court upheld a trustee appointment based on a finding of acrimony.").   The fundamental dispute that exists in the case is whether the Debtor or the Noteholders ought to be in control of the decision as to who should wind down the affairs of the Debtor; this impasse as demonstrated by the Debtor's maneuvering to undermine the Nevada Receivership Order exemplifies acrimony, providing an additional ground for cause by which the Court may dispose of this chapter 11 case either through the appointment of a chapter 11 trustee, or by determining cause exists under Section 1112(b) to convert or dismiss.  *See In re The SCO Grp., Inc.*, No. 07-11337KG, 2009 WL 2425755, at *6 (Bankr. D. Del. Aug. 5, 2009) (Gross, J.) ("The Court's decision to appoint a Chapter 11 trustee *sua sponte* is based upon Bankruptcy Code Section 1104(a)(3) and *In re Marvel Entertainment Group, Inc.,* 140 F.3d 463 (3rd Cir.1998). There, the Third Circuit Court of Appeals discussed the strong preference for leaving a Chapter 11 case in the hands of the debtor because of its familiarity with its business. The Court of Appeals nonetheless found that the acrimony between debtor's management and its creditors justified the Chapter 11 trustee's appointment. Here, the strife between [the Debtors and other parties] in hard fought litigation makes a considered decision by Debtors on the handling and disposition of the cases unlikely. The Court therefore orders the appointment of a Chapter 11 trustee in the best interests of the creditors and the estate."). Note that *SCO Group* disposed of motions using 1112 as the predicate for the relief.  *Id.* at *1.

53.     For the reasons set forth here, the Court should appoint a chapter 11 trustee to oversee the Debtor's estate and ensure its proper management.

### C. The court should appoint a chapter 11 trustee under 1104(a)(2) because doing so is in the best interest of the creditors.

54.     Section 1104(a)(2) provides that the Court may appoint a chapter 11 trustee after the commencement of the case and before confirmation, and after notice and a hearing, if "such appointment is in the interest of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor."  11 U.S.C. § 1104(a)(2).

55.     Here, the creditor body is comprised primarily of investors consisting of institutions, individuals, and other entities.  These investors entrusted approximately $23 million to the Debtors in hopes of receiving returns upon their investment and, at the very least, that the funds would be invested in reputable investment vehicles.  Neither occurred.

56.     The remaining creditors consist primarily of typical trade creditors but appear to be concentrated among creditors that provided professional services to the Debtor.

57.     The makeup of the creditor body and the amount owed ($23.1 million) indicates that a chapter 11 trustee is in the best interest of the creditors.  The appointment of chapter 11 trustee is further supported by the collective facts in this case, including: that the Debtor demonstrated gross mismanagement of it business; that the Debtor appointed its own Chief Restructuring and Liquidation Officer in an attempt to self-liquidate; and that acrimony exists amongst the parties.

58.     For the reasons listed here, the Court should appoint a chapter 11 trustee.

## **CONCLUSION**

59.     The Court should dismiss this chapter 11 case.  If the Court believes issues prevent dismissal, then the Court should convert this chapter 11 to a chapter 7 because the Debtor filed its petition in bad faith.  Also, converting to a chapter 7 will prevent the Debtor from incurring continuing losses to the estate while bearing no reasonable likelihood of rehabilitation in chapter 11.  Alternatively, the Court should appoint a chapter 11 trustee because the Debtor has demonstrated a gross mismanagement of its business affairs; the Debtor has appointed its own Chief Restructuring and Liquidation Officer to self-liquidate; and acrimony exists between the parties.  Additionally, barring dismissal or conversion, doing so is in the best interest of creditors seeking recovery.

WHEREFORE, the U.S. Trustee request that this Court issue an order granting this Motion, or such other relief as the Court deems appropriate.  The U.S. Trustee reserves all rights to supplement, modify, or amend this motion as necessary as additional facts are uncovered, discovery occurs, and the record at a hearing develops.

Dated: April 24, 2020
        Wilmington, Delaware

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE**
By:/s/_____
Timothy J. Fox, Esq.
David Villagrana, Esq.
Rosa Sierra, Esq.
Trial Attorneys
Office of the United States Trustee
844 King Street, Ste. 2207
Office: (302) 573-6541
Fax: (302) 573-6497

**EXHIBIT A**



