IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>SureFunding, LLC,<br><br>            Debtor. | Chapter 11<br><br>Case No. 20-10953 (LSS)<br><br>Hearing Date: May 12, 2020 at 10:00 a.m. (ET)<br>Objection Deadline: May 4, 2020 at 9:00 a.m. (ET)<br>Related Docket Nos.: D.I. 24, 25, 26, 27 & 31 |

**[REDACTED] NOTEHOLDERS' OMNIBUS OBJECTION TO DEBTOR'S MOTIONS**

The Noteholders[1] hereby submit the following Omnibus Objection to: (i) the Debtor's Application for Entry of an Order Authorizing the Debtor to Employ and Retain Gavin/Solmonese LLC to Provide a Chief Restructuring and Liquidating Officer and Related Services Pursuant to 11 U.S.C. §§ 363 and 105 Effective as of the Petition Date [D.I. 24] (the "CRLO Motion"); (ii) the Debtor's Motion for Entry of an Order Authorizing the Employment and Compensation of Certain Professionals Utilized in the Ordinary Course of Business Effective as of the Petition Date [D.I. 25] (the "Ordinary Course Professionals Motion"); (iii) the Debtor's Motion for Entry of an Order

---

[1] The "Noteholders" are Brett Hatton, an individual; Earl Coronel, an individual; Autumn Wind Global Multi-Strategies Fund, LP, a Delaware Limited Partnership; Damon Gersh, an individual; Jason Eckenroth, an individual; Sherri R. Sands, as trustee of the Sherri R. Sands Revocable Trust, a Florida Trust; Glickfield Capital Management, LLC fbo M. Glickfield Dynasty Trust, a Maryland Trust; Glickfield Capital Management, LLC fbo Cheryl Newmark, a Maryland Trust; Glickfield Capital Management, LLC fbo Marla Schram, a Maryland Trust; Carrickfergus Investments Limited, a British Virgin Islands Company; Stephane Carnot, as Trustee of the Carnot Family Trust, a District of Columbia Trust; Dorsey and Whitney Trust Co., LLC, as Trustee of the Dylan Taylor 2011 Grantor Trust, a South Dakota Trust; Eseco, LLC, a Michigan Limited Liability Company; Sequris Group, LLC, a Michigan Limited Liability Company; Matthew Briggs, as Trustee of the Briggs Management Trust; Michael Rubenstein, an individual; June Farmer, an individual; Thomas Carl Myers, an individual; Richard L. Rogers, an individual; Neal J. Glickfield, as Trustee of the Neal J. Glickfield 2018 Trust, a Maryland Trust; Lineage, LLC, a Virginia Limited Liability Company; Charles B. Chokel, as Trustee of the Charles B. Chokel Trust u/a 4/21/92, a New Hampshire Trust; Brian Gray, an individual; HFJ Investments I, LLC, a Texas Limited Liability Company; Patricia B. Jones, as Trustee of the Patricia B. Jones Revocable Trust, a Maryland Trust; John B. Shaw as Trustee of the John B. Shaw 2012 Family Grantor Trust; and 1086 LLC, a Maryland Limited Liability Company.

1

123227025

Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals [D.I. 26] (the "Interim Compensation Motion"); (iv) the Debtor's Application for Entry of an Order Authorizing the Retention and Employment of Fox Rothschild, LLP as Counsel for the Debtor Effective as of the Petition Date [D.I. 27] (the "Fox Rothschild Retention Motion"); and (v) the Debtor's Motion for Entry of an Order Pursuant to Bankruptcy Code Sections 501, 502, and 1111(a), Bankruptcy Rules 2002 and 3003(c)(3), and Local Rule 2002-1(e) Establishing Bar Dates for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof [D.I. 31] (the "Bar Date Motion" and collectively with the CRLO Motion, the Ordinary Course Professionals Motion, the Interim Compensation Motion, and the Fox Rothschild Retention Motion, the "Debtor's Motions").

## PRELIMINARY STATEMENT

1. As a gating issue, the Debtor's Motions should be denied because, as detailed in the Noteholders' Motion to Dismiss the Debtors' Chapter 11 Case,[2] this bankruptcy case should be dismissed for cause as there is no possibility of reorganization and no legitimate reason for filing this bankruptcy case. The debtor is not an operating company. Its only business was to invest funds, most of which are now lost. Its only remaining assets – litigation against foreign nationals, insurance claims, and a few, mostly defaulted loans – are pledged in full to the Noteholders and their fellow secured noteholders. This is a two-party dispute between SureFunding's managers (the Abernathys) and the Noteholders. SureFunding's shenanigans and waste of its creditors' funds – hundreds of thousands of dollars since the Noteholders' sought appointment of a receiver in March 2020 alone – must end. Dismissal of this case renders the Debtor's Motions moot.

