**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| SureFunding, LLC,[1] | Case No. 20-10953 (LSS) |
| Debtor. | **Objections Due: May 29, 2020 at 4:00 pm ET**<br>**Hearing Date: June 17, 2020 at 2:00 pm ET** |

### DEBTOR'S MOTION FOR AN ORDER GRANTING (I) TURNOVER OF ESTATE PROPERTY PURSUANT TO 11 U.S.C. §§ 541 AND 542; AND (II) ENFORCEMENT AND CONTINUATION OF THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362

The above-captioned debtor and debtor-in-possession (the "Debtor" or "Surefunding"), by and through its undersigned proposed counsel, files this motion (the "Motion") for entry of an order substantially in the form attached hereto as Exhibit A (the "Proposed Enforcement Order"), pursuant to sections 105(a), 541, 542 and 362 of title 11 of the United States Code, §§ 101 et seq. (the "Bankruptcy Code"), and Rule 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 4001-4 and 9006-1(c) of the Local Bankruptcy Rules for the District of Delaware (the "Local Rules"), seeking turnover of certain documents, information and property related to the Tradepay Property (defined below) from Ullman & Ullman, P.A. (the "Ullman Firm") and Benjamin Brodsky ("Mr. Brodsky"), among others, and enforcing and continuing the automatic stay in this chapter 11 case.  In support of this Motion, the Debtor incorporates the Affidavit of Edward T. Gavin, CTP in Support of the Motion (the "Gavin Affidavit"), annexed hereto **Exhibit 1**, and respectfully represent as follows:

### JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated as of February 29, 2012. This is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The last four digits of the Debtor's taxpayer identification number is 7898. The Debtor's headquarters and service address is 6671 Las Vegas Blvd., Suite 210, Las Vegas, NV 89119.

Pursuant to Local Rule 9013-1(f), the Debtor consents to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      The predicates for the relief sought herein are Bankruptcy Code sections 105, 362, 541, 542 and 362, Bankruptcy Rule 9014 and Local Rules 4001-4 and 9006-1(c).

## BACKGROUND

3.      On April 14, 2020 (the "Petition Date"), the Debtor commenced a voluntary case under chapter 11 of the Bankruptcy Code. The Debtor is authorized to operate its business and manage its properties as debtor-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108. No official committees have been appointed in this chapter 11 case, and no request has been made for the appointment of a trustee or examiner.

4.      The factual background relating to the commencement of this chapter 11 case is set forth in detail in the Declaration of Edward T. Gavin, CTP (the "Gavin First Day Declaration") [D.I. 23]. The Gavin First Day Declaration is incorporated into this Motion by reference.

5.      In relevant part, the Debtor is a private debt strategy company that was established in March 2014.  Beginning in 2017, the Debtor began making its capital available to funding partners who would use the Debtor's capital to provide factoring services for their borrowers, rather than financing directly to borrowers as it had done previously. *See* Gavin First Day Declaration at ¶ 4.

6.      The Debtor's revenue is derived from nine distinct investments.  In particular, the Debtor participated on individual trade receivables purchased by Tradepay Capital, LLC ("Tradepay").  In and after 2017, new entities were created to facilitate the Debtor's investment and lending relationship with Tradepay.  Tradepay facilitated credit relationships between multi-national sellers and buyers.  The Debtor purchased up to 90% participation in factored receivables sourced through the Tradepay platform.  Tradepay, as the lead investor in the trade receivables, purchased the trade receivables and retained 10 to 15% of each trade receivable on Tradepay's

2

balance sheet. Tradepay charged a servicing fee to the entities that participated on the 85-90% balance of the trade receivables. *See* Gavin First Day Declaration at ¶ 8.

7.      Three different entities hold claims in the unpaid trade receivables with Tradepay. The Debtor's portion of the unpaid trade receivables purchased with Tradepay as the lead is 90.93%. The other two participants are non-debtor entities SIA Unite, LLC and Surefunding V, LLC. *See* Gavin First Day Declaration at ¶ 9.

