**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

IN RE:

SUREFUNDING, LLC

      Debtor,

_____/

**Chapter 11**

**CASE NO. 20-10953 (LSS)**

### BENJAMIN H. BRODSKY'S RESPONSE IN OPPOSITION TO DEBTOR'S MOTION FOR AN ORDER GRANTING (I) TURNOVER OF ESTATE PROPERTY PURSUANT TO 11 U.S.C. §§ 541 AND 542; AND (II) ENFORCEMENT AND CONTINUATION OF THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362 (ECF NO. 92)

Non-party Benjamin H. Brodsky[1] of Brodsky Fotiu-Wojtowicz, PLLC ("BFW") responds in opposition to the Motion for an Order Granting (I) Turnover of Estate Property Pursuant to 11 U.S.C. §§ 541 and 542; and (II) Enforcement and Continuation of the Automatic Stay Pursuant to 11 U.S.C. § 362 (the "Motion," ECF No. 92) filed by Debtor SureFunding, LLC.

BFW represents Tradepay Capital, LLC ("Tradepay") in a pre-petition state court proceeding in Miami-Dade County, Florida brought by Debtor and others. In the Motion, Debtor alleges that BFW is in violation of a power of attorney (the "POA") issued by Tradepay to another non-party, MCS Agent, LLC ("MCS"), by "(a) continuing to purport to act for Tradepay, both in and out of court, despite lacking such authority; (b) continuing to illegally interfere with enforcement of the POA by instructing third-parties to ignore enforcement; (c) refusing to produce the records in his possession or control that he believes supports his authority to act for Tradepay; and (d) refusing to produce the records documenting what, if any, funds or assets of Tradepay have been paid to him since the default and the triggering of the POA in 2019." (ECF

---

[1]     Mr. Brodsky does not believe that he must be admitted _pro hac vice_ to represent himself in this matter but will promptly file such a motion upon direction by the Court.



No. 92 at 7-8.)  Debtor further alleges that, by virtue of the foregoing, BFW is in violation of the automatic stay in this matter. (*Id.* at 8.) For the reasons stated below, Debtor's allegations are unsupported, and the Motion should be denied.

Some context is helpful to explain why the Motion should be denied.   On October 23, 2019, Debtor, along with five other plaintiffs, sued Tradepay and six other defendants in Miami-Dade County Circuit Court for various tort and contract claims arising from the parties' trade receivable financing relationship.  On November 24, 2019, BFW made its first appearance in this case on behalf of Tradepay along with two of the other defendants, Mrinal Ojha and Atit Sudhir Gandhi.  Since that time, BFW has represented these parties in five hearings before the state court and in three depositions.  Debtor has never asked the state court to determine whether BFW has authority to represent Tradepay, sought to strike any of the many pleadings BFW has filed on behalf of Tradepay, or otherwise argued to the state court that BFW was unauthorized counsel. Nor has Debtor ever filed a motion in the state court proceeding to compel BFW to disclose the source of its authority to represent the entity or whether it has been paid with Tradepay funds.

One of the litigated issues in the state court case is the validity of the POA, which was purportedly issued by Tradepay in favor of MCS.  Debtor is not the attorney-in-fact under the POA; MCS is.  Debtor is not even a party to the contract, the Amended Master Participation Agreement, pursuant to which the POA was issued.  Although the state court has ruled that the POA is enforceable, subject to reconsidering the issue at an evidentiary hearing, the state court has not decided—nor has been it been asked—whether this results in a waiver of any privileges or what the effect of the POA is on BFW's ongoing representation of Tradepay.  MCS and several other parties to the Amended Master Participation Agreement—but not Debtor—have a

BFW

BRODSKY FOTIU-WOJTOWICZ

collateral interest in Tradepay's books and records pursuant to the contract. However, they have not sought to foreclose that property and thus have no title in it.

On February 28, 2020, Debtor filed in the state court proceeding a notice of deposition duces tecum for Michael Ullman, Esq., counsel of Tradepay. A true and correct copy of the notice of deposition duces tecum is attached hereto as Exhibit A. On May 8, 2020, BFW was included in an ongoing chain of email between counsel for Debtor and Mr. Ullman with respect to the deposition, which had been continued due to the COVID-19 pandemic. Among the issues being discussed in these emails was Mr. Ullman's assertion of privilege on behalf of his client pursuant to the deposition notice. BFW responded by asserting and reserving all privileges on behalf of Tradepay and instructing Mr. Ullman not to produce any privileged materials or waive any privileges unless ordered by the state court. A true and correct copy of the email correspondence is attached hereto as Exhibit B. With respect to the effect of the POA on Tradepay's privileges, BFW further stated that "Any determination that the power of attorney represents a wholesale waiver of the attorney-client privilege needs to be briefed and then ruled upon by the Court." (Ex B.)

In the meantime, on May 1, 2020, following the filing of this bankruptcy petition, BFW sent an email to Debtor's counsel inquiring as to its position on whether the petition triggered an automatic stay with respect to the state court litigation. Ted Gavin, Debtor's putative Chief Restructuring and Liquidating Officer, responded to BFW that Debtor did not consider the automatic stay in effect: "the stay is the Debtor's stay and <u>does not apply</u> to matters in which the Debtor is a plaintiff; it stays action against the Debtor, and it is the Debtor's stay to waive. Accordingly, the stay is not a factor in the litigation referenced herein." (Emphasis in original.) A true and correct copy of the email correspondence is attached hereto as Exhibit C.

