IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

IN RE:

SUREFUNDING, LLC

Debtor,
_____/

**Chapter 11**

CASE NO. 20-10953 (LSS)

## ULLMAN & ULLMAN, P.A'S RESPONSE IN OPPOSITION TO DEBTOR'S MOTION FOR AN ORDER GRANTING: (I) TURNOVER OF ESTATE PROPERTY PURSUANT TO 11 U.S.C. §§ 541 AND 542; AND (II) ENFORCEMENT AND CONTINUATION OF THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362

Ullman & Ullman, P.A. (the "Ullman Law Firm")[1], through Michael Ullman files this Response In Opposition to the Debtor's Motion for an Order Granting: (I) Turnover of Estate Property Pursuant to 11 U.S.C. §§ 541 and 542; and (II) Enforcement and Continuation of the Automatic Stay Pursuant to 11 U.S.C. §§ 362, and states as follows:

The Debtor's Motion failed to carry its burden to establish factually and/or legally that the Ullman Law Firm should be subject to a turnover request under 11 U.S.C. § 542(a) or (e), or that Ullman Law Firm's files related to its limited transactional engagement by Tradepay Capital, LLC ("Trade Pay") constitute or qualify as property of the Debtor's estate under 11 U.S.C. § 541. Accordingly, the Bankruptcy Code's automatic stay provision under 11 U.S.C. § 362(a) is inapplicable to the relief sought in the Debtor's Motion as to the Ullman Law Firm.

The Debtor's Motion contains several mischaracterizations of fact that must be brought to the Court's attention.

**First**, the Debtor states that "the Ullman Firm responded to the Ullman Demand by indicating its refusal to honor the POA, despite the Florida Court's ruling in the Protective Order,

---

[1] Mr. Ullman has assumed that under the current environment the Court will permit Mr. Ullman to represent Mr. Ullman's own law firm in this matter without first being admitted *pro hac vice*, but will promptly file such a motion upon direction by the Court and/or fully comply with Local Rules 9010-1(b), (c) and (d).

1

and to comply with the Ullman Demand."[2] The Debtor's entire 11 U.S.C. § 542(a) legal argument is based on the factually and legally unsupported premise that the Ullman Law Firm is in possession of "property" belonging to Trade Pay, in which the Debtor claims serves as collateral for its agent, non-debtor ECP-III, MCS Agent, LLC ("MCS Agent").

The Debtor's Motion fails to cite to a single authority to support any argument that the estate, or MCS Agent, **or** Trade Pay, have any property interest in the Ullman Law Firm's files under 11 U.S.C. § 541(a), which may be used to support a turnover request under 11 U.S.C. § 542(a). Florida law, the only substantive law which governs this issue, establishes clearly that the Ullman Law Firm is the only person who has an interest in the Ullman Law Firm's files, such files may neither serve as collateral for Trade Pay's debts to the Debtor and/or MCS Agent, nor, may any of these parties assert any "property of the estate" interest.

The Debtor has the burden to establish that the Ullman Law Firm's files constitute property of the estate. "In an action to compel turnover of property of the estate under Section 542(a), the Trustee has the initial burden of proving that the property at issue is property of the estate under Section 541." *In re Heritage Org., L.L.C.*, 350 B.R. 733, 738 (Bankr. N.D. Tex. 2006).

The Motion glosses over this issue, and the Debtor generally describes the property at issue as the **Tradepay Property**, based on a POA[3], seemingly implying that Trade Pay, and derivatively, the Debtor, through non-party MSC Agent, has an interest in Ullman Law Firm's legal files and correspondence files.

---

[2] The Ullman Law Firm is not a party to a pending Florida lawsuit styled *ECP Holdings III, LLC, et. al. v. Trade Pay Capital, LLC, et. al.* in the 11th Judicial Circuit in and for Miami-Dade County, Florida, case No. 2019-031155-CA-01 ("Florida Lawsuit"). It is Michael Ullman's understanding that the Court in the Florida Lawsuit has never entered any orders that require the Ullman Law Firm to comply with the POA.

[3] Certain capitalized terms used in this Response are defined in the Debtor's Motion. The Debtor's Motion defines the POA as a Power of Attorney executed by Trade Pay in favor of non-debtor, MCS Agent, acting on behalf of the Debtor on July 26, 2019.

In order to determine the Debtor's interest in the Ullman Law Firm's files under a POA, if any, in connection with the Debtor's turnover request, it is necessary for this Court to look to the law of the State of Florida, where Trade Pay was organized and has or had its principal place of business, and the state in which the Ullman Law Firm is incorporated and conducted the limited transactional professional services on behalf of Trade Pay (as discussed in more detail below) . "In the absence of any controlling federal law, "property" and "interests in property" are creatures of state law." *Barnhill v. Johnson*, 503 U.S. 393, 398, 112 (1992). "Since the Bankruptcy Code itself does not determine the existence and scope of a debtor's interest in property, these threshold issues are properly resolved by reference to state law." *In re Harrell*, 73 F.3d 218, 219 (9th Cir. 1996). "Bankruptcy law does not create property, however. The nature of the debtor's interest in property which accrues to the estate is based on nonbankruptcy law." *Matter of Pinetree, Ltd.*, 876 F.2d 34, 36 (5th Cir. 1989). "As the Third Circuit emphasized notwithstanding 'Congress' intention to bring anything of value that the debtors have into the estate, ... the legislative history of § 541 also demonstrates that it was not intended to expand debtor's rights against others more than they exist at the commencement of the case." *In re Irish Bank Resolution Corp. Ltd. (in Special Liquidation)*, 559 B.R. 627, 645 (Bankr. D. Del. 2016)(internal quotations omitted).

