## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SureFunding, LLC, | Case No. 20-10953 (LSS) |
| Debtor. | **Hearing Date: October 17, 2022 at 11:00 a.m. (ET)** |

### NOTEHOLDERS' REPLY IN SUPPORT OF THEIR MOTION FOR AN ORDER CONVERTING THIS CASE TO CHAPTER 7

The Noteholders,[1] through their undersigned counsel, respectfully file this reply in support of their motion for an order converting this chapter 11 case to a case under chapter 7 of the United States Bankruptcy Code (the "Code") and respectfully state as follows in support thereof:

### PRELIMINARY STATEMENT

1.     The simple question here is whether cause exists to convert this case to chapter 7. At least seventy-five percent (75%) of the Debtor's noteholder creditors and the United States Trustee have confirmed that they remain in favor of conversion and appointment of an independent

---

[1] "Noteholders" are Brett Hatton, an individual; Earl Coronel, an individual; Autumn Wind Global Multi-Strategies Fund, LP, a Delaware Limited Partnership; Damon Gersh, an individual; Jason Eckenroth, an individual; Sherri R. Sands, as trustee of the Sherri R. Sands Revocable Trust, a Florida Trust; Glickfield Capital Management, LLC fbo M. Glickfield Dynasty Trust, a Maryland Trust; Glickfield Capital Management, LLC fbo Cheryl Newmark, a Maryland Trust; Glickfield Capital Management, LLC fbo Marla Schram, a Maryland Trust; Carrickfergus Investments Limited, a British Virgin Islands Company; Stephane Carnot, as Trustee of the Carnot Family Trust, a District of Columbia Trust; Dorsey and Whitney Trust Co., LLC, as Trustee of the Dylan Taylor 2011 Grantor Trust, a South Dakota Trust; Eseco, LLC, a Michigan Limited Liability Company; Sequris Group, LLC, a Michigan Limited Liability Company; Matthew Briggs, as Trustee of the Briggs Management Trust; Michael Rubenstein, an individual; June Farmer, an individual; Thomas Carl Myers, an individual; Richard L. Rogers, an individual; Neal J. Glickfield, as Trustee of the Neal J. Glickfield 2018 Trust, a Maryland Trust; Lineage, LLC, a Virginia Limited Liability Company; Charles B. Chokel, as Trustee of the Charles B. Chokel Trust u/a 4/21/92, a New Hampshire Trust; Brian Gray, an individual; HFJ Investments I, LLC, a Texas Limited Liability Company; Patricia B. Jones, as Trustee of the Patricia B. Jones Revocable Trust, a Maryland Trust; John B. Shaw as Trustee of the John B. Shaw 2012 Family Grantor Trust; and 1086 LLC, a Maryland Limited Liability Company.

trustee and believe it is in the best interest of creditors.  Section 1112(b) sets forth a number of

non-exclusive examples of cause, only one of which needs to be present for conversion.  This

Court has already made findings in support of cause, which the Debtor now claims were "wrongly

determined."  The Debtor's claims are too late and contrary to its own admissions in this Court.

2.      The Nevada-court appointed receiver has been in limbo since the Nevada Supreme

Court ruled in January, and the Abernathys' hand-selected manager lacks authority to act.  Yet he

has taken numerous actions without court authority and remains unacceptable to the Noteholders

in light of his association with the Abernathys and his unauthorized actions.  This is a liquidation

situation with no possibility of reorganization and the acrimony between the Debtor and its

creditors remains beyond repair.

<u>**ARGUMENT**</u>

3.      Section 1112(b) provides that, on request of a party in interest, the court *shall*

convert a case under chapter 11 to a case under chapter 7, whichever is in the best interest of

creditors and the estate, for cause unless the court determines that the appointment under section

1104(a) of a trustee is in the best interests of creditors and the estate.  *See* 11 U.S.C. § 1112(b)(1).[1]

**A. The Noteholders Have Standing and Moreover, the U.S. Trustee Requests Conversion.**

4.      The Debtor admits that the Noteholders are creditors of the Debtor in its objection

and in its schedules.  (Objection par. 18).  Creditors are parties in interest that have standing to

seek conversion.  *See* 11 U.S.C. § 1109(b) (a party in interest, including, a creditor, may raise and

may appear and be heard on any issue in a case under this chapter).  Presumably at the direction

---

[1] Notably, this standard does not involve an inquiry as to whether the Debtor filed this case in good faith.  While the Noteholders have numerous issues with Debtor's statements with respect to good faith and this Court's findings with respect thereto in their objection, they have refrained from addressing such issues here as they are irrelevant to the Court's determination of whether cause exists for conversion.

of Gavin, Debtor disputes whether the Noteholders can take action with respect to their collateral. But the question of whether Noteholders are empowered to take action with regard to a security interest is irrelevant to the determination of whether they are parties in interest with standing to seek conversion. The plain statutory text of Section 1112(b) contemplates that all creditors have standing; the determination hinges on "the best interest of creditors." *See* 11 U.S.C. § 1112(b). The sole case cited by the Debtor (*Kane v. Johns-Manville Corp*., 843 F.2d 636, 650 (2d Cir. 1988)) is inapposite. There is no likeness between creditors here requesting conversion of a case to the creditors in *Kane* attempting to raise objections to a plan on behalf of classes of claims to which they are not members.

