# BLANKROME

444 West Lake Street | Suite 1650 | Chicago, IL 60606

*Phone:* (312) 776-2512
*Fax:* (312) 264-2425
*Email:* william.dorsey@blankrome.com

December 23, 2022

**Filed Via ECF and Sent Via Email**
Honorable Laurie Selber Silverstein
United States Bankruptcy Court for the District of Delaware
824 North Market Street, 6th Floor
Wilmington, DE 19801

    Re:    *In re SureFunding, LLC*, Case No. 20-10953
              Response to Debtor Counsel's December 21, 2022 Correspondence

Dear Judge Silverstein:

We write in response to Debtor's December 21st unilateral submission of documents for the Court's *in camera* review. Debtor's submission fails to comport with the Court's directive to "let [Noteholders] pick the timeframe" for the review, and thus it excludes critical timeframes and categories of documents. Debtor also refused to meet and confer with Noteholders about the submission and ignored Noteholders' request to include a more varied sample of documents for the Court's review.

At the December 14, 2022 hearing, the Court, among other things: (a) directed Debtor to produce an unredacted copy of Gavin's time records, and (b) asked that 100 withheld documents be submitted for *in camera* review to evaluate Debtor's privilege claims and the relevance of those communications to the Court's taint inquiry. The Court allowed Noteholders to "pick the timeframe" of the documents to be reviewed. (12/14/2022 Tr. at 300.) Debtors' counsel agreed at the hearing to confer with Noteholders' counsel about the submission in advance. (*Id.* at 308.)

On December 16th, Noteholders' counsel requested the production of Gavin's unredacted time records and certain related documents, and suggested a call for the following week to discuss what categories of documents should be submitted for *in camera* review. (*See* Ex. A [Email Exchange].) The following Monday, December 19th, Debtor's counsel responded and stated that they intended to produce to the Court only the 101 documents that had been withheld from Snell's production, plus an undisclosed number of Gavin-selected documents that had been produced previously in redacted form. (*Id.*)

Notably, Debtor and Gavin have refused to log any of the documents that they have withheld as

BLANKROME

December 23, 2022
Page 2

privileged, or even identify the volume of those withheld documents in direct violation of Rule 26(b)(5); only the handful of documents produced in redacted format were logged. *See* Fed. R. Civ. P. 26(b)(5) (When a party withholds discoverable information, the party ***must*** expressly make the claim and describe the nature of the documents in a manner that will enable other parties to assess the claim). This failure constitutes a waiver of privilege and thus all documents withheld by Debtor should simply be produced to Noteholders. *See, e.g., Stagger v. Experian Inform Solutions, Inc.*, 2021 WL 5299791 (N.D. Ill. Nov. 15, 2021). The refusal to log withheld documents has also made it nearly impossible for Noteholders to evaluate the volume and nature of withheld documents or the privilege asserted, i.e., are 80 percent "common interest" privilege assertions? This dilemma is exactly why privilege logs are required.

Debtor has also refused to produce Gavin's April and May 2020 time records or Fox Rothschilds's invoices and time records from any time period. These documents are clearly relevant to the question of what role the Abernathys continued to play in Debtor's post-petition management, and should be produced. But from a cursory review of Gavin's available records, the volume of documents withheld on privilege grounds is substantial. There are hundreds of Gavin time entries referencing withheld correspondence, and none of them have been logged.

For instance, on July 21, 2022 alone, Gavin billed 8 hours to SureFunding. His time entries reference multiple teleconferences and correspondence with Palmer, Wayne James, Jason Abernathy, and counsel, but it appears that none of them were logged or produced. (*See* Hearing Ex. 32). The documents that were produced from other dates are heavily redacted and appear to have been hand chosen by Gavin because, in his mind, they evince discord between the Abernathys and Gavin.

In response to Debtor's December 19th email, Noteholders' counsel noted that Debtor's self-selected sampling, without any input from the Noteholders, was not only contrary to the Court's directive, but also intentionally excluded huge swaths of key documents and time periods. (Ex. A.). The selected documents came only from Snell and presumably were not "de-duped" or limited to email families. Thus, they are likely to be duplicative and limited only to Snell's role, not Fox Rothschild or subsequent email exchanges between Gavin and the Abernathys that are likely to be the most illuminating.

Nevertheless, Debtor advised Noteholders' counsel that they would be sending the Court only the 101 withheld Snell documents for *in camera* review over Noteholders' objections. Debtor refused to consider producing different documents for *in camera* review or meet and confer about the selection of documents to be submitted to the Court. (*See* Ex. A.)

