**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| SureFunding, LLC, | Case No. 20-10953 (LSS) |
| Debtor. | **D.I. Ref. 24, 56, 156, 167, 233**<br>**Hearing Date: February 22, 2023 at 10:00 a.m.** |

**OBJECTION TO DEBTOR'S AMENDED APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTOR TO EMPLOY AND RETAIN GAVIN/SOMONESE LLC TO PROVIDE A CHIEF RESTRUCTURING AND LIQUIDATING OFFICER AND RELATED SERVICES PURSUANT TO 11 U.S.C. §§ 363 AND 105 EFFECTIVE AS OF THE PETITION DATE**

Noteholders,[1] through their undersigned counsel, respectfully file this objection to Debtor's Amended Application for Entry of an Order Authorizing the Debtor to Employ and Retain Gavin/Solmonese LLC to Provide a Chief Restructuring and Liquidating Officer and Related Services Pursuant to 11 U.S.C. §§ 363 and 105 Effective as of the Petition Date (the "Application") and state as follows:

---

[1] "Noteholders" are Brett Hatton, an individual; Autumn Wind Global Multi-Strategies Fund, LP, a Delaware Limited Partnership; Damon Gersh, an individual; Jason Eckenroth, an individual; Sherri R. Sands, as trustee of the Sherri R. Sands Revocable Trust, a Florida Trust; Glickfield Capital Management, LLC fbo M. Glickfield Dynasty Trust, a Maryland Trust; Glickfield Capital Management, LLC fbo Cheryl Newmark, a Maryland Trust; Glickfield Capital Management, LLC fbo Marla Schram, a Maryland Trust; Carrickfergus Investments Limited, a British Virgin Islands Company; Stephane Carnot, as Trustee of the Carnot Family Trust, a District of Columbia Trust; Dorsey and Whitney Trust Co., LLC, as Trustee of the Dylan Taylor 2011 Grantor Trust, a South Dakota Trust; Eseco, LLC, a Michigan Limited Liability Company; Sequris Group, LLC, a Michigan Limited Liability Company; Matthew Briggs, as Trustee of the Briggs Management Trust; Michael Rubenstein, an individual; June Farmer, an individual; Thomas Carl Myers, an individual; Richard L. Rogers, an individual; Neal J. Glickfield, as Trustee of the Neal J. Glickfield 2018 Trust, a Maryland Trust; Lineage, LLC, a Virginia Limited Liability Company; Brian Gray, an individual; HFJ Investments I, LLC, a Texas Limited Liability Company; Patricia B. Jones, as Trustee of the Patricia B. Jones Revocable Trust, a Maryland Trust; John B. Shaw as Trustee of the John B. Shaw 2012 Family Grantor Trust; JJK-3 Holdings, LLC; and Equity Trust Company, Custodian FBO Michele Rogers 200164710 IRA Rick & Michele Rogers.

1

**PRELIMINARY STATEMENT**

1.      Noteholders object to the Application because in this unique situation where the proposed CRLO has acted in his and his firm's own self-interest to the detriment of Debtor's estate and the creditors to the tune of what he has estimated could ultimately be $3,000,000, retention should be subject to the standards of 11 U.S.C. § 327(a) and compensation should be subject to 11 U.S.C. §§ 330 and 331, not the lesser standards under 11 U.S.C. §§ 363 and 105 and the Jay Alix Protocol proposed by Debtor.

2.      Moreover, the application should be denied because the CRLO and his firm do not meet the standards for employment under 11 U.S.C. § 327(a) because of their self-interested acts during the suspension of this case and their allegiances to Debtor's tainted managers.

**BACKGROUND**

3.      The extensive history of this matter is detailed in Noteholders' motion to convert this case to chapter 7 and the supporting evidence was presented at the hearings held thereon [D.I. 15, 72, 1, 24], all of which are incorporated herein by this reference.

4.      In brief, Debtor was fraught with misconduct. Debtor's managers, the Abernathys, purchased $47 million in factoring receivables through one single source (a Ponzi scheme) using funds loaned by Noteholders, exchanged aged, uncollectible accounts receivable without being paid, and failed to inform Noteholders and other investors of the exchanges while still raising funds. This is only the tip of the iceberg of the Abernathys' misconduct.

5.      Noteholders are secured creditors of Debtor and represent the substantial majority of Debtor's creditors. Noteholders petitioned for a receiver in Nevada state court after discovering some of the Abernathys' conduct. On the day the Nevada court appointed a receiver over Debtor,

Debtor appointed CRLO and filed this bankruptcy case. Noteholders and the U.S. Trustee filed motions to dismiss and/or convert the bankruptcy case. [D.I. 15, 34]. It is Justin Abernathy who signed the engagement letter with Gavin's firm (D.I. 24-3 at 12); and any non-advisory action by Gavin required "Client" [SureFunding] or "board" approval.

