**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| SureFunding, LLC, | Case No. 20-10953 (LSS) |
| Debtor. | **D.I.  24, 56, 156, 167, 233, 241** |

**DEBTOR'S REPLY IN SUPPORT**
**OF AMENDED APPLICATION TO AUTHORIZE THE DEBTOR TO**
**EMPLOY AND RETAIN GAVIN/SOMONESE LLC TO PROVIDE A CHIEF**
**RESTRUCTURING AND LIQUIDATING OFFICER AND RELATED SERVICES**
**PURSUANT TO 11 U.S.C. §§ 363 AND 105 EFFECTIVE AS OF THE PETITION DATE**

The above-captioned debtor (the "Debtor") hereby files this reply in support of the Amended Application for Entry of an Order Authorizing the Debtor to Employ and Retain Gavin/Solmonese LLC ("Gavin/Solmonese") to Provide a Chief Restructuring and Liquidating Officer and Related Services Pursuant to 11 U.S.C. §§ 363 and 105 Effective as of the Petition Date (the "Amended Application"), and in support thereof, the Debtor states as follows:

**PRELIMINARY STATEMENT**

The Noteholders[1] objection to the Amended Application is the product of a recipe of equal parts fabulism, a misunderstanding of basic bankruptcy law, and paranoia.  Among other things,

---

[1] The Noteholders (the "Noteholders") are Brett Hatton, an individual; Earl Coronel, an individual; Autumn Wind Global Multi-Strategies Fund, LP, a Delaware Limited Partnership; Damon Gersh, an individual; Jason Eckenroth, an individual; Sherri R. Sands, as trustee of the Sherri R. Sands Revocable Trust, a Florida Trust; Glickfield Capital Management, LLC fbo M. Glickfield Dynasty Trust, a Maryland Trust; Glickfield Capital Management, LLC fbo Cheryl Newmark, a Maryland Trust; Glickfield Capital Management, LLC fbo Marla Schram, a Maryland Trust; Carrickfergus Investments Limited, a British Virgin Islands Company; Stephane Carnot, as Trustee of the Carnot Family Trust, a District of Columbia Trust; Dorsey and Whitney Trust Co., LLC, as Trustee of the Dylan Taylor 2011 Grantor Trust, a South Dakota Trust; Eseco, LLC, a Michigan Limited Liability Company; Sequris Group, LLC, a Michigan Limited Liability Company; Matthew Briggs, as Trustee of the Briggs Management Trust; Michael Rubenstein, an individual; June Farmer, an individual; Thomas Carl Myers, an individual; Richard L. Rogers, an individual; Neal J. Glickfield, as Trustee of the Neal J. Glickfield 2018 Trust, a Maryland Trust; Lineage, LLC, a Virginia Limited Liability Company; Charles B. Chokel, as Trustee of the Charles B. Chokel Trust u/a 4/21/92, a New Hampshire Trust; Brian Gray, an individual; HFJ Investments I, LLC, a Texas Limited Liability Company; Patricia B. Jones, as Trustee of the Patricia B. Jones Revocable Trust, a Maryland Trust; John B. Shaw as Trustee of the John B. Shaw 2012 Family Grantor Trust; and 1086 LLC, a Maryland Limited Liability Company.

14055809.v1

the Noteholders' objection includes allegations that were already considered and rejected by this Court, assertions whose factual support the Noteholders have made up out of whole cloth, and arguments improperly premised upon inaccurate statements of the law. The objection should be overruled, and the Amended Application should be granted.

## BACKGROUND AND ARGUMENT

1. This Court and the Noteholders are already familiar with the underlying facts with respect to the Noteholders' allegations against the Abernathys and Gavin/Solmonese. Accordingly, the Debtor will not belabor the issue with a lengthy recitation of the facts, including the original application to retain Gavin/Solmonese which was filed on April 20, 2020 [Docket No. 24] (the "Original Application").[2]

2. Specifically, the Court already held multiple evidentiary hearings with regard to the Noteholders' motion to convert the Debtor's bankruptcy case to Chapter 7 [Docket No.150] (the "Motion to Convert"), including a full day's evidentiary hearing to specifically address the Noteholders' allegations that G/S, Mr. Gavin, and/or John Palmer are tainted by their respective relationship with Jason or Justin Abernathy.[3] Those proceedings culminated in this Court's decision on January 20, 2023 in which the Court denied the Motion to Covert, expressly finding that regardless of which party bore the burden of proof, "after a review of all of the evidence and consideration of all legal arguments, I conclude that Mr. Palmer and Mr. Gavin are not tainted by any alleged wrongdoing of the Abernathys." Transcript, Jan. 20, 2023 hearing, pp. 18-19.

