

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

Laurie Selber Silverstein  
Chief Judge

824 N. Market Street  
Wilmington, DE 19801  
(302) 252-2900

April 3, 2024

**VIA CM/ECF**

Lucian B. Murley, Esq.  
Saul Ewing LLP  
1201 N. Market Street, Suite 2300  
Wilmington, DE 19801

**VIA EMAIL**[1]

Jason Abernathy  
jason@theabernathygroup.com

Justin Abernathy  
justin@theabernathygroup.com

Re: **SureFunding, LLC, 20-10953 (LSS)**  
Motion of Harray Holdings Trust, CTJT Family Trust, SCTOT, LLC and SureClick, LLC for Allowance and Immediate Payment of Administrative Expense Claim and Reservation of Rights, Docket No. 382

Gentlemen:

The matter before me is the Motion of Harray Holdings Trust, CTJT Family Trust, SCTOT, LLC and SureClick LLC for Allowance and Immediate Payment of Administrative Expense Claim and Reservation of Rights.[2] The Liquidating Trustee filed an objection.[3] A reply was also filed.[4] While I anticipated ruling from the bench, I determined to issue this letter ruling instead because I find the facts here perplexing, if not disturbing.

---

[1] The court is serving the movants by email through their principles as these are the only addresses available. Movants are presently in between counsel.

[2] ECF No. 382.

[3] The Liquidating Trustee's Obj. to Mot. of Harray Holdings Trust, CTJT Family Trust, SCTOT, LLC & SureClick, LLC for Allowance and Immediate Payment of Administrative Expense Claim & Reservation of Rights, ECF No. 434.

[4] Harray Holdings Trust, CTJT Family Trust, SCTOT, LLC & SureClick, LLC Reply in Resp. to the Liquidating Trustee's Obj. to Mot. for Allowance and Immediate Payment of Administrative Expense Claim and Reservation of Rights, ECF No. 455.

SureFunding, LLC.
April 3, 2024
Page 2

I note at the outset that the Liquidating Trustee is not a party to any of the underlying events that created this dispute and I have no issue with the decision to file the Objection, particularly given the Liquidating Trustee's concern over an insolvent estate. Nonetheless, the Liquidating Trustee is stuck with the case he inherited and, for the reasons below, the Objection is overruled.

**Background**

The procedural posture of the entire case as well as the request before me provide for unusual, if not unique, circumstances; I write this because it bears on the ruling in the case. While I do not set out all the detail, a brief overview is helpful.

This bankruptcy case was filed April 14, 2020. The filing took place less than 24 hours after Judge Denton entered his order in Nevada state court proceedings appointing a receiver for the Debtor. Almost immediately, certain noteholders who have been active in this case as well as the Office of the United States Trustee moved to dismiss the bankruptcy case under § 1112(b). I held an evidentiary hearing on May 12, 2020. As detailed in my bench ruling of June 1, 2020,[5] I determined to withhold judgment at the time pending continued proceedings in the Nevada action on the appeal of Judge Denton's decision to appoint a receiver. I also suspended the proceedings in the bankruptcy case pursuant to § 305 of the Code and permitted limited relief from stay to permit the Nevada receivership proceedings to play out. Finally, I requested a status report within six weeks of entry of my order. As it turned out, the Nevada litigation was not finally resolved until over two years later, when, on June 24, 2022, the Nevada Supreme Court entered its remittitur sending the case back to Judge Denton after reversing his order appointing a receiver.

In the meantime, Debtor filed its applications to retain Gavin/Solmonese as Chief Restructuring and Liquidating Officer and Fox Rothschild LLP as counsel on April 20, 2020 and April 21, 2020, respectively. Because this case was suspended, the Gavin/Solmonese application was not heard and granted until February 22, 2023 and the Fox Rothschild application was not submitted under Certification of Counsel until February 24, 2023.

Once the case was back before this court, the parties continued to litigate whether the case should be dismissed or converted to a chapter 7 case. Appeals ensued and only after mediation with Judge Shannon did the Debtor and the noteholders resolve their disputes.