---

[2] All capitalized terms used in this Preliminary Statement are defined below.

2

2. The Debtor's bankruptcy filing was also carried out without the requisite authority because it was filed after the Nevada Court ordered the appointment of a receiver and enjoined SureFunding's managers from controlling or managing SureFunding or its assets. The Debtor's attempts to retain professionals were also in violation of the Nevada Court's orders and the Debtor should not be permitted to retain such professionals here as a run around to the Nevada Court's jurisdiction.

3. Even if the bankruptcy is not dismissed outright, the Debtor's Motions should be denied because the receiver, Mike Flanagan, should remain in control of SureFunding and be excused from turning over assets in accordance with the Noteholders' other pending motion [D.I. 14]. In the alternative, the case should be converted or a trustee appointed pursuant to the U.S. Trustee's motion [D.I. 34]. In any event, SureFunding's management should be out and their motions denied.

4. As set forth in detail below, the Noteholders have further specific objections to the Debtor's retention of the Turner Firm as an ordinary course professional to handle claims that SureFunding values at over $81 million, especially where there are conflicts of interest and the Turner Firm has refused to produce documents or testify. The Noteholders further object to Goodwin's retention due to the lack of information on services to be provided and its known conflicts of interest.

**BACKGROUND**

5. The history behind this bad faith bankruptcy filing and the wrongdoings of the managers of SureFunding, LLC ("SureFunding" or "Debtor") are detailed in the Noteholders' Motion to Dismiss [D.I. 14] (the "Noteholders' Motion to Dismiss") and are incorporated herein by reference.

## OBJECTION

**I.      Omnibus Objections to the Debtor's Motions.**

      **A.      The Debtor's Motions are Moot Upon Dismissal of this Case.**

6.     As detailed in the Noteholders' Motion to Dismiss, this bankruptcy case should be dismissed for cause because it does not serve a valid bankruptcy purpose as there are no other creditors besides the Debtor's professionals, the Noteholders and other noteholders of the Debtor. This is a two-party dispute that can be resolved in the pending state court receivership action. The case was filed to merely gain a tactical advantage by the Debtor's principals. The Debtor further cannot effectuate a plan, is already liquidating and has no possibility of reorganization due to the massive fraud it invested in. Upon dismissal, the Debtor's Motions will be moot and should be denied.

      **B.      The Debtor Did Not Have Authority to File This Case and Does Not Have the Authority to Employ Professionals.**

7.     Not only was this case filed in bad faith, the Debtor did not have authority to file this case or enter into engagement agreements Gavin/Solmonese LLC (the "CRLO") and Fox Rothschild LLP ("Fox"). The Debtor further does not have authority to retain additional professionals.

8.     On March 20, 2020, the Noteholders filed suit in Nevada state court (the "Nevada Court") for breach of contract against SureFunding, seeking damages in excess of $23 million tied to the breach of their Notes (the "Receivership Case") and, on March 24, 2020, the Noteholders filed a motion to appoint a receiver in the Receivership Case (the "Receiver Motion"). (Declaration of Edward T. Gavin, CTP In Support of Voluntary Petition [D.I. 23] ("Gavin Declaration") at ¶ 32).

9.      After a hearing, the Nevada Court granted the Noteholders' Receiver Motion and appointed Mr. Flanagan as the receiver for SureFunding on April 7, 2020. (Decision attached as Exhibit A-1 to Declaration of Paige B. Tinkham filed herewith as Exhibit A ("Tinkham Declaration")).

10.     SureFunding thereafter filed a Motion to Vacate, Alter or Amend Decision for Appointment of Receiver and Request for Evidentiary Hearing on Order Shortening Time on April 10, 2020 (the "Motion to Vacate"). (Gavin Declaration at ¶ 33).

11.     Despite the pending Motion to Vacate, on April 13, 2020, the Nevada Court entered a detailed order laying out Mr. Flanagan's powers, compelling SureFunding's management to cooperate and turnover all assets and enjoining any interference with Mr. Flanagan (the "Receiver Order"). (Order Granting Motion for Appointment of Receiver [D.I. 15-2]).