8.      The Debtor participated on each trade receivable purchase it participated on with Tradepay via ECP Holdings III, LLC ("ECP-III")[2].

**A.  <u>The Tradepay Master Participation Agreement</u>[3]**

9.      Tradepay is a Florida limited liability company that was in the business of entering into trade factoring agreements with certain sellers who sold accounts to Tradepay as the "Lead". In turn, Tradepay as the "Lead" sold participation in certain accounts to third parties, known as "Participants".

10.      On February 2, 2018, Tradepay executed a Master Participation Agreement (the "<u>MPA</u>") between itself, ECP-III and Marketplace Capital Strategies, LLC ("MCS LLC")[4], under which ECP-III and MCS LLC agreed to provide funding for certain transactions in Tradepay's trade receivable finance business. A true and correct copy of the MPA is annexed hereto as **<u>Exhibit 2</u>**.

11.      On May 2, 2019, Tradepay entered into an Amended and Restated MPA (the "<u>Amended MPA</u>") with three parties: ECP-III, MCS Agent, LLC ("MCS Agent") and MCS LLC. ECP-III, MCS Agent and MCS are referred to as "*Participants*" in the Amended MPA and together with Tradepay, the "<u>MPA Parties</u>")). A true and correct copy of the Amended MPA is annexed

---

[2] ECP-III is a Delaware limited liability company, and the special purpose entity that was created and funded by the Debtor and SIA Unite, LLC ("SIA Unite"), through which the participations of the Debtor and SIA Unite, LLC were distributed to Tradepay pursuant to the terms of the MPA.

[3] For a full recitation of the facts related to the Debtor's relationship with Tradepay, the Court is respectfully referred to the Gavin First Day Declaration.

[4] MCS LLC is a Puerto Rico limited liability company and is the Debtor's contractual manager.

110506961

hereto as **Exhibit 3**. The purpose of the Amended MPA was to define the rights and responsibilities of the MPA Parties with respect to certain trade factoring agreements and the accounts Tradepay sold to the Participants.

12.     The Amended MPA governed, among other things, repayment of the funding provided by the Debtors.

### B.  The Debtor's Security Interest in Tradepay

13.     All of the Participants, including MCS Agent[5], were "Secured Parties" under the Amended MPA. *See* Amended MPA at p. 8 (Definition of "Secured Parties").

14.     To secure Tradepay's debt to Participants, Tradepay was required to post collateral. That collateral included all of Tradepay's goods, invoices, accounts, accounts receivable (including Receivables), equipment, inventory, contract rights or rights to payment of money, leases, license agreements, franchise agreements, general intangibles, commercial tort claims, documents, instruments (including any promissory notes), chattel paper (whether tangible or electronic), cash, deposit accounts, certificates of deposit, fixtures, letters of credit rights (whether or not the letter of credit is evidenced by a writing), securities, and all other investment property, supporting obligations, and financial assets, wherever located; and all of books and records relating to the foregoing, and any and all claims, rights and interests in any of the foregoing and all substitutions for, additions, attachments, accessories, accessions, and improvements to and replacements, products, proceeds, and insurance proceeds of any or all of the foregoing (collectively, the "Collateral"). *See* Amended MPA at p. 3 (Definition of "Collateral").

15.     To further secure and protect the Participants' interests in the event of Tradepay's default on its obligation to repay funds to the Debtor, Tradepay, by and through its authorized representative, Ritesh Shaw ("Mr. Shaw") executed an irrevocable Power of Attorney (the "POA")

---

[5] MCS Agent is a Delaware limited liability company that was formed as a flow-through agent to facilitate the receipt of payments by Tradepay to, among others, the Debtor.

110506961

in favor of MCS Agent, acting on behalf of the Debtor on July 26, 2019. A true and correct copy of the POA is annexed hereto as **Exhibit 4**.