3



Having given that context, it is apparent that the Motion should be denied. Dealing first with Debtor's turnover request, as a threshold matter, Debtor has not provided any authority that would support this Court's jurisdiction to order turnover of property held by a nonparty, Tradepay, pursuant to a power of attorney granted by the nonparty to another nonparty, MCS.[2] Remarkably, Debtor does not request that the Court order turnover to Debtor itself. Instead, Debtors wants the Court to order one nonparty, Tradepay, to turn over property to another nonparty, MCS.

Perhaps in tacit recognition of this unprecedented request, Debtor contends that Tradepay's books and records are estate property. Yet it never explains why other than to allude to MCS' unforeclosed collateral interest in these books and records pursuant to the Amended Master Participation Agreement to which Debtor is not a party. Debtor attempts to further sidestep this issue by citing *Am. Metrocomm Corp. v. Duane Morris & Heckscher LLP (In re Am. Metrocomm Corp.)*, 274 B.R. 641, 652 (Bankr. D. Del. 2002) for the proposition that Tradepay's books and records do not need to belong to it to justify turnover under § 542(e) of the Bankruptcy Code. However, § 542(e) requires that the recorded information for which turnover is sought must relate to the "debtor's property or financial affairs." In *Am. Metrocomm*, the debtor sought turnover of the files of its attorneys who had represented the debtor in certain litigation. Here, no such showing has been made that any of the information sought by debtor relates to its property or financial affairs.

Moreover, § 542(e) expressly states that the turnover obligation is "[s]ubject to any applicable privilege." Debtor does not argue that it holds Tradepay's privilege. And although

---

[2] The Motion is also procedurally improper as "[a] turnover action is an adversary proceeding which must be commenced by a properly filed and served complaint" *In the Matter of Perkins*, 902 F.2d 1254, 1258 (7th Cir.1990).

4



the POA is admittedly sweeping in the powers granted to MCS, nowhere in the POA is MCS—or Debtor for that matter—authorized with the power to waive any of Tradepay's privileges.   In Florida, where Tradepay is incorporated and has its principal place of business, and where Mr. Ullman and BFW provided it legal services, the attorney-client privilege is an interest traditionally deemed worthy of maximum legal protection." *West Bend Mut. Ins. Co. v. Higgins*, 9 So.3d 655, 657 (Fla. 5th DCA 2009).   Even "a client who in the past has committed a wrongdoing is entitled to confidential communications and advice from an attorney." *First Union Nat'l Bank v. Whitener*, 715 So.2d 979, 983 (Fla. 5th DCA 1998). *See also Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (the purpose of the attorney-client privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.").   Here, Debtor takes issue with BFW's assertion of recognized statutory and common law privileges on behalf of its client, non-party Tradepay, which continues its independent existence to date.   But Debtor has provided the Court no authority for taking the extraordinary step of ordering one nonparty to turn over non-estate property to other non-party, and, in the process, abrogating and invading Tradepay's privileges.   This is because there are no grounds on these facts to do so.

Turning now to Debtor's request that BFW should be "enjoined from continuing to act on behalf of Tradepay" in supposed violation of the automatic stay, Debtor's position is incorrect for several reasons.   First, Debtor has already taken the position that is has waived the automatic stay, *see* Exhibit A, and it continues to actively litigate the state court proceeding as a plaintiff.

Second, Debtor's position appears to be that it should be entitled to litigate the case as a plaintiff but that Tradepay should have no counsel at all, presumably so that Debtor and its co-plaintiffs can receive a default judgment against the entity.   This concept—that the automatic

5



stay should strip a debtor's adversary in pending prepetition litigation of the right to counsel—is unsupported and untenable.  Again, while the POA admittedly gives MCS broad powers, these powers are not exclusive, and nowhere does it act to deprive Tradepay to act on its own behalf or otherwise grant MCS what amounts to a *de facto* receivership over Tradepay.

Third and finally, it is objectionable that Debtor would contend that BFW is violating the automatic stay by asserting privileges and otherwise zealously representing its client, Tradepay. In Florida, and across the United States, an attorney has an independent professional duty to effectively and zealously represent a client. *Pub. Def., Eleventh Judicial Circuit of Fla. v. State*, 115 So. 3d 261, 271 (Fla. 2013).  Additionally, Florida attorneys have a duty to maintain their clients' confidential and privileged information.  *Abdool v. Bondi*, 141 So. 3d 529, 553 (Fla. 2014).  "A lawyer must make reasonable efforts to prevent the inadvertent or unauthorized disclosure of, or unauthorized access to, information relating to the representation of a client." Fla. R. Prof. Conduct 4-1.6(e).  "The confidentiality rule applies not merely to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source." *Id.*, cmt.  Of course, BFW will unconditionally follow any order of this Court or any other, but it must follow its professional and fiduciary obligations until such time as it is judicially directed otherwise.

WHEREFORE BFW respectfully requests that the Court deny Debtor's Motion and enter such other relief that it deems just and appropriate.

Respectfully submitted,

By: /s/ *Benjamin H. Brodsky*
Benjamin H. Brodsky, Esq.
Florida Bar No. 73748
BRODSKY FOTIU-WOJTOWICZ, PLLC
200 SE 1st Street, Suite 400

6



Miami, Florida 33131
Tel: 305-503-5054
Fax: 786-749-7644
bbrodsky@bfwlegal.com
docketing@bfwlegal.com