Under Florida law, it is well established that "there is no duty upon a private attorney to give any of his files to a client, save documents which are solely those of the client and held by the lawyer. Pleadings, investigative reports, subpoena copies, reports and other case preparation documents are property of the lawyer. He is not required to give that material to the client or make copies free of charge." See *Donahue v. Vaughn,* 721 So. 2d 356, 356-57 (5th DAC 1998), *citing Woodson v. Durocher,* 588 So.2d 644 (Fla. 5th DCA 1991), *rev. den.,* 598 So.2d 79

(Fla.1992)("The contents of an attorney's file relating to professional services performed for a client are the personal property of the attorney, not the client.").

Accordingly, under Florida law, neither the Ullman Law Firm's former client, Trade Pay, nor, any assignee or holder of the POA, has any interest in Ullman Law Firm's files. It is axiomatic that, therefore, MCS Agent (or the Debtor), each of whom purportedly stand in the shoes of Trade Pay under the POA, likewise, has any interest in Ullman Law Firm's files.  To put it another way, the Ullman Law Firm's files do not constitute an asset of Trade Pay. Thus, the Debtor's estate (or trustee) has no "collateral" property interest in the Ullman Law Firm's files that the trustee may use, sell, or lease under section 363 support a request for turnover under 11 U.S.C. § 542(a). Despite conclusory statements contained in the Debtor's Motion, the Debtor's does not appear to dispute that the Ullman Law Firm, as a matter of Florida law,  is not bound by the POA and/or that the Debtor, and non-debtor MCS Agent's request for turnover, is legally insufficient.

The Debtor takes the extraordinary step of requesting injunctive relief against the Ullman Law Firm under Bankruptcy Code Section 362(a) seeking to enjoin the Ullman Law Firm from exercising control over "property of the estate."  Notwithstanding, as detailed herein, the Ullman Law Firm's files is not property of the estate, and the Ullman Law Firm has not committed any act that may implicate the Bankruptcy Code's automatic stay provisions.

**Second**, shifting from the Debtor's 542(a) turnover request to the Debtor's turnover request under 542(e), the Debtor's Motion totally ignores and/or short shrifts the language in 11 U.S.C. § 542(e) stating "**Subject to any applicable privilege**, after notice and a hearing, the court may order an attorney…that holds recorded information, including books, documents, records, and papers, **relating to the debtor's property or financial affairs**, to turn over or disclose such

4

recorded information to the trustee." (bolding supplied).[4] "The language of Section 542(e) suggests that the Trustee must carry an initial burden to establish that the Documents relate...to the debtor's property or financial affairs." *In re Irish Bank Resolution Corp. Ltd. (in Special Liquidation)*, 559 B.R. 627, 646–48 (Bankr. D. Del. 2016). "Section 542(e) is not self-executing and the court need not grant the relief requested in an unusual case." *Id.*

The Motion is also devoid of any argument to support any ruling requiring the Ullman Law Firm to turnover any communications with Trade Pay that qualify as privileged in derogation of the Ullman Law Firm's ethic and professional duties under Florida Law.

Florida statutes BAR Rule 4-1.6 states that "A lawyer must not reveal information relating to representation of a client except as stated in subdivisions (b), (c), and (d), unless the client gives informed consent." None of the exceptions to Fl. Stat. BAR Rule 4-1.6, addressing when a lawyer "may" or "must" reveal confidential information appear to have any application the Debtor's Motion, and the Debtor does not contest the issue.

In fact, Trade Pay's current law firm, Benjamin H. Brodsky of Brodsky Fotiu-Wojtowicz, PLLC filed a Response in opposition to the Debtor's Motion (D.E. 96) ("Brodsky Response"), indicating that Trade Pay does not give consent to waive its attorney client privilege communications with its former counsel, the Ullman Law Firm, which provides that:

i. The Florida Action (in which the Ullman Law Firm is not a party) has not decided—nor has been it been asked—whether the POA results in a waiver of any privileges.

ii. The Debtor's Motion does not argue that it holds Tradepay's privilege.

iii. Nowhere in the POA is MCS Agent—or the Debtor for that matter—authorized with the power to waive any of Tradepay's privileges.