5.      Debtor's effort to challenge whether the Noteholders waived their individual rights to enforce remedies with respect to the collateral is entirely distinct from the Noteholders seeking conversion of this case to a chapter 7 as individual creditors. Conversion is not an action pertaining solely to the Noteholders' collateral – it is an action taken by the Court in the interest of all creditors, not just the Noteholders (as evidenced by the US Trustee's own request for conversion and the support voiced by other non-moving Noteholders).

6.      Contrary to the Debtor's assertions, the Third Amendment to the Note Purchase Agreement ("Third Amendment"), a copy of which was filed with the Court as Doc. 136, does not purport to strip the Noteholders of their individual, creditor status or ability to exercise individual rights in a prospective bankruptcy proceeding. Indeed, the Third Amendment does not even mention rights with respect to bankruptcy proceedings, let alone restrict them. It merely purports to appoint a "Collateral Agent" to enforce collective secured creditor rights. (Doc. 136 at 28.) Absent express language in an agreement, waiver provisions should not be derived from broad contractual provisions. *See e.g., In re MPM Silicones, LLC*, 596 B.R. 416, 432 (S.D.N.Y. 2019)

3

(refusing to write an express waiver of voting rights into the general language of an intercreditor agreement); *In re Boston Generating LLC*, 440 B.R. 302 (Bankr. S.D.N.Y. 2010) (finding that absent language expressly prohibiting second-lien lenders from objecting to a Section 363 sale, language in the agreement that generally provided first-lien lenders with the "exclusive right" to make determinations regarding the sale of collateral was not specific enough to extent to objections to bidding procedures for the sale."); *In re Dura Automotive Systems, Inc.*, 379 B.R. 257 (Bankr. D. Del. 2007) (finding certain noteholders had a right to be heard with respect to confirmation of the debtor's plan of reorganization, where the "no-action" clause was not crystal clear in its wording).

7.      Moreover, to be effective, the Third Amendment expressly states that it is only binding on the "Amending Purchasers" who actually signed the Third Amendment.  (Doc. 136 at 3 [first paragraph and Whereas clause].)  The copy of the Third Amendment filed with the Court is unsigned and thus not binding on the Noteholders.  The Debtor's statement that the Nevada Court found that the Noteholders waived this argument is patently false.  The Nevada Supreme Court's order found that the Noteholders raised and preserved this argument, but that it was not material to their decision ordering dismissal of the case.  The Nevada Supreme Court did not purport to reach or address what effect, if any, the unsigned Third Amendment had on the Noteholders' standing to seek relief in this Court or to pursue conversion.  *See* **Exhibit A**.

8.      The standing argument raised by the Debtor is also irrelevant.  The U.S. Trustee requests conversion for the same reason that the Noteholders and other non-moving noteholders support conversion.  The Court need not reach the standing issue to conclude the case should be converted.

**B.  Cause Exists for Conversion.**

9.      Courts have wide discretion in determining whether cause exists for the purposes of Section 1112(b).  *See In re SGL Carbon Corp.*, 200 F.3d. 154, 160 (3d Cir. 1999).  The Debtor's arguments that cause does not exist demonstrate that the Debtor's sole goal is have its handpicked professional—presumably the same interested party who directed counsel to file this opposition—run the liquidation of the estate.  As the U.S. Trustee aptly observed in his motion, there is acrimony among the parties.

10.     The Debtor's arguments that this Court's findings in its Bench Ruling were "respectfully, wrongly determined" are too little, too late.  If the Debtor felt the findings were wrong at the time they were issued, it should have asked for reconsideration or ability to appeal. It did not.  This Court already, rightfully so, found there "appears to be no possibility of reorganization" and the Debtor will be unable to effectuate substantial consummation of a confirmed plan in this case.  Bench Ruling at 10.

11.     The Debtor's argument that there are not substantial and continuing losses to the estate is illogical.  The only cash flow of the Debtor is liquidation of its few remaining assets.  The vast majority of the assets, even Debtor admits, were lost in a fraud scheme.  There is no ongoing business enterprise and nothing to reorganize.  All assets are declining in value and are being liquidated.  This cannot be turned around to claim that there are not losses to the estate.  *See, e.g.*, *In re Great American Pyramid Joint Venture*, 144 B.R. 780, 791 (Bankr. W.D. Tenn. 1992) (finding fact that debtor's operations had ceased constitutes cause under Section 1112(b)(1) for continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation); and *Bay Area Material Handling, Inc. v. United States Trustee (In re Bay Area Material Handling, Inc.)*, 76 F.3d 384 at *2 (9th Cir. 1996)(finding a continuing loss to or

diminution of the estate and absence of a reasonable likelihood of rehabilitation based on debtor's lack of operations, income, inventory and employees and its liquidation of its assets).