The Noteholders respectfully request that the Court reject Debtors' submission; overrule Debtor's claims of privilege over unlogged documents—and based on an unidentified alleged common

December 23, 2022
Page 3

interest; and order Debtor to further meet and confer regarding the documents to be submitted. In the alternative, Noteholders request that the Court order the following categories of documents to be produced for *in camera* Court review:

1. ***Fox's Engagement Letter and Communications with Abernathys Regarding April 14, 2020 Corporate Documents and "Control" of the Appeal***

In addition to the three payments referenced in Fox's retention application, the Abernathys made the following additional payments to Fox, apparently in support of efforts to challenge or appeal the Nevada Action:

- 7/22/2020 - $7500 – wired from CTJT
- 7/22/2020 - $7500 – wired from HARRY HOLDINGS
- 8/4/2020 - $15,000 – wired from Justin Abernathy
- 8/31/2020 - $15,000 – wired from Justin Abernathy
- 9/29/2020 - $15,258.50 – wired from Justin Abernathy
- 10/19/2020 - $5000 – wired from Justin Abernathy

The Court should direct Debtor to produce—or at least make available for *in camera* review: (a) Fox's engagement letter and invoices/time records, (b) communications regarding the drafting and submission of the Unanimous Consent and Second Amendment, and (c) unredacted communications regarding "control" of the Nevada action and appeal.

Despite Fox's retention application seeking bankruptcy court approval and Noteholders' myriad demands for Fox's engagement letter and time records, neither Debtor nor Fox has produced to Noteholders a Fox engagement letter or their invoices and time entries. Thus, it is not even clear whom Fox purports to have represented or the scope and timing of that engagement. The engagement letter and firm time records are not privileged and should be produced. It is not even clear why these documents were withheld in the first instance.

As to the corporate documents, at the December 14th hearing, Gavin and Palmer acknowledged that the only operative corporate documents in the hearing record were Debtor's operating agreement and the April 14, 2020 Unanimous Counsel attached to Debtor's bankruptcy petition. (Hearing Exs. 1 and 13.) Those documents confirm that all managers, including the Abernathys, retained full authority to act on behalf of and bind Debtor post-bankruptcy. (*Id.*) After the hearing, Debtor filed with the Court a document labeled Second Amendment to Limited Liability Company Agreement, also purportedly dated "as of" April 14th. The Second Amendment purports to delegate authority to Tamarack and directly contradicts the language of the Unanimous Consent, which—unlike the Second Amendment—is actually attached to Debtor's bankruptcy petition. During his testimony, Palmer admitted this was a hectic time. Noteholders submit that all

**BLANKROME**

December 23, 2022
Page 4

communications relating to the drafting and execution of the Unanimous Consent and the Second Amendment should be produced or submitted for *in camera* review. Those communications should be "near de-duped" so that only unique, email families need to be reviewed. They will help shed light on which document is operative and when each one was drafted.

Debtor should also be directed to submit for in *in camera* review unredacted copies of communications regarding "control" of the Nevada Action and Appeal. As discussed at the December 14 hearing, Debtor self-selected and produced a handful of 2020 communications with Fox that they contend support their argument that Debtor, not Abernathys, controlled the appeal. For example, Gavin and Palmer's document productions do not include any emails whatsoever between April 20, 2021 and July 15, 2021.

A prime example is a July 22, 2020 email that is attached hereto as Exhibit B. The first four pages of the email are entirely redacted, though they are directed to and from the Abernathys. In an unredacted portion of the exchange, Gavin writes, "Everybody stop emailing, now. Period." Gavin goes on to suggest that everyone's opinions have been heard and that "We are now getting on with the business of the appeal." *Id*.

Justin Abernathy's response evinces an intent to put Palmer and Gavin back in their place. The Abernathys expressly "conditioned the funds [they advanced] for specific purposes and have communicated accordingly to make sure everyone is on the same page with the conditions. Neither Ted not the attorneys can change those conditions. If you have a problem with that, send the money back… ***If you misuse the Owner's funds, there will be consequences.*** And lastly, don't ask the Owners to pay a legal bill and then tell us to stop communicating on behalf of the Owners after the wires are sent. That won't happen. We respect each of you, but ***will not take orders from you so long as the Owners are being asked for and are paying for the tasks***." (*Id.* (emphasis added).)