6. The next day, SureFunding filed its bankruptcy petition along with a Unanimous Consent document (dated January 14th) confirming that the Abernathys remained managers of the business and had not ceded authority to the recently appointed third director, Palmer. At the January 20, 2023 hearing, the Bankruptcy Court relied on the existence of a purported Second Amendment to the LLC Agreement, also dated as of January 14th, to conclude that the Abernathys had ceded bankruptcy control to Palmer. Noteholders were not permitted to obtain discovery from the Abernathys, Fox Rothschild, or Debtor about the circumstances surrounding the creation and execution of this document. But it is directly contradicted by the Unanimous Consent, ***which was filed with the Bankruptcy Court on the petition date***. At a bare minimum, there remain fact questions about when it was created, what its purpose was, and which document was operative. Notably, it was Justin Abernathy—not Palmer—who signed Gavin's engagement letter.[1]

7. On April 20, 2020, Debtor filed a motion to retain Gavin as CRLO. (D.I. 24.) That motion was held in abeyance while the Court considered the Noteholders' and U.S. Trustee's motions to dismiss or convert.

---

[1] Noteholder's counsel acknowledges the Bankruptcy Court's January 20th statement that the purported Second Amendment had been marked as an exhibit at the May 2020 hearing two and one-half years earlier. Counsel did not recall this. Nor did Gavin or Debtor's counsel, who were asked repeatedly to produce Debtor's corporate documents. But the existence of the purported Second Amendment, which directly conflicts with a bankruptcy petition filed with this Bankruptcy Court under oath, raises serious questions.

8. In a June 2, 2020 Bench Ruling, the Bankruptcy Court suspended the bankruptcy case in favor of the Nevada receivership. (D.I. 103.) The Bankruptcy Court entered several supplemental orders confirming that the bankruptcy stay remained in place and was modified "solely" to permit Judge Denton to consider and rule upon the Receiver Order as he deems appropriate and eventually for the receivership action to proceed. (*See* D.I. 114, 124.)

9. Though Debtor filed numerous reports and requested multiple modifications of the stay to permit to address the receivership action, at no time did Debtor ever seek to renew Debtor's April 2020 motion to retain Gavin, report on the fees incurred, or advise the Court or Noteholders that Gavin remained engaged, purported to be running the challenges to the receiver action, or that he had incurred up to $700,000 in fees for his firm. Nor did Gavin seek the Bankruptcy Court's direction as to whether it was in the best interests of Debtor's creditors to spend $3 million challenging a forum that the Bankruptcy Court ***had already found to be an effective means of liquidating Debtor***. As addressed at the December 14th hearing, none of this was disclosed to Noteholders either. To be sure, the entire receivership cost about 1/5th of what Gavin spent personally trying to get it set aside. At the January 20, 2023 hearing, this Court further invited Gavin to resubmit his retention application with a revised fee schedule for the time during which the case was suspended. Gavin's supplemental application, however, did not reduce his fees and it appears he is still seeking his full fees and costs incurred during such period, which total approximately $700,000.

10. The appointment of the receiver was ultimately vacated by the Nevada courts and Noteholders moved to covert this case to chapter 7. Noteholders did not and do not support Gavin to manage this liquidating case, which simply requires an independent professional to oversee

counsel employed to prosecute litigation on behalf of Debtor, oversee the self-liquidation of a handful of assets and consider litigation against Debtor's managers.

11. As demonstrated by Noteholders at the December 2022 evidentiary hearing on the motion to convert, Debtor, Gavin, Palmer, and the Abernathys' decision to rack up nearly $3 million in professional fees trying to displace the receiver was, to put it mildly, not in the best interests of the estate. Gavin admits that the Abernathys are unfit to wind down SureFunding's business; and this Court had already concluded there was no "accretive value" to a bankruptcy over a Nevada receivership. There is also no dispute that Michael Flanagan, the appointed receiver, was a qualified, disinterested party who was winding down SureFunding's business. The only plausible justification for the Abernathys, CRLO, and the independent director to pursue Flanagan's ouster was to put themselves back in power and recover CRLO and independent director's considerable fees. To be sure, CRLO admitted that he never would have been paid his fees in a receivership and that "as a growing creditor of the estate," he didn't agree that the receiver should be the one to wind down the business.

12. Gavin Palmer, and the Abernathys' conflicts are also readily apparent in the manner in which they handled discovery and treated Noteholders. For instance, Gavin continues to pursue joint and several liability against Noteholders in Nevada, though he and his counsel have effectively admitted there is no legal basis for holding Noteholders liable for each other's debts. Reaching agreement on that issue alone would save the estate tens of thousands of dollars, and end the dispute in Nevada, yet Gavin refuses to do so.