---

[2] The Debtor incorporates all previously filed pleadings and evidence, as well as this Court's prior rulings as if fully set forth herein.

[3] See Transcript of Jan. 20, 2023 hearing, p. 5 ("I left only one ground open: Whether Mr. Palmer or Mr. Gavin were tainted by any alleged dishonest of the Abernathys. As to that issue, I noted it was a factual matter. The noteholders suggested that Mr. Gavin and Mr. Palmer have been improperly acting in the interests of the Abernathys during the two years the bankruptcy case was suspended.")

3.      During the trial on the Noteholders' motion to convert, the Noteholders argued their allegation that the Debtor or Gavin/Solmonese had an obligation (from where this obligation arises the Noteholders have not articulated) to inform the noteholders of Gavin/Solmonese's and Palmer's continued involvement with SureFunding during the lengthy suspension of the bankruptcy case. The court explicitly rejected the premise that such an obligation existed and pointed out that Noteholders' counsel had actual knowledge of the parties continued involvement. Transcript, Dec. 14, 2022 hearing, pp. 278-281. Yet the accusation arises again in the Noteholders' objection to Gavin/Solmonese's retention.

4.      Following the Court's denial of the motion to dismiss, the Court granted the Debtor's application to retain Morris James as counsel, however because there was testimony that Messrs. Palmer and Gavin had conferred with respect to Gavin/Solmonese's fees, and given the "somewhat unusual course of this case," the Court asked Mr. Palmer speak with Mr. Gavin; and, "if he deems it appropriate and there is agreement with Gavin/Solmonese, to file a revised application, given where we are. If Mr. Palmer chooses not to do that, then I'll rule on the application that I have. But I, in the first instance, will give him a chance to review it, given his testimony." Transcript, Jan. 20, 2023 hearing, p 23.

5.      On January 26, 2023, the Debtor filed the Amended Application, by and through which it sought to retain Gavin/Solmonese, *nunc pro tunc* from the Petition Date. The sole difference between the Original Application and the Amended Application were economic terms (removing the monthly floor on fees), which **reduced** the amounts due to Gavin/Solmonese during the period when the case was suspended, a reduction that Gavin/Solmonese offered to the Debtor in August 2020.

6.    In response to the straightforward Amended Application, the Noteholders filed an objection which is rife with libelous, inaccurate factual allegations that the Noteholders cannot support, and other incorrect allegations which have already been rejected by the Court, none of which are relevant to the one (incorrect) legal issue that the Noteholders raised in their objection; namely, that Gavin/Solmonese cannot be retained because it is not disinterested due to fees earned and unpaid after the Petition Date.

7.    As a prefatory matter, the Noteholders seek to use the fact that Gavin/Solmonese has not provided its time records as evidence that Gavin/Solmonese is not disinterested. First, and foremost, the allegation is provably false. While the Noteholders characterize the Debtor's arguments that certain of Gavin/Solmonese's time records were outside the scope of reasonable discovery allowed by this Court in relation to the Noteholders' motion to convert as "Gavin/Solmonese refusing to provide time records," that argument is that of Debtor's counsel, not Gavin/Solmonese. Gavin/Solmonese produced all requested time records, and those time records were, in fact, produced in redacted form to the Noteholders before the December 14th trial on the motion to convert. Amazingly, the Noteholders make this accusation notwithstanding the fact that the Noteholders produced those time records as an exhibit at the December 14th hearing and questioned Mr. Gavin extensively on them. Moreover, fully unredacted time records (subject to a reservation for all privilege) were produced to counsel for the Noteholders on December 19, 2022, *nearly two months ago*. Stating now that Gavin/Solmonese has failed or refused to produce time records is an abject falsehood, one of which Noteholders' counsel was aware when their objection was filed. This allegation also clearly ignores the fact that Gavin/Solmonese is not seeking compensation at this juncture. The Noteholders' right to object to Gavin/Solmonese's fees is preserved until the Gavin/Solmonese seeks approval of those fees through the filing of a

fee application pursuant to 11 U.S.C. 330 and 331 and Rule 2016 of the Federal Rules of Civil Procedure. No such application has been (or can be) filed until Gavin/Solmonese is retained by this Court.

8.  More substantively, the Noteholders' acknowledge that the Debtor is seeking to retain Gavin/Solmonese pursuant to section 363 of the Bankruptcy Code, rather than 327(a), yet the Noteholders are attempting to graft onto section 363 a requirement for disinterestedness that is not contained in section 363. Even if this Court were to accept that there is a requirement of disinterestedness in Section 363 despite that Congress could have, but did not, include such a requirement, the Noteholders' argument should still be overruled and the Amended Application should be approved.