The court confirmed a plan of liquidation on October 25, 2023, but the resolution did not resolve all issues raised by the Abernathys. When the plan went effective, the Liquidating Trust was established and the Liquidating Trustee appointed. The Liquidating Trustee is pursuing litigation against various parties, including the Abernathys and/or their various entities, which brings us to the present.

---

[5] This Bench Ruling appears in written form on the docket at ECF No. 103.

SureFunding, LLC.
April 3, 2024
Page 3

      Consistent with the deadlines for filing requests for administrative expenses, the entities controlled by one of the Abernathy brothers—Harray Holdings Trust, CTJT Family Trust, SCTOT, LLC and SureClick, LLC (collectively, the "Abernathy Parties")—have filed multiple requests based on different asserted debts. The one I am deciding today is the request for administrative expense status for $505,258.50 for retainers paid certain Debtor professionals in connection with their respective engagements.

**Factual Findings**

      An evidentiary hearing was held on December 21, 2023. At that time, the Abernathy Parties and the Liquidating Trustee stipulated to the following facts:

- The Abernathy Parties paid $505,258.50 in retainers.

- $425,000 in payments were made through wires initiated on April 14, 2020 between 12:08 a.m. and 1:11 a.m.

- Debtor filed its voluntary petition on April 14, 2020 at 9:38 a.m.

- $80,258.50 in payments were made after the bankruptcy filing.

- The Abernathy Parties' payments of the retainers to Debtor's professionals were not in the ordinary course of the business of the Debtor.

- There are no written agreements granting a lien or security interest in Debtor's assets to secure the retainers.

- The court was never asked to approve the retainers or a related loan for the $505,258.50 pursuant to a motion under § 364 of the Bankruptcy Code.

- There is no court order approving the retainers pursuant to § 364 of the Bankruptcy Code.

- The Fox Rothschild engagement letter attached as Exhibit F to the Reply is a true and correct copy of the engagement letter.

- The fee applications of Fox Rothschild, Gavin/Solmonese and Snell & Wilmer L.L.P. attached as Exhibits B, C and D to the Reply are true and correct copies of those applications.

In addition to the Stipulated Facts, the Abernathy Parties sought to introduce two documents into evidence that were attached to their Reply, but as to which there was no stipulation. Exhibit A (an email thread between Michael Sweet of Fox Rothschild and Justin Abernathy) was admitted over objection. The admission of Exhibit E (an email exchange between Ted Gavin of

SureFunding, LLC.
April 3, 2024
Page 4

Gavin/Solmonese and Justin Abernathy) was taken under advisement at the hearing. I now admit it into evidence.[6]

I accept the stipulated facts as true and find the following further facts from a review of the documents entered into evidence:

- Of the $505,258.50 in retainers, Fox Rothschild received $365,258.50. Fox Rothschild applied those funds (without prior court approval) toward its total fees incurred in the bankruptcy case.

- Of the $505,258.50 in retainers, Gavin/Solmonese received $125,000. Gavin/Solmonese seeks to apply these funds to its total fees incurred in the bankruptcy case.[7]

- Of the $505,258.50 in retainers, Snell & Wilmer received $15,000. Snell & Wilmer seeks to apply these funds to its total fees incurred in the bankruptcy case.[8]

- On April 10, 2020, Michael Sweet of Fox Rothschild forwarded to Justin Abernathy, Jason Abernathy and Ben Hays a new engagement agreement contemplating the commencement of a bankruptcy proceeding. In the email communication, Mr. Sweet represented that the new engagement letter "changes the scope and reflects how payments work in a bankruptcy case - funds are kept in trust pending approval under court order."