12.     The Receiver Order provides that Mr. Flanagan is the receiver and manager of all assets, operations and undertakings of SureFunding (the "Receivership Assets"). (Receiver Order at ¶ 2). Mr. Flanagan was granted immediate possession and full control of the Receivership Assets. (Receiver Order at ¶ 3). Receiver was granted authority to: (i) take and maintain all documents, books, records, papers and deposit accounts relating to the Receivership Assets; (ii) exclude SureFunding and its respective agents, servants, and employees wholly from the Receivership Assets, except as necessary to carry out its duties with respect to the notes; (iii) manage, operate, preserve, maintain and liquidate the Receivership Assets; and (iv) hold and exercise all privileges belonging to SureFunding, including any attorney-client privileges. (Receiver Order at ¶ 4).

13.     All persons in possession of Receivership Assets or any portion thereof were required to turn over such assets to Mr. Flanagan. (Receiver Order at ¶ 10).

14. SureFunding was and is excluded from having possession or control of, or any right to, the Receivership Assets or money or other proceeds derived from the Receivership Assets unless and until the receivership is terminated and Mr. Flanagan is discharged. (Receiver Order at ¶ 5). SureFunding and all those acting in concert with it were ordered to comply with the Receiver Order and were enjoined and restrained from impeding or interfering in any manner with the exercise by the Receiver of its rights, powers, and duties thereunder. (Receiver Order at ¶ 5).

15. SureFunding did not comply with the Receiver Order.

16. Instead, *after the Receiver Order was entered*, the managers of SureFunding proceeded to retain the CRLO and Fox, who then proceeded to file the bankruptcy. Specifically, the relevant consent of the managers is dated April 14, 2020, the day after the Nevada Court entered its detailed order setting forth Mr. Flanagan's duties as receiver. (*See* Unanimous Written Consent of the Managers of SureFunding, LLC [D.I. 1] at 5-7). SureFunding's engagement agreements with the CRLO and Fox, both dated April 13, 2020, also post-date the entry of the Nevada Court's decision to appoint Mr. Flanagan as receiver (entered on April 7, 2020). (*See* Engagement of Gavin Solmonese LLC [D.I. 24-3] and Affidavit of Thomas M. Horan in Support of Debtor's Application for Entry of an Order Authorizing the Retention and Employment of Fox Rothschild, LLP as Counsel for the Debtor Effective as of the Petition Date [D.I. 27-3] ("Horan Affidavit") at ¶ 9). Despite repeated demands, SureFunding has refused to produce the related email traffic and documents to evaluate the actual timing of those agreements.

17. Without doubt, SureFunding's bankruptcy filing and hiring of Fox and the CRLO were blatant violations of the Receiver Order. The Receiver Order clearly usurped SureFunding's authority to file the bankruptcy case and hire professionals. SureFunding's attempt to retain Turner & Associates, P.A. (the "Turner Firm"), Greenspoon Marder LLP ("Greenspoon") and Goodwin

123227025

Proctor LLP ("Goodwin") as ordinary course professionals is another direct violation of the Receiver Order. As a result, the Debtor's Motions should be denied.

### C.    The Debtor Does Not Have Authority to Make Payments to Professionals.

18.     Even if the CRLO's appointment was not void under the Receiver Order, the Debtor's Motions should be denied. The Noteholders have a security interest in all of SureFunding's cash. Despite knowledge of this security interest and the Noteholders' objection to use of cash collateral, SureFunding has failed to file a motion for authority to use cash collateral. (Schedule D [D.I. 41] at 2.1 and Notice of Objection to Use of Cash Collateral attached as Exhibit A-2 to the Tinkham Declaration). Accordingly, all relief sought by SureFunding to make payments to professionals should be denied. 11 U.S.C. § 363(c)(2).

19.     Further, in the event the Court were to authorize use of cash collateral, all professionals should be required to provide copies of their monthly invoices and time and expense detail to the Noteholders for review and objection prior to payment.

### II.    Specific Objections to CRLO Motion.

20.     The Noteholders further object to the CRLO Motion because it appears that the CRLO is merely being proposed to create an image that SureFunding's managers, the Abernathys – who oversaw SureFunding's loss of 80-90 percent of its assets by investing in a Ponzi scheme run by an India-based criminal ring – are not making the decisions on behalf of SureFunding. The Abernathys have repeatedly attempted to create this guise since discovery of the Ponzi scheme by the Noteholders. SureFunding told the Noteholders it was hiring Kevin DeLuise from FTI Consulting LLC ("FTI") as chief restructuring officer in January 2020. (Defendant SureFunding, LLC's Opposition to Plaintiff's Motion for Appointment of Receiver in Nevada Action ("Receiver Opposition"), attached to the Tinkham Declaration as Exhibit A-3, at 7). However, the

engagement agreement with FTI didn't provide FTI with any power as an officer. Instead, FTI was only to report to the managers of SureFunding – Justin and Jason Abernathy (the "Abernathys"). (FTI Engagement Letter attached as Exhibit A-1 to Receiver Opposition). Then, after the Receiver Motion was filed (in March 2020), SureFunding informed the Nevada Court that it was instead hiring Michael Tucker of FTI as its CRO. (Receiver Opposition at 8:9-14). This was a misrepresentation. No executed engagement letter with Tucker has been produced, and, to the Noteholders' knowledge, FTI never acted as CRO.