16.     The POA authorized and permitted MCS Agent to take control of all Collateral and to exercise total control over Tradepay, including its business operations, assets, books, records and other items enumerated in the POA. *See* Amended MPA at pp. 19-20. Once MCS Agent exercised its rights under the POA, MCS Agent became the only party authorized to act for Tradepay. MCS Agent was permitted to exercise its rights and remedies under the Amended APA without notice or demand of any kind served on Tradepay.

17.     The POA irrevocably authorized and empowered MCS Agent, acting for, among others, the Debtor, to act as Tradepay's attorney-in-fact with full irrevocable and durable power and authority in the place of Tradepay, in Tradepay's name, and with sole and absolute discretion to carry out the acts specifically enumerated in the POA.

18.     Among those rights specifically enumerated in the POA, is MCS Agent's right to assert the POA over third parties without their question as to the authority of MCS Agent to act for Tradepay. The POA clearly sets forth the obligations of third-parties served with the POA, as follows:

> "No person to whom this Power of Attorney is presented, as authority for the Attorney to take any action or actions contemplated hereby, will be required to inquire into or seek confirmation from the Grantor (Tradepay) as to the authority of the Attorney to take any action described below, or as to the existence of or fulfillment of any condition to this Power of Attorney, which is intended to grant to the Attorney unconditionally the authority to take and perform the actions contemplated herein …"

## C.  **Tradepay's Default and MCS Agent's Enforcement of Security Interests**

19.     In late September 2019, Tradepay failed to remit payments to MCS Agent from account debtors. At that time, Tradepay had 421 outstanding invoices, totaling approximately $47.9 million in gross invoice value that went into default over the next two months. All of these

invoices were purchased or assigned to SureFunding or ECP III, LLC after April 29, 2019. *See* Gavin First Day Declaration at ¶ 23.

20.    On October 2, 2019, MCS Agent served a notice of default (the "Default Notice") on Tradepay.  Having engaged in at least 5-days of good-faith negotiations without success, MCS Agent informed Tradepay in the Default Notice that it would proceed with exercising its rights and remedies under the POA.  Tradepay acknowledged receipt of the Default Notice by and through Mr. Shaw's initials on the notice.  A true and correct copy of the Default Notice is annexed hereto as **Exhibit 5**.

21.    Once the POA became effective after Tradepay's default, Tradepay and its assets fell under the complete control of MCS Agent, which operated for the benefit of the Debtors.

22.    Tradepay later challenged the irrevocability and enforceability of the POA in an action commenced in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida (Case No. 2019-031155-CA-01), Judge Fine presiding (the "Florida Court").

23.    Pursuant to its rights under the POA, MCS Agent took possession and/or swept certain bank accounts held in Tradepay's name. MCS Agent also served letters demanding turnover of all information and documents in their possession related to Tradepay on Tradepay's vendors, attorneys, buyers, sellers, accountants, banking institutions, including Reality Check Business Solutions on January 9, 2020, and its landlord, BZG International, on January 8, 2020.

24.    Several of the entities served with a demand letter have responded to MCS Agent. International Financial Enterprise Bank ("IFEB") notified MCS Agent's counsel that a current account existed and cooperated as directed in the POA.

25.    On May 7, 2020, the Florida Court entered an *Order Granting Plaintiff MCS Agent LLC's Emergency Motion for Protective Order* (the "Protective Order"), wherein the court ruled that the POA was both "irrevocable" and "enforceable.  A true and correct copy of the Protective Order is annexed hereto as **Exhibit 6**.

D. **Third-Party Non-Compliance with Turnover of Tradepay Property to MCS Agent**

26.     On April 29, 2020, MCS Agent served a demand on Tradepay's counsel, the Ullman Firm, by and through attorney Michael Ullman ("Mr. Ullman") in Boca Raton, Florida, for a complete copy of all books and records pertaining to Tradepay (the "Ullman Demand").  A true and correct copy of the Ullman Demand is annexed hereto as **Exhibit 7**.  Tradepay retained the Ullman Firm as its counsel in 2017 when Tradepay initially opened its business.  The Ullman Demand sought turnover to MCS Agent of all documents, correspondence, notes, billing documentation, including payment records, payment account information and records of communications via e-mail, text messages, and communications via apps, fax and e-portal (collectively, the "Tradepay Property").