---

[4] In the case of *In re Am. Metrocomm Corp.*, 274 B.R. 641, 652 (Bankr. D. Del. 2002), the court found that "the legislative history of § 542(e) suggests that the provision was intended to deprive attorneys of the leverage acquired under state lien laws to receive full payment of professional fees over the debts of other creditors when the information withheld is necessary to the administration of the estate."

    iv.    In Florida, where Tradepay is incorporated and has its principal place of business, and where Mr. Ullman and BFW provided it legal services, the attorney-client privilege is an interest traditionally deemed worthy of maximum legal protection." *West Bend Mut. Ins. Co. v. Higgins*, 9 So.3d 655, 657 (Fla. 5th DCA 2009).

    v.    The Debtor has provided the Court no authority for taking the extraordinary step of ordering one nonparty to turn over non-estate property to other non-party, and, in the process, abrogating and invading Tradepay's privileges. This is because there are no grounds on these facts to do so.

The Ullman Law Firm joins the Brodsky Response, including, the above assertions and arguments.

Had the Ullman Law Firm acquiesced to MCS Agent's request to turnover privileged files related to Trade Pay, the Ullman Law Firm would have been in derogation of its professional duty to protect confidential attorney-client privileged information.

**Third**, in order to support the Debtor turnover request under 11 U.S.C. § 542(e), the Debtor's Motion seems to imply that Ullman Law Firm is in possession of files; and that such files are somehow related "to the debtor's property or financial affairs."

The Ullman Law Firm has, on numerous occasions sought to explain the limited transactional scope of Ullman Law Firm's engagement by Trade Pay, and advised Mr. Tab Turner that the Ullman Law Firm never had anything to do with the Debtor's property, or the Debtor's financial affairs.[5] The engagement may be summarized as follows:

- Trade Pay contacted Michael Ullman on or about March 31, 2017 at 9:57 a.m. The Ullman Law Firm was formally engaged by Trade Pay on or about April 10, 2017, for the limited scope of conferring with Trade Pay for the sole purpose of drafting various contracts for use in Trade Pay's peer-to-peer supply-chain lending platform, and ancillary professional legal services to evaluate issues surrounding supply-chain or trade finance and credit

---

[5] Michael Ullman has communicated via email with attorney Tab Turner, counsel to MCS Agent, concerning the limited scope of the Ullman Law Firm's engagement by Trade Pay, and his knowledge, or lack thereof, concerning any matters involving MCS Agent, and the Debtor. However, the Ullman Law Firm was not made aware of this pending bankruptcy case until receiving a copy of the Debtor's Motion on or about May 15, 2020. In addition, the Debtor's Motion attached as an Exhibit 8 an incomplete and partial email chain between attorney Tab Turner and Mr. Michael Ullman. Attached is a complete copy of the email chain dated from Thursday, May 07, 2020 at 7:18 P.M. until May 10, 2020 11:52 A.M., and a related email communication between Michael Ullman to Tab Turner dated May 7, 2020 at 7:55 p.m.

insurance, and as a courtesy at the request of Trade Pay, Michael Ullman introduced Trade Pay to a reputable credit insurance brokerage in order to obtain credit insurance.

After furnishing the contracts to Trade Pay, the Ullman Law Firm's engagement by Trade Pay was completed. Mr. Michael Ullman, the only attorney who worked on matters for Trade Pay, has had no activity with Trade Pay for nearly 20 months, since September 4, 2018 at 4:56 p.m.

Neither Michael Ullman nor the Ullman Law Firm, or any of its employees has ever served as corporate counsel or in-house counsel, or general outside counsel for Trade Pay. Besides drafting supply chain and ancillary agreements and evaluating certain issues in connection with Trade Pay's supply chain finance program neither Michael Ullman nor the Ullman Law Firm has any knowledge or information concerning Trade Pay's formation, operations, ownership and/or affairs, or Trade Pay's assets.

However, the Debtor does not explain how or why any of the Ullman Law' Firm's files are related to the debtor's property or financial affairs. The Debtor's factual support for the request for turnover under Section 542(e) is summarized as follows "[i]t is essential for MCS Agent to exercise control over the Tradepay Property to protect the Debtor's interest in the Collateral, including the Participated Accounts, and to take the action demanded because it is necessary and desirable to realize timely and full payment under the Participated Accounts and the Amended MPA." (D.E. 92 ¶ 28). In fact, based on a review of the Motion, the Debtor did not offer any evidence to establish a nexus between the Ullman Law Firm's limited scope of transactional engagement by Trade Pay, and the Debtor's property or financial affairs. Accordingly, the Debtor has not carried its burden; and therefore, the Motion should be denied.

WHEREFORE, Ullman & Ullman, P.A. respectfully requests that the Court deny the Motion, direct the Debtor, MSC Agent, and its counsel to cease directing any further turnover

demands to Ullman & Ullman, P.A. on behalf of MCS Agent and/or the Debtor, and granting all such further relief as is just and proper.

Dated: May 29, 2020

                                        **ULLMAN & ULLMAN, P.A.**

                                        */s/ Michael W. Ullman*
                                        Michael W. Ullman (FL Bar No. 259667)
                                        7700 West Camino Real, Suite 401
                                        Boca Raton, Florida 33433
                                        Telephone: (561) 338-3535
                                        E-mail: michael.ullman@uulaw.net