12.     Moreover, not only is the Debtor liquidating, the Debtor claims to have spent $3 million on professional fees that, to date, have not been authorized by this Court and for professionals whose employment remains subject to Court approval.  See Debtor's Opposition to United States Trustee's And Certain Noteholders' Motions to Shorten [Doc 155] at Par. 4.  This figure is staggering and evidence that this Debtor should no longer be in control and an independent trustee is needed.

13.     The creditors have no faith in the Debtor, have already been wronged by the Debtor's bad investments and breach of fiduciary duties by failing to mitigate the losses to the creditors.  The creditors sought to mitigate their losses when they discovered the fraud, and the Debtor has fought them every step of the way.  What the Debtor is seeking to protect is unclear, but also irrelevant.  The receivership will be dismissed[1] and an independent chapter 7 trustee is in the best position to continue liquidating this estate.

14.     There is no special knowledge here for liquidation.  The assets are self-liquidating and just need to be overseen.  Outside litigation counsel was engaged by the receiver and remains in place to pursue the litigation assets and the other Debtor assets are simply collecting out.  Mr. Gavin has no superior knowledge on that front to an independent chapter 7 trustee.  Moreover, not only has Mr. Gavin admitted that he has been taking action on behalf of the Debtor that has not been authorized by this Court (at the August 25 hearing), he is also directing counsel to take direct action against the Noteholders in Nevada with respect to payments made to them and approved in

---

[1] Notably, the Debtor's statement that an order hasn't been entered by the receivership is misleading.  It hasn't been entered because the Debtor is seeking to add findings that were not made by the Court and provide releases that weren't ordered by the Court.  The Noteholders have identified these issues to the Debtor and Debtor's counsel has failed to respond or address them for 3 weeks.

the receivership and at the same time to provide releases of other parties.  He clearly has a target on the Noteholders *who were the victims of a massive fraud* and is not independent.

16.     Critically, the counsel that Gavin is directing to take action in the Nevada Action—in breach of this Court's stay order—Snell and Wilmer, is the same counsel that is representing the Abernathys individually in the litigation filed by the receiver against the Abernathys.  They also filed a motion to stay that litigation pending the outcome of the receivership.  Given the circumstances of this case, Mr. Gavin is not the appropriate professional to run the liquidation.  He and his counsel are hopelessly conflicted.

16.     Seventy-five percent of the Noteholders support conversion, as evidenced by the demonstrative chart attached hereto as **Exhibit B** and the statements received by the Noteholders from other non-Plaintiff noteholders included therewith.  The Debtor's schedules list 53 noteholders.  Twenty-seven of those noteholders (over half in number) holding $24 million of the notes (two-thirds by amount) are the movants here.  Bench Ruling at 8.  Six additional noteholders, with claims in excess of $2.3 million, join in the request for conversion.  Debtor will not be able to obtain an impaired accepting class to effectuate a cramdown and there is no reason to give them time to do so.  This provides another independent reason to support conversion.

<u>C<small>ONCLUSION</small></u>

17.     For the foregoing reasons and as set forth in the Motion, Noteholders respectfully requests that this Court enter an order, in substantially the form attached to their motion (i) converting this case to chapter 7 and (ii) granting such other relief as may be just and appropriate. In the alternative, if the Court is not inclined to convert the case immediately, Noteholders respectfully request that the Court: (a) appoint a chapter 11 trustee pursuant to the U.S. Trustee's request to run the business in anticipation of the imminent dismissal of the Nevada action and discharge of the receiver, (b) order discovery on Debtor's motion to employ Gavin and other professionals to get to the bottom of the claimed $3 million spend, their independence, and other actions, and (c) set a post-hearing discovery on the motions to employ and an opportunity to supplement any objections to the retention once discovery is complete.

Dated: October 13, 2022
Wilmington, Delaware

**BLANK ROME LLP**

By: */s/ Stanley B. Tarr*
Victoria A. Guilfoyle (No. 5183)
Stanley B. Tarr (No. 5535)
1201 N. Market Street, Suite 800
Wilmington, Delaware 19801
Telephone: (302) 425-6400
Facsimile: (302) 425-6464
Email: tori.guilfoyle@blankrome.com
         stanley.tarr@blankrome.com

-and-

Kenneth J. Ottaviano (admitted *pro hac vice*)
William J. Dorsey (admitted *pro hac vice*)
Paige B. Tinkham (admitted *pro hac vice*)
444 West Lake Street, Suite 1650
Tel:  (312) 776-2600
Fax:  (312) 776-2601
Email: kottaviano@blankrome.com
         wdorsey@blankrome.com
         ptinkham@blankrome.com

*Attorneys for the Noteholders*