Debtor should be ordered to produce for *in camera* review the unredacted portions of Exhibit B, along with the referenced communications regarding the Abernathys's stated conditions for the use of their funds and other communications regarding "control" of the Nevada Action and the Nevada Appeal.

Noteholders also object to Debtor's continued refusal to identify the scope and term of any purported common interest privilege with the Abernathys. To establish a common interest, there must be an agreement between the parties (oral or written) and a "common interest in securing legal advice relating to the same matter and where the communications were made to advance the shared interest on that common matter." Bankruptcy Litigation, § 4:35 (October 2022). "The interests must be identical, not similar, and be legal, not solely commercial… the party asserting the privilege bears the burden of showing that the disclosures would not have been made but for

December 23, 2022
Page 5

the sake of securing, advancing, or supplying legal representation." *In re Maxus Energy Corp. 617*, 620-21 (Bankr. Del. 2020)

Gavin has testified that the Abernathys's involvement was limited to writing checks and that he did not care what they thought about the Nevada Action and Appeal, much less seek their input. In addition, though the Abernathys remain managers of Debtor, they refused to appear for depositions or the underlying hearing, and thus an adverse inference about their roles is warranted. Debtor's counsel also refuses to identify or describe the alleged common interest agreement, who was a party to it, and when it was supposedly implemented or what its terms were. Indeed, as the Court already noted, by December 2020, SureFunding had sued the Abernathys and any alleged common interest had presumptively ended. Finally, there is no written common interest agreement in the record and no mention of one in Gavin or Snell's time entries (other than a discussion with Wayne James, not the Abernathys). In the absence of a written agreement, the burden is on the party claiming the privilege to establish a common interest, and they cannot do so here.

2. *Communications Between Gavin, the Abernathys, and Wayne James*

The time entries produced by Gavin include an overwhelming number of references to communications and correspondence with Wayne James. At the December 14, 2022 hearing, Gavin confirmed these facts, but could not offer any testimony as to the substance of his written correspondence with James. (Tr. 157:1-3 ("And the only way we could know that for sure is if we saw the communication; right? A: Yeah, I don't know.")). Topics of this correspondence include a possible common interest agreement with Wayne James, and payment of his legal expenses. Before Debtor rushed its production to the Court, the Noteholders again emphasized the relevance of these documents, and questioned whether they had been withheld as privileged. (*See* Ex. A). Debtor did not provide any response, and decided to "stand[] on its prior correspondence on these requests.". *Id*.

For the reasons set forth above, there is no basis to withhold these communications, and any alleged privilege has been waived. The communications were not logged, and Debtor has not identified any actual common interest with James and the Ad Hoc Committee, much less the terms of such an arrangement. To be sure, however, Gavin's time records confirm that Debtor was working closely with James on the Nevada Action and communications with Noteholders. Those documents should be produced immediately.

To the extent the Court would prefer to start with an *in camera* review, Noteholders propose that the Court review correspondence with James and the Abernathys between July 1 and July 7, 2020—a time period of myriad communications between Gavin, James, and the Abernathys regarding the Nevada Action. Debtor should also produce its July 20, 2022 correspondence

referencing a "common interest" with James and Gavin's August 24, 2022 review of "Ad Hoc" committee expenses. Debtor should also be directed to produce any communications that were copied to both James and either or both of the Abernathys.

### 3. Communications Between Gavin/Palmer and the Abernathys regarding control of the Appeal should be produced

With the exception of a handful of self-selected documents, Gavin and Debtor have not produced, logged, or made available for *in camera* review their communications with the Abernathys regarding the appeal.

The Snell-produced documents will necessarily not include the forwards of communications to/from the Abernathys and Gavin. Accordingly, sending the Court only the withheld Snell-produced documents is patently insufficient. Debtor should have to pull and produce for *in camera* review their forwards of those communications—and any related discussions with the Abernathys. Noteholders have no way of evaluating the volume of such communications because they have been withheld and not logged. But a cursory review of the Gavin time records referencing multiple correspondence with Abernathys regarding allegedly privileged material suggests the volume could be significant.

Debtor should be deemed to have waived privilege and ordered to produce these documents. In the alternative, Noteholders request that Debtor be ordered to "de-dupe" those documents as well as the Snell communications and produce only the relevant email families, not every email in the chain. That should significantly reduce the number of documents to be produced.

Very truly yours,

*s/ William J. Dorsey*
William J. Dorsey