13. Moreover, Gavin refused to produce his time records, which he admits he keeps and will submit to the Bankruptcy Court, but refused to produce in discovery. Gavin and Palmer also produced select communications with the Abernathys—just the ones they thought were

helpful—but then refused to produce the vast majority of them. Moreover, though Gavin and Palmer now claim the Abernathys played no role in challenging the Receiver Order, they selectively asserted privilege over those communications and instructed counsel not to cooperate or produce documents—which led to additional, unnecessary motion practice

14. Here, Debtor seeks to employ Gavin effective as of the original petition date - April 14, 2020. Noteholders object because he is not disinterested, has acted in his own self-interest during this bankruptcy case and at the behest of the Abernathys. Moreover, because there is a pending appeal that—if successful—would automatically result in Gavin's ouster, it makes sense to appoint a CRLO with no prior ties to the Abernathys, Debtor, or the other parties. The case has been stayed for most of the past 2 and ½ years. Getting a new CLRO up to speed on the liquidation, which mostly consists of litigation claims, should not be difficult; and it will reduce animosity between Debtor and creditors.

## **ARGUMENT**

15. The employment of professional persons in bankruptcy cases is governed by 11 U.S.C. § 327. To be eligible for employment under Section 327(a), a professional person must show that it is (i) disinterested and (ii) does not hold an interest adverse to the bankruptcy estate. 11 U.S.C. § 327(a). A disinterested person is a person that, among other things, does not hold a material adverse interest to the bankruptcy estate or any class of creditors or interest holders by way of its relationship to the debtor or for any other reason. 11 U.S.C. § 101(14).

16. "The two primary goals of § 327(a) are to ensure the impartiality of the professional and to provide court oversight in the determination of the reasonableness of the professional's compensation." *In re McDermott International, Inc.*, 614 B.R. 244, 255 (Bankr. S.D. Tex. 2020).

17.     Debtor seeks to employ Gavin and his firm and support professionals pursuant to 11 U.S.C. § 363.  This section does not contain the disinterestedness requirement set forth in § 327(a).  This section has been well utilized to authorize retention of chief restructuring officers in conjunction with the Jay Alix Protocol, mainly to avoid disqualification of chief restructuring officers employed prior to the petition date.

18.     However, as some courts have since noted, it has also become a tool to "avoid transparency and create inequity" and a case-by-case approach should be used to address the "inevitable unusual case."  *McDermott International*, 614 B.R. at 252 and 255, *see also, In re Express Grain Terminals, LLC*, 2022 WL 245421 at *10, Case No. 21-11832 (Bankr. N.D. Miss. Jan. 25, 2022) (finding that the McDermott court maintained its discretion to address an inevitable "unusual" case).

19.     This case is a prime example of attempts to avoid transparency and create inequity in an unusual case.  Gavin should not be permitted to sidestep a disinterestedness requirement that he cannot meet.  Even if CRLO was disinterested on the petition date, his subsequent acts warrant disqualification.  *In re NNN 300 Capitol Center 16 LLC*, 632 B.R. 243, 259 (D. Del. 2021) (professionals must remain disinterested throughout the case).

20.     Moreover, use of Section 363 forgoes the requirement to seek compensation in accordance with Sections 330 and 331.  This is particularly concerning here where Gavin initially withheld his time records and produced them only after being compelled by the Bankruptcy Court.  Gavin should be required to comply with Section 330 and 331.  *See, e.g.*, *Express Grain Terminals, LLC*, 2022 WL 245421 at *10 (requiring compliance with Sections 330 and 331 for employment under Section 363 in "unique case" of employment of chief restructuring officer challenged by creditors).

21. **WHEREFORE**, Noteholders, respectfully request that the Court (i) deny the Application, or at a minimum, (ii) require Debtor to refile the application to demonstrate compliance with 11 U.S.C. §§ 327(a), 330 and 331 and (iii) grant such other and further relief as the Court deems just and proper.

| | |
|---|---|
| Dated: February 9, 2023<br>Wilmington, Delaware | **BLANK ROME LLP**<br><br>By: */s/ Lawrence R. Thomas III*<br>Victoria A. Guilfoyle (No. 5183)<br>Stanley B. Tarr (No. 5535)<br>Lawrence R. Thomas III (No. 6935)<br>1201 N. Market Street, Suite 800<br>Wilmington, Delaware 19801<br>Telephone: (302) 425-6400<br>Facsimile: (302) 425-6464<br>Email: tori.guilfoyle@blankrome.com<br>          stanley.tarr@blankrome.com<br>          lorenzo.thomas@blankrome.com<br><br>-and-<br><br>Kenneth J. Ottaviano (admitted *pro hac vice*)<br>William J. Dorsey (admitted *pro hac vice*)<br>Paige B. Tinkham (admitted *pro hac vice*)<br>444 West Lake Street, Suite 1650<br>Tel:  (312) 776-2600<br>Fax:  (312) 776-2601<br>Email: Kenneth.Ottaviano@blankrome.com<br>          William.Dorsey@blankrome.com<br>          Paige.Tinkham@blankrome.com<br><br>*Attorneys for the Noteholders* |