9.  Ultimately, the entirety of the Noteholders' argument fails for the most basic and fundamental reason: Of course Gavin/Solmonese will have an administrative expense in the bankruptcy case (once its fee application is approved) as a result of its work for more than two-and-a-half years. **Every** estate professional, whether retained under Section 327, 328, 1103, or 1106 has a claim for an administrative expense against the estate for fees incurred as soon as that professional begins work for its respective client. Gavin/Solmonese is no different. Gavin/Solmonese's original application was filed timely and sought *nunc pro tunc* retention within the accepted range in which such retentions are routinely granted. The Amended Application was filed at the request of the Court and was also filed timely. Gavin/Solmonese was neither dilatory nor negligent in its application process in such manner that *nunc pro tunc* approval should not be granted.

10. Were this Court to buy into the Noteholders' argument that Gavin/Solmonese is not disinterested, no Chapter 11 debtor could ever be represented by counsel or any other professional

and no bankruptcy estate could ever have committee counsel unless their retention was approved on the Petition Date; certainly, *nunc pro tunc* retention would become a thing of the past. Even beyond that, Chapter 7 trustees, Chapter 13 trustees, and their respective professionals would immediately be disqualified from all cases immediately after they have begun work. Simply stated, the Noteholders' tortured reading of the Bankruptcy Code is little more than sophistry ignoring the most fundamental tenets of bankruptcy.[4]

11.     It appears that the real basis for the objection is not that Gavin/Solmonese is owed money, but the <u>amount</u> fees and expenses which may be owed to Gavin/Solmonese.[5]  Finally, while not dispositive by any means, it is worth noting that the still-speculative amount of fees for which Gavin/Solmonese will seek approval is a direct and proximate result of the Noteholders' own actions.[6]  This Court should not countenance the Noteholders' actions, which have unnecessarily increased administrative expenses while, at the same time, bloviating about the resulting fees which may be owed by the estate.  The Debtor and its professionals have been attempting to move this case forward as expeditiously as is possible; however, the Noteholders – contrary to their own interests – continue to impede the process.  The Debtor recognizes and appreciates the balance of due process for all parties and creditors in interest on the one hand, and vexatious and value destructive litigation on the other hand.  The Noteholders' objection to the

---

[4]   In fact, the Bankruptcy Code requires that professionals have administrative expenses.  Section 331 of the Bankruptcy Code does not allow professionals to file fee applications more often than once every 120 days unless the Court permits otherwise.

[5]   Again, nothing is owed to Gavin/Solmonese at this point because the Court has not approved Gavin/Solmonese's (unfiled) fee applications.

[6]   It is not without irony that, while the Noteholders continue to complain about the estate's professional fees, those fees (for which no fee applications have been filed) have been significantly increased by the unreasonable and vexatious conduct of the Noteholders, who have seemingly objected to every motion filed by the Debtor in this case.  Among other things, the Noteholders' Motion to Convert was premised upon an amended LLC that the Noteholders had in their possession for more than two years,

Amended Application is only the most recent example of the Noteholders straying far beyond that line.

12. Toward the conclusion of the January 20th hearing, the Debtor asked the court to establish some control over the Noteholders' vexatious litigating. The Court determined that the time was not ripe to impose that degree of control and admonished counsel to be mindful of their obligations as members of the Delaware bar, which applies to both Delaware attorneys and those who have been admitted *pro hac vice*. Rather than taking this Court's message to heart, the Noteholders' counsel has ignored the Court's admonition and has wasted the Court's and the Debtor estate's time and resources with a defamatory objection that has no support in fact, repleads assertions that have already been rejected by the Court and evinces a startling lack of understanding of bankruptcy law. The Debtor respectfully submits that, if only for **all** the Noteholders' own interests (as well as the interests of other creditors), this value destructive behavior must stop. The Debtor respectfully asks the Court to reconsider establishing controls to prevent the Noteholders' ongoing abuse of this process.

**FOR THE FOREGONG REASONS**, the Debtor respectfully requests the entry of an Order: (i) approving the Amended Application, and (ii) granting to the Debtor such other and further relief as is just and proper.

DATED: February 17, 2023        **MORRIS JAMES LLP**

*/s/ Jeffrey R. Waxman*
Carl N. Kunz, III (DE Bar No. 3201)
Jeffrey R. Waxman (DE Bar No. 4152)
500 Delaware Avenue; Suite 1500
Wilmington, DE  19801
Telephone:  (302) 888-6800
E-mail:  ckunz@morrisjames.com
E-mail:  jwaxman@morrisjames.com

*Counsel to the Debtor and Debtor in Possession*