---

[6] The Liquidating Trustee objected to the email on the basis of lack of authentication, lack of foundation and hearsay. The Abernathy Parties responded that the email is an admission of a party opponent, therefore not hearsay, and that, in any event, it was not offered for the truth of the position taken in the email, but only that the words were written. "The standard for authenticating evidence is 'slight.'" *United States v. Turner*, 718 F.3d 226, 232 (3d Cir. 2013) (quoting *McQueeney v. Wilmington Trust Co.*, 779 F.2d 916, 928 (3d Cir. 1985)). Federal Rule of Evidence 901 provides examples of appropriate methods to authenticate a document including "[t]he appearance, contents, substance, internal pattens, or other distinctive characteristics of the item, taken together with all the circumstances." Fed. R. Evid 901(b)(4). Emails have been admitted into evidence based on distinctive features. *United States v. Siddiqui*, 225 F.3d 1318, 1322-23 (11th Cir. 2000); *United States v. Safavian*, 435 F.Supp.2d 36, 39-42 (D.D.C. 2006). Having reviewed the email, I find that there are adequate indicia of authenticity considering the sender's email address, the signature block, the recipients and the subject matter. I further conclude that this is a statement of a party opponent as Gavin was Debtor's CRO when he made the statement.

[7] The Fox Rothschild and Gavin/Solmonese fee applications have not yet been approved.

[8] The Snell & Wilmer fee application has been approved with the exception of the request to apply the $15,000 retainer.

- On April 13, 2020, Michael Sweet of Fox Rothschild told the Abernathys that "[i]n light of the entry of the order this afternoon by the Nevada State Court appointing the Receiver, if we were to proceed with the engagement we would require that the retainer come from funds that do not belong to Surefunding [sic]."

- The April 13, 2020, Fox Rothschild engagement letter provides for a $300,000 retainer and states:

    > The Retainer will be placed in the Firm's client trust account (the "Trust Account"). All post-filing fees and costs shall be paid from funds available in the Trust Account pursuant to court order. In the event that funds are no longer available in the Trust Account to cover fees and costs awarded, the Firm shall be entitled to seek payment to satisfy Firm's allowable fees and costs, pursuant to court order, from the Debtor in Possession, Trustee or other responsible individual or entity.

- On April 14, 2020, Justin Abernathy and Ted Gavin had the following email exchange:

*From Justin Abernathy (at 10:37 a.m.):*

> Michael and Ted, per your direction last night to file the bankruptcy and advising not to use company funds and instead to use outside capital to be secured by SureFunding for the filing please prepare the documentation needed for the funding provided to the company."

*From Ted Gavin (copied to Michael Sweet, John Palmer, Tab Turner, Jason Abernathy and Ben Hays) (at 12:57 p.m.):*

> Justin,
>
> We've discussed this with Fox and reached the conclusion that there are a number of avenues to documenting this, but none need to be pursued immediately - in fact, documenting this immediately may remove options. Both G/S and Fox will disclose the amount of the retainers and from whom they were received. If the case survives in bankruptcy, you will have what are likely administrative claims and can file a claim or seek reimbursement then. If the case fails, you will have a claim against the company in receivership and will be able to seek repayment as the expenditures were made for the company's benefit.

SureFunding, LLC.
April 3, 2024
Page 6

*Discussion*

    The Abernathy Parties contend that their payment of retainers for Debtor's professionals is entitled to administrative expense status pursuant to 11 U.S.C. § 503(b)(1)(A) because funding the retainers provided a substantial benefit to the estate. They argue that the retainers enabled "Debtor to secure the benefit of the services rendered by its professionals and reduced on a dollar for dollar basis the amount that would otherwise be payable by the Debtor to its professionals."[9] They also contend that Debtor's inclusion of the third-party funded retainers in their applications to retain professionals and the Liquidating Trustee's lack of objection to Debtor's professionals applying the retainers to their fees and expenses constitute post-petition transactions and/or ratification of the payment of the retainers elevating them to administrative expense status.[10]