21. Now, through the CRLO Motion, SureFunding seeks to appoint a third CRLO. Yet again, the CRLO duties set forth in the CRLO Motion make clear that the CRLO is still only being hired to "assist, consult and advise" SureFunding. (CRLO Motion at ¶ 10). The CRLO has no authority to act independently and still reports to the Abernathys. There is no need to pay a professional $50,000 to $100,000 a month, plus expenses and indemnification, to act as a puppet for the Abernathys. (Professional Compensation set forth in CRLO Motion at ¶ 12). This charade has further played out during the bankruptcy case when it became clear to the Noteholders that the CRLO does not have authority to make decisions on behalf of the Noteholders.

**III. Specific Objections to Fox Rothschild Retention Motion.**

22. Fox first received a $125,000 retainer from the Debtor to litigate the appointment of a receiver. (Horan Affidavit at ¶ 8). After that retainer was depleted, a retainer of $300,000 was provided by HARRAY Holdings Trust and CTJT Family Trust. (Horan Affidavit at ¶ 9). These trusts are believed to be personal trusts of the Abernathys.

23. The Noteholders further object to the retention of Fox because it is unclear if the monies paid to them to fund their retainer in this bankruptcy case and/or the receivership action by the Abernathys' personal trusts is being used to influence their representation of the Debtor herein.

Fox should be required to provide evidence of such independence and lack of influence prior to retention.

**IV.    Specific Objections to Ordinary Course Professionals Motion.**

    **A.    The Turner Firm Is Not an Ordinary Course Professional, Holds Conflicts of Interest and Has Blatantly Ignored a Subpoena of this Court.**

24.    The Turner Firm was allegedly engaged by the Debtor to litigate the Debtor's claims against Tradepay Capital LLC ("Tradepay") and to assert insurance claims under Tradepay's insurance policy with Euler Hermes. (Gavin Declaration at ¶ 28). According to the Debtor, the Tradepay litigation and the Euler Hermes claims comprise the vast majority of the Debtor's assets. The Debtor has demanded in excess of $34 million in the Tradepay litigation. (Tradepay Amended Complaint [D.I. 15-1] at p. 39, ¶ 30). The Debtor has asserted an additional $47.9 million in claims against the Euler Hermes insurance policy alone. (Gavin Declaration at ¶ 30). The Debtor cannot employ counsel to handle litigation of this magnitude and importance to the Debtor's liquidation and distribution of creditors under the guise of an ordinary course professional. Professionals playing an intimate role in the reorganization of a debtor's estate must be employed under 11 U.S.C. § 327(a). *In re Hermitage Home Group, LLC*, 2018 WL 4684802, at *3 (Bankr. D. Del. Sept. 27, 2018).

25.    Any counsel handling the Tradepay litigation or the Euler Hermes claims is anything but ordinary course and must be retained by the filing of a proper retention application under 11 U.S.C. § 327(a) pursuant to the requirements of the Bankruptcy Code.

26.    Moreover, any attempt to engage the Turner Firm should be rejected. As an initial matter, the Turner Firm has dodged service of the Noteholders' subpoena, aided and abetted by the Debtor and its counsel, who refused to direct him to accept service and produce documents.

27.    On April 24, 2020, the Noteholders issued a subpoena to Mr. Turner and three other

non-Debtors. (Subpoena for Documents and Deposition Attendance attached to the Tinkham Declaration at Exhibit A-4). Given the current COVID-19 pandemic, the Noteholders requested that each non-party accept service via email to avoid putting themselves and/or process servers at risk by serving the subpoenas personally. (*Id*.). Of the four subpoena respondents, only Mr. Turner did not respond to the Noteholders' request to accept service of process via email.