27.     On May 10, 2020, the Ullman Firm responded to the Ullman Demand by indicating its refusal to honor the POA, despite the Florida Court's ruling in the Protective Order, and to comply with the Ullman Demand (the "Ullman Refusal Letter").  A true and correct copy of the Ullman Refusal Letter is annexed hereto as **Exhibit 8**.  To date, the Ullman Firm has refused to turnover any Tradepay Property to MCS Agent and/or the Debtor.

28.     It is essential for MCS Agent to exercise control over the Tradepay Property to protect the Debtor's interest in the Collateral, including the Participated Accounts, and to take the action demanded because it is necessary and desirable to realize timely and full payment under the Participated Accounts and the Amended MPA. Unless MCS Agent exercises its rights under the Amended MPA and the POA, the former members of Tradepay remain in a position to hide, misappropriate and waste assets and to conceal evidence.

29.     In addition to the Ullman Firm's refusal to honor the POA, Mr. Brodsky, a Florida attorney purporting to act for Tradepay has likewise refused to honor the POA by (a) continuing to purport to act for Tradepay, both in and out of court, despite lacking such authority; (b) continuing to illegally interfere with enforcement of the POA by instructing third-parties to ignore enforcement; (c) refusing to produce the records in his possession or control that he believes supports his authority to act for Tradepay; and (d) refusing to produce the records documenting

7

what, if any, funds or assets of Tradepay have been paid to him since the default and the triggering of the POA in 2019. As reflected in the POA, the only party having authority to hire counsel, pay counsel, or collect or use the assets of Tradepay is MCS Agent, its duly-authorized attorney-in-fact.  Therefore, Mr. Brodsky is in direct violation of the POA.

30.    Zoho Corporation ("Zoho") provides certain information technology services to Tradepay. MCS-Agent has demanded that Zoho honor the POA by granting MCS Agent full administrator access to all of Tradepay's email accounts and turning over all records in Zoho's possession relating to Tradepay. A true and correct copy of an email from MCS Agent's representative (David Scantling at CyberLawfare LLC) to Zoho is annexed hereto as **Exhibit 9**. Zoho has refused. A true and correct copy of an email from Zoho to MCS Agent's representative refusing access is annexed hereto as **Exhibit 10**.

### RELIEF REQUESTED

31.    As part of a developing chapter 11 case, the Debtor seeks an order compelling third parties, including but not limited to the Ullman Firm, Mr. Brodsky, and Zoho, to turn over of all of Tradepay's property in their possession in compliance with the terms of the POA and the Amended MPA.  MCS Agent is authorized to pursue recovery of the Debtor's interest in the Collateral and to realize timely and full payment under the Participated Accounts and the Amended MPA.  In furtherance of that mandate, MCS Agent must take possession of all property in the custody of third parties to realize the full value of those assets for the benefit of the Debtor's estate and its creditors.

32.    The Debtor also seeks an order continuing and enforcing the automatic stay so that the Debtor may benefit from the property-related, contractual and other protections the automatic stay affords debtors so they may focus their efforts on an equitable, expeditious and orderly reorganization.  The Court's enforcement of this provision against third parties, such as the Ullman Firm, Mr. Brodsky, and Zoho, are critical to the Debtor's reorganization efforts because these parties are withholding property and information from the Debtor, to which it is entitled under the POA, thereby thwarting the Debtor's reorganization efforts.