    The Liquidating Trustee responds that creditors can only obtain administrative expense status for post-petition loans outside the ordinary course of business if the loan has been approved pursuant to § 364(b). Relying primarily on *In re Massetti*, he contends that § 364(b) is the exclusive means for obtaining administrative expense status for a loan, such as the retainers,[11] which, as stipulated, did not occur here. In the alternative, the Liquidating Trustee argues that the Abernathy Parties have failed to establish an administrative expense claim for the $425,000 transferred to Debtor's professionals pre-petition because there is a bright-line rule that "[a] pre-petition loan cannot result in a postpetition administrative expense under section 503(b)(1)."[12]

    I conclude in these singular circumstances (both procedural and factual) that the Abernathy Parties have established that the payment of the retainers is entitled to administrative expense priority. In the first instance, I choose to address this dispute under § 364(b).[13] While there is no question that § 364(b) requires notice and a hearing for a debtor to incur debt out of

---

[9] Mot. ¶ 11.

[10] 12/21/2023 Hr'g Tr. 21:25-25:6 (citing *Goody's Family Clothing Inc. v. Mountaineer Property Co. II, LLC (In re Goody's Family Clothing, Inc.)*, 401 B.R. 656 (D. Del. 2009), *aff'd sub nom. In re Goody's Family Clothing Inc.*, 610 F.3d 812 (3d Cir. 2010)).

[11] Obj. ¶ 8 (citing *In re Massetti*, 95 B.R. 360, 364 (E.D. Pa. 1989)).

[12] Obj. ¶ 14 (citing *Goody's Family Clothing Inc.*, 401 B.R. at 671 & n.14).

[13] This is the most direct line of reasoning to grant the motion and even the *Massetti* Court recognized the possibility of *nunc pro tunc* approval. There is other authority, as cited by the Abernathy Parties in the motion and at argument, for the proposition that § 503 can also form the basis for granting the requested relief. *See Goody's Family Clothing Inc.*, 401 B.R. 656; *In re Reilly*, 542 B.R. 317, 319-20 (Bankr. W.D.N.Y. 2015). The Abernathy Parties have also filed a separate motion seeking a substantial contribution claim for their payment of the retainers. Given my conclusion, I decline to explore these other avenues for relief, but I have no doubt that I would find that the payment of the retainers constitute administrative claims under one or more of these alternative theories.

SureFunding, LLC.
April 3, 2024
Page 7

the ordinary course, I find compelling circumstances to approve the loan *nunc pro tunc* and grant the Abernathy Parties administrative expense priority.[14]

In *F/S Airlease*, the Third Circuit addressed retroactive relief in the context of a debtor's engagement of professionals and ruled that *nunc pro tunc* relief is permissible in extraordinary circumstances.[15] In determining whether extraordinary circumstance exists, a court should consider:

> whether the applicant or some other person bore responsibility for applying for approval; whether the applicant was under time pressure to begin service without approval, the amount of delay after the applicant learned that initial approval had not been granted; the extent to which compensation to the applicant will prejudice other parties; and other relevant factors.[16]

Applying those factors to the facts I have found, I conclude that extraordinary circumstances exist here.[17] Debtor, not the Abernathy Parties, bore the responsibility for filing the motion seeking approval of the payment of the retainers. More importantly, just one hour after the bankruptcy case was filed, Justin Abernathy specifically asked Debtor's CRO to document the loan provided to the company. In response, he was told by Debtor's CRO (copied to Debtor's counsel) that documenting the loan was not an immediate issue and "in fact, documenting this immediately may remove options." I further conclude that the Abernathy Parties were reasonable in relying on the advice provided by Debtor and its counsel. While Fox Rothschild did not represent the Abernathys individually, the Abernathys are not sophisticated parties familiar with the requirements of § 364. The Abernathys had been working with Fox Rothschild in connection with the firm's prepetition representation of Debtor in the receivership proceedings and had no reason to doubt the advice provided by the CRO (an insolvency professional) and

---

[14] I note that the Abernathy Parties have not asked for priority over other administrative expenses or that the loans be secured by liens on estate property.

[15] *In re F/S Airlease II, Inc. v. Simon*, 844 F.2d 99, 105 (3d Cir. 1988). *F/S Airlease* followed the Third Circuit's then-recent decision in *In the Matter of Arkansas Co., Inc.*, 798 F.2d 645 (3d Cir. 1986), which also examined *nunc pro tunc* retention of professionals.