28. On Monday April 27, 2020, counsel for the Noteholders again emailed Mr. Turner, copying the Debtor's counsel, requesting Mr. Turner accept service via email. (Email dated 4/27/20 from W. Dorsey to T. Turner, attached to the Tinkham Declaration as Exhibit A-5). Mr. Turner did not respond. Debtor's counsel responded and suggested discussion of service of Mr. Turner later that evening. (Email dated 4/27/20 from G. Gouveia to W. Dorsey and T. Turner, attached to the Tinkham Declaration as Exhibit A-5). Counsel for Noteholders responded to the Debtor's counsel, copying Mr. Turner, and again highlighted the need to immediately discuss service of process. (Email dated 4/27/20 from W. Dorsey to G. Gouveia to and T. Turner, attached to the Tinkham Declaration as Exhibit A-5). Mr. Turner did not respond. The Debtor's counsel informed counsel for Noteholders that Mr. Turner would not be accepting service, appearing for the noticed deposition or producing the documents requested. (Email dated 4/28/20 from G. Gouveia to W. Dorsey, attached to the Tinkham Declaration as Exhibit A-6; Email dated 4/29/20 from G. Gouveia to P. Tinkham, attached to the Tinkham Declaration as Exhibit A-7; and Email dated 4/30/20 from W. Dorsey to G. Gouveia, attached to the Tinkham Declaration as Exhibit A-7).

29. Given Mr. Turner's lack of response and apparent knowledge of the subpoena, counsel for Noteholders engaged a process server to serve the subpoena. The process server was unable to serve Mr. Turner at his office or home and instead left a copy of the subpoena at each

10

location. (Affidavit of Process Server, attached to the Tinkham Declaration as Exhibit A-8).

30. As of this filing, Mr. Turner has not contacted counsel to the Noteholders in response to the subpoena. This conduct surely demonstrates avoidance of this Court and its powers and should not be condoned.

31. ███████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
█████

32. ███████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████████

33. ███████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

34. ███████████████████████████████████████████

11

██████████████████████████████████████████████████ The Turner Firm received $67,373.45 from SureFunding within the 90 days before the petition date, plus an additional $75,000 in 2019. (Statement of Financial Affairs [D.I. 41] at part 3). ████

████████████████████████████████████████████████████████████

████████████████████████

**B.    Goodwin Has a Conflict of Interest.**

35.    While the Debtor seeks to engage Goodwin as an ordinary course litigation counsel, the Noteholders are unaware of any litigation being handled by Goodwin on behalf of the Debtors. Goodwin should be required to provide detail of the litigation assistance it is providing to the Debtor prior to retention.

36.    Moreover, Goodwin drafted the documents which granted the Noteholders a security interest in the Debtor's assets. The Debtor has listed this security interest, as disputed on their schedules. (Schedule D, 2.1.) As a result, Goodwin will be subject to litigation on this matter and it is inappropriate for them to be retained by the Debtor in this bankruptcy case.

37.    Goodwin also holds a prepetition claim against the Debtor in the amount of $96,196.53. (Schedule E/F [D.I. 41], part 2).

38.    Moreover, to date, Debtor has refused to produce Goodwin's engagement letter or engagement letters with affiliates. Upon information and belief, Goodwin has represented the Abernathys and numerous debtor affiliates – and potential defendants – in multiple matters. Indeed, the Noteholders have asked that Goodwin initiate a litigation hold and enter into a tolling agreement to preserve claims against the firm arising out of the Tradepay Ponzi scheme.

39.    Like Goodwin, the Debtor fails to provide any details on its retention of Greenspoon or the nature of the work performed by Greenspoon for the Debtor. Greenspoon

should be required to provide detail of the litigation assistance it is providing to the Debtor prior to retention.

40. Greenspoon has claim in the amount of $66,486.00 (Schedule E/F [D.I. 41], part 2) and received $20,000 in payments from SureFunding within the 90 days before the petition date. (SOFA [D.I. 41], part 3).

## CONCLUSION

In sum, the Noteholders respectfully request that this Court enter an order denying the Debtor's Motions and granting the Noteholders such other relief it deems equitable and just.

| | |
|---|---|
| Dated: May 4, 2020<br>Wilmington, Delaware | **BLANK ROME LLP**<br><br>By: */s/ Stanley B. Tarr*<br>Victoria A. Guilfoyle (No. 5183)<br>Stanley B. Tarr (No. 5535)<br>1201 N. Market Street, Suite 800<br>Wilmington, Delaware 19801<br>Telephone: (302) 425-6400<br>Facsimile: (302) 425-6464<br>Email: guilfoyle@blankrome.com<br>       tarr@blankrome.com<br><br>-and-<br><br>Kenneth J. Ottaviano (admitted *pro hac vice*)<br>William J. Dorsey (admitted *pro hac vice*)<br>Paige B. Tinkham (admitted *pro hac vice*)<br>444 West Lake Street, Suite 1650<br>Telephone:  (312) 776-2600<br>Facsimile:  (312) 776-2601<br>Email: kottaviano@blankrome.com<br>       wdorsey@blankrome.com<br>       ptinkham@blankrome.com<br><br>*Attorneys for the Noteholders* |

123227025