110506961

## BASIS FOR RELIEF REQUESTED

### A.  THIRD-PARTIES SHOULD BE REQUIRED TO TURN OVER TRADEPAY PROPERTY TO THE DEBTOR PURSUANT TO SECTION 542

33.    In furtherance of its authority under the POA and the Amended MPA, the Debtor seeks an order compelling turnover of Tradepay's property in the possession or custody of third parties.  Those third parties include, but are not limited to, the Ullman Firm, Mr. Brodsky, and Zoho.

34.    Pursuant to section 541(a)(1) of the Bankruptcy Code, property of the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case."  Section 542(a) of the Bankruptcy Code provides, in relevant part, as follows:

> (a) . . . . an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title…shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

35.    The Debtor's books and records clearly constitute estate property within the meaning of Bankruptcy Code section 541 and, consequently, should be delivered to the Debtor, for use by the Debtor and its agents and professionals in administering the Debtor's estate, pursuant to Bankruptcy Code section 542.

36.    Here, the Amended MPA, as made enforceable through the POA, granted the Debtor an interest in the Tradepay Property, to which the Debtor is now entitled by and through MCS Agent.

37.    Section 542(e) expressly authorizes the turnover of books and records related to the Debtor's property or financial affairs.  Section 542(e) provides that "[s]ubject to any applicable privilege, after notice and a hearing, the court may order an attorney, accountant, or other person that holds recorded information, including books, documents, records, and papers, relating to the

debtor's property or financial affairs, to turn over or disclose such recorded information to the trustee."

38.    Although originally enacted to address the problem of attorneys and accountants who demanded payment of their fees before turning over their files to a debtor, case law has established that section 542(e) applies with full force to "any other person that holds recorded information relating to…the debtor's property or financial affairs…"  Courts have applied section 542(e) broadly and liberally to assist a debtor in the administration of its estate. *See e.g., In re Terraces Subdivision, L.L.C.*, 2007 WL 4287742, at *2 (Bankr. D. Alaska Dec. 5, 2007) (applying section 542(e) to land surveying firm that held electronic files relating to debtor's real property); *In re Heritage Organization, L.L.C.*, 350 B.R. 733, 740 (Bankr. N.D. Tex. 2006) (whether information relates to the financial affairs of the estate is interpreted broadly.  The Bankruptcy Code's goal in vesting such broad powers is to allow the Trustee to recover misappropriated corporate asserts and uncover fraud); *Sola Commc'ns, L.L.C. v. Defense Dynamics, L.L.C. (In re Sola Commc'ns, L.L.C.)*, 2005 WL 4806063, at *2 (Bankr. W.D. La. Dec. 21, 2005) (applying 542€ to majority equity holders); *Dzikowski v. Tri-O-Clean Sys., Inc. (In re Tri-O-Clean Sys., Inc.)*, 230 B.R. 192, 199-200 (Bankr. S.D. Fla. 1998) (applying section 542(e) to management services provider that held debtor's records); *see also* 11 U.S.C. § 101(41) ("person" includes any "individual, partnership or corporation").

39.    The Tradepay Property falls squarely within the purview of the statute.  First, consistent with section 542(a), the Debtor clearly has an interest in the Tradepay Property by virtue of the Amended MPA and the POA.  In fact, the POA granted MCS Agent, an entity established as a pass-through agent for the Debtor, total authority over Tradepay.  Thus, there should be no question that the Debtor should now be in possession of and control over the Tradepay Property.  Indeed, even after a challenge in the Florida Court, the enforceability of the POA was upheld.

40.    However, even if the Ullman Firm, Mr. Brodsky, Zoho, or any other third parties contend that the Tradepay Property is not the Debtor's property, section 542(e) does not require that information belong to the Debtor.  *See Am. Metrocomm Corp. v. Duane Morris & Heckscher*

10

*LLP (In re Am. Metrocomm Corp.)*, 274 B.R. 641, 652 (Bankr. D. Del. 2002) ("Although an action for turnover under § 542(a) requires that the information requested be property of the estate, there is no such requirement under § 542(e).

 41. Consequently, under any circumstances, the Ullman Firm, Zoho Corporation and Mr. Brodsky should be compelled to turn over to the Debtor all of the Tradepay Property in their custody, possession or control.

## B. RELIEF SHOULD BE GRANTED TO ENFORCE THE AUTOMATIC STAY AGAINST THIRD PARTIES

 42. This Court should enjoin the Ullman Firm, Mr. Brodsky, and Zoho and any other third parties who resist or refuse the Debtor's requests, by and through MCS Agent, or otherwise deny the Debtor access to the Tradepay Property.  These third parties should also be enjoined from continuing to act on behalf of Tradepay, ignoring the Florida Court's ruling and denying the validity and enforceability of the POA, refusing to turn over the Tradepay Property or otherwise interfering with the Debtor's administration of this bankruptcy case.  These acts are clear violations of the automatic stay.  If the Ullman Firm, Mr. Brodsky, and Zoho continue to exercise, or purport to exercise, such authority over Tradepay despite the POA and in violation of the automatic stay under section 362, the Debtors will seek sanctions and other relief against these parties.

 43. The automatic stay comes into effect upon the commencement of a chapter 11 case by operation of law pursuant to Bankruptcy Code section 362. The automatic stay enjoins all persons from, among other things, (i) commencing or continuing any judicial, administrative, or other proceeding, with limited exceptions, against the Debtor that was, or could have been, commenced before the commencement of the chapter 11 cases; (ii) recovering upon a claim against the Debtor that arose before commencement of the chapter 11 cases; or (iii) taking any action to collect, assess, or recover on a claim against the Debtor that arose before the commencement of the chapter 11 cases. See 11 U.S.C. § 362. The automatic stay is a fundamental protection extended to debtors, which, in conjunction with other provisions of the Bankruptcy Code, provides the

Debtors with a "breathing spell from [their] creditors" that is essential to their ability to successfully reorganize. *See Assoc. of St. Croix Condominium Owners v. St. Croix Hotel Corp*., 682 F.2d 446, 448 (3d Cir. 1982); *Shugrue v. Air Line Pilots Ass'n Int'l. (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984, 989 (2d Cir. 1990) (internal citations omitted).

44.      As a result of the commencement of these chapter 11 cases, and by operation of section 362 of the Bankruptcy Code, the automatic stay enjoins all persons from, among other things, taking any action to obtain possession of property of the estate or to exercise control over property of the estate. See 11 U.S.C. § 362(a)(3). The injunction contained in section 362 is a core protection for debtors, providing them with a "breathing spell from [their] creditors" that is essential to the Debtors' ability to reorganize successfully. *Browning v. Navarro*, 743 F.2d 1069, 1083 (5th Cir. 1984) (citations omitted); *see also Shugrue v. Air Line Pilots Ass'n Int'l (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984, 989 (2d Cir. 1990).

45.      Given its fundamental importance to a debtor's reorganization, courts broadly construe the Bankruptcy Code's automatic stay provisions. *In re NextWave Pers. Commc'ns*., *Inc., 244 B.R. 253, 271 (Bankr. S.D.N.Y. 2000).* As such, the automatic stay has been held to preclude unilateral actions by non-debtor parties to terminate contracts without court order, protecting a debtor's property and contracts wherever located and by whoever held. *See, e.g., Bonneville Power Admin. v. Mirant Corp. (In re Mirant)*, 440 F.3d 238 (5th Cir. 2006) (holding that automatic stay prohibited termination of debtor's contract without further relief).

46.      The Bankruptcy Court has authority to fashion appropriate remedies for violations of the automatic stay. *See, e.g.,* 11 U.S.C. §§ 105(a); 362(k); *see Standard Indus., Inc. v. Acquila, Inc. (In re C.W. Mining Co.)*, 625 F.3d 1240, 1246 (10th Cir. 2010) (holding that a debtor may pursue remedies regarding a stay violation by contempt motion pursuant to Bankruptcy Rules 9020 and 9014); *see also Buckeye Check Cashing, Inc. v. Meadows (In re Meadows)*, 396 B.R. 485, 498 (6th Cir. BAP 2008) ("[A]ctions to recover damages for stay violations are generally brought by motion, with attorney fees expressly allowable under § 362(k).").

47.    Here, the Court should enforce the automatic stay against third parties, including but not limited to, the Ullman Firm, Mr. Brodsky, and Zoho, by entering an order that confirms, restates, enforces and restrains any action taken in violation of the key protections afforded the Debtor by the automatic stay provisions of Bankruptcy Code section 362.  In so doing, the Court will ensure that the Debtor's operations and administrative actions are not disrupted by unauthorized third parties.  Rather, the enforcement of the automatic stay will preserve the Debtor's ability to successfully monetize its assets without being impacted by third parties withholding property or information from the Debtor to which it is rightfully entitled.  An order enforcing the automatic stay will also prohibit non-debtors, such as Mr. Brodsky, from acting on behalf of Tradepay, an entity which is exclusively within the Debtor's control.

48.    Notwithstanding the broad scope of protection afforded by the automatic stay in the Bankruptcy Code, not all parties affected by these provisions are aware of Bankruptcy Code section 362, nor are all parties cognizant of the significance of these provisions to the Debtor.

49.    Indeed, in the event the proposed order is not entered, parties such as Ullman Firm, Zoho Corporation and Mr. Brodsky, may inadvertently take action against the Debtor or its property, including the Tradepay Property, in violation of Bankruptcy Code section 362. Any such violation may disrupt the Debtor's business and impair its ability to successfully monetize its assets and maximize value for their stakeholders.  Accordingly, it is vital to advise third parties of the existence and effect of the automatic stay, particularly where, as here, any interference with the Debtor's rights to the Tradepay Property will jeopardize recoveries of significant estate assets for the benefit of the Debtor's creditors.

50.    The potential detrimental impact on the Debtor and its estate caused by a stay violation at this time cannot be overstated. The Debtor is seeking to maximize the value of its estate and to monetize its assets in such a way that will result in maximum recoveries for all of the Debtor's stakeholders. Therefore, in the interest of preserving and enhancing value for all parties in interest, the Court should grant the relief requested herein.

**NOTICE**

51.     The Debtor has provided notice of this Motion to: (i) the Office of the United States Trustee for the District of Delaware; (ii) holders of the twenty (20) largest unsecured claims against each of the Debtor; and (iii) any party that has requested notice under Bankruptcy Rule 2002. Notice of this Application and any order entered hereon will be served in accordance with Local Rule 9013-1(m). In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is necessary.

**NO PRIOR REQUEST**

52.     No prior request for the relief sought in the Motion has been made to this Court or any other Court.

Wherefore, the Debtor respectfully requests entry of an order authorizing the relief requested herein, substantially in the form attached hereto as Exhibit A, and granting the Debtor such other and further relief as the Court may deem proper.

Dated: May 15, 2020                     **FOX ROTHSCHILD LLP**

*/s/ Thomas M. Horan*
Thomas M. Horan (DE Bar No. 4641)
Daniel B. Thompson (DE Bar No. 6588)
919 N. Market St., Suite 300
Wilmington, DE 19899-2323
Telephone: (302) 654-7444
E-mail: thoran@foxrothschild.com
E-mail: danielthompson@foxrothschild.com

Michael A. Sweet (admitted pro hac vice)
325 California St., Suite 2200
San Francisco, CA 94104-2670
Telephone: (415) 364-5560
E-mail: msweet@foxrothschild.com

14

110506961

Gordon E. Gouveia (admitted pro hac vice)
321 N. Clark St., Suite 1600
Chicago, IL 60654
Telephone: (312) 980-3816
E-mail: ggouveia@foxrothschild.com

*Proposed Counsel to the Debtor and
Debtor-in-Possession*