[16] *F/S Airlease*, 844 F.2d at 105-06 (quoting *Arkansas*, 798 F.2d at 650).

[17] The *Massetti* Court acknowledged other courts have extended administrative expense status to post-petition loans that were not approved in advance. But the *Massetti* Court did not need to determine whether to exercise its discretion to grant that relief because even if permissible, the circumstances before it did not constitute the "exceptional circumstances" required to grant such relief. *Massetti*, 95 B.R. at 364 (citing *F/S Airlease*, 844 F.2d 99; *Arkansas*, 798 F.2d 645).

SureFunding, LLC.
April 3, 2024
Page 8

counsel.[18] Nor, did the responsive email suggest that the Abernathys should retain their own counsel to protect their individual interests.

I also find that the Abernathy Parties were under tremendous time pressure to provide the retainers and that there was no ability to have the retainers approved in advance. As evidenced by the exchange between Fox Rothschild and Justin Abernathy, the firm insisted on a retainer before it would file the bankruptcy proceeding. Given the need to have counsel to file the bankruptcy case, there was no chance for approval before the loans were provided. Indeed, the retainers provided prepetition were, in essence, a bridge loan to get Debtor to a first day hearing. Debtor should have immediately filed a DIP motion to obtain approval of the bridge loan as well as the postpetition retainer payments.

Further, while the delay attendant to approving this request is years, the suspension of the bankruptcy case was, at least, a contributing factor, to that delay.

The only factor that makes me hesitate is prejudice to other parties given the Liquidating Trustee's representation that the case will be administratively insolvent if this request is granted. But this factor is outweighed here for at least two reasons. First, I have no doubt that if Debtor had filed the appropriate first day motion to approve the retainers, I both could and would have granted the request.[19] Given the imposition of the Nevada receivership proceedings and the order appointing the receiver, as well as the demand for retainers, another source of funding Debtor's professionals was necessary. Moreover, that approval would have included the bridge financing necessary to hire the professionals to file the case (i.e., a roll-up of the prepetition loan). Second, in the circumstances here, the risk of non-payment should not be borne by the Abernathy Parties. The Abernathys asked that the loan be documented, and for reasons I do not understand, they were counseled it was better not to do so.

---

[18] *Compare F/S Airlease*, 844 F.2d at 107 (denying *nunc pro tunc* approval for a professional's services, in part because he was a sophisticated businessman represented throughout his relationship with the debtor by counsel who knew the requirements of § 327) *with Rosen v. Hotel & Restaurant Emp. & Bartenders Union of Phila., Bucks, Montgomery, & Del. Cntys., Pa.*, 637 F.2d 592, 597 (3d Cir. 1981) (finding reasonable reliance by the plaintiff where his union trustee informed him that his pension was at risk because his employers' contributions were in arrears, accepted a personal check from the plaintiff for the amount in arrears and deposited that check in the union pension fund).

[19] *See F/S Airlease*, 844 F.2d at 105 (requiring that applicant for *nunc pro tunc* relief under § 327 meet the disinterestedness requirements). *Cf. In re American Cooler Co.*, 125 F.2d 469, 497 (2d Cir. 1942) ("We think that the judge should not retroactively validate the loan unless he is confident that he would have authorized it if a timely petition had been made.") (Bankruptcy Act case).

SureFunding, LLC.
April 3, 2024
Page 9

**Conclusion**

      For the foregoing reasons, I am granting the request for allowance of an administrative expense claim. Two concerns cause me to defer on the request for immediate payment: the Liquidating Trustee's justifiable fear of an administratively insolvent estate and the outstanding litigation, which could, but has not yet, brought funds into the estate. A status conference is currently scheduled for April 9 at 3:00 p.m. I will discuss this request at that time.

                                        Very truly yours,

                                        Laurie Selber Silverstein